## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| MICHAEL E. VACEK, JR., derivatively on behalf of WALTER INVESTMENT MANAGEMENT CORP., | ) ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case 2:17-cv-02820-JCJ |
| GEORGE M. AWAD, DANIEL G. BELTZMAN, MICHAEL M. BHASKARAN, NEAL P. GOLDMAN, WILLIAM J. MEURER, ALVARO G. de MOLINA, VADIM PERELMAN, and ANTHONY N. RENZI, | ) ) ) ) ) ) ) | |
| Defendants, | ) ) | |
| and | ) ) | |
| WALTER INVESTMENT MANAGEMENT CORP., | ) ) | |
| Nominal Defendant. | ) | |

## [PROPOSED] ORDER PRELIMINARILY APPROVING
## SETTLEMENT AND PROVIDING FOR NOTICE

WHEREAS, a derivative action is pending in this Court entitled *Vacek v. Awad, et al.*, Case No. 2:17-CV-02820-JCJ (the "Action");

WHEREAS, (a) Plaintiff Michael E. Vacek, Jr. ("Plaintiff"), derivatively on behalf of Walter Investment Management Corp., now known as Ditech Holding Corporation ("WIMC"), (b) Nominal Defendant WIMC, and (c) Defendants George M. Awad, Daniel G. Beltzman, Michael M. Bhaskaran, Neal P. Goldman, William J. Meurer, Alvaro G. de Molina, Vadim Perelman, and Anthony N. Renzi ("Defendants," and together with Plaintiff and WIMC, the "Parties") have entered into a Stipulation and Agreement of Settlement dated October 17, 2018

(the "Stipulation") that provides for a complete dismissal of the Action on the terms and conditions set forth in the Stipulation, subject to approval of this Court (the "Settlement");

WHEREAS, Plaintiff and his counsel ("Plaintiff's Counsel") have made an application pursuant to Rule 23.1(c) of the Federal Rules of Civil Procedure for an order, among other things, (a) preliminarily approving the Settlement, (b) ordering notice of the Settlement be provided to stockholders of WIMC, (c) providing stockholders of WIMC the opportunity to object to the Settlement, and (d) scheduling the Settlement Hearing (defined below);

WHEREAS, the Court has read and considered the Stipulation and Plaintiff's motion for preliminary approval of the Settlement, and the papers filed and arguments made in connection with the motion;

WHEREAS, the Parties have consented to the entry of this Order; and

WHEREAS, unless otherwise defined herein, all terms with initial capitalization have the same meanings as they have in the Stipulation;

NOW THEREFORE, IT IS HEREBY ORDERED:

1. **Preliminary Approval of the Settlement** – The Court preliminarily approves the Settlement on the terms and conditions stated in the Stipulation as fair, reasonable, and adequate to WIMC, subject to further consideration at the Settlement Hearing.

2. **Settlement Hearing** – The Court will hold a settlement hearing (the "Settlement Hearing") on _____, 2018 at __:__ _.m. in Courtroom 17-A, James A. Byrne U.S. Courthouse, 601 Market Street, Philadelphia, PA 19106, pursuant to Rule 23.1(c) of the Federal Rules of Civil Procedure, for the following purposes:

(a) to determine whether the Settlement on the terms and conditions stated in the Stipulation is fair, reasonable, and adequate to WIMC, and should be approved by the Court;

(b)      to determine whether a Judgment in the form attached as Exhibit C to the Stipulation (the "Judgment"), including the releases provided for in the Judgment, should be entered;

(c)      to hear and rule on any objections to the Settlement;

(d)      to determine whether the award of Attorneys' Fees and Litigation Expenses (defined in the Stipulation) to Plaintiff's Counsel provided for in the Stipulation should be approved by the Court; and

(e)      to consider any other matters as the Court deems appropriate.

3.      The Court may adjourn the Settlement Hearing or modify any of the dates stated in this Order without further notice to WIMC stockholders. The Court may approve the Settlement with modifications to which the Parties agree in the manner provided for in the Settlement without further notice to WIMC stockholders. The Court may enter the Judgment approving the Settlement whether or not the Court approves the award of Attorneys' Fees and Litigation Expenses to Plaintiff's Counsel provided for in the Stipulation.

4.      **Manner of Giving Notice** – Notice of the Settlement and the Settlement Hearing shall be given as follows:

(a)      Within ten (10) business days of the date of entry of this Order, WIMC shall (i) post a copy of the Stipulation, this Order, and the Notice (defined in the Stipulation and substantially in the form attached as Exhibit B to the Stipulation) on WIMC's website; (ii) cause a Current Report on Form 8-K to be filed with the Securities and Exchange Commission that attaches the Notice and provides a link to the Stipulation, this Order and the Notice posted on WIMC's website; and (iii) publish the Notice once in Investor's Business Daily and transmit it once over PR Newswire; and

(b)     WIMC's Counsel shall serve on Plaintiff's Counsel and Defendants' Counsel and file with the Court proof, by affidavit or declaration, of the giving of notice as required by this Order not later than seven (7) calendar days prior to the Settlement Hearing.

5.     **Approval of Form and Content of Notice** – The Court (a) approves the form and content of the Notice, and (b) finds that providing notice of the Settlement in the manner and form set forth in Paragraph 4 of this Order (i) constitutes the best notice practicable under the circumstances; (ii) is reasonably calculated, under the circumstances, to inform stockholders of WIMC concerning the pendency of the Action, the Settlement, the terms and conditions of the Settlement, including the Judgment and the releases provided for in the Judgment, the request by Plaintiff's Counsel for an award of Attorneys' Fees and Litigation Expenses, the right of WIMC stockholders to object to the Settlement, including the Attorneys' Fees and Litigation Expenses to Plaintiff's Counsel, and any other aspect of the Settlement, and the right of WIMC stockholders to appear at the Settlement Hearing; (iii) constitutes due, adequate, and sufficient notice to all persons and entities entitled to receive notice of the Settlement; and (iv) satisfies the requirements of Rule 23.1 of the Federal Rules of Civil Procedure and the United States Constitution (including the Due Process Clause), and all other applicable laws and rules.

6.     **Appearance and Objections at Settlement Hearing** – Any stockholder of WIMC may enter an appearance in the Action at his, her or its own expense, individually or through counsel of his, her, or its own choice, by filing a notice of appearance with the Clerk of the Court and delivering a notice of appearance to Plaintiff's Counsel, Defendants' Counsel, and WIMC's Counsel at the addresses set forth below, such that it is received no later than twenty-one (21) calendar days prior to the Settlement Hearing.

| **Plaintiff's Counsel** | **Defendants' Counsel** |
|---|---|
| Gainey McKenna & Egleston | Dechert, LLP |
| Attn:  Thomas J. McKenna, Esq. | Attn: David H. Kistenbroker, Esq. |
| 440 Park Avenue South, 5th Floor | Joni S. Jacobsen, Esq. |
| New York, NY 10016 | 35 West Wacker Drive |
| | Suite 3400 |
| **WIMC's Counsel** | Chicago, IL 60601 |
| Weil, Gotshal & Manges LLP | |
| Attn: Joseph S. Allerhand, Esq. | |
| Stephen A. Radin, Esq. | |
| 767 Fifth Avenue | |
| New York, New York 10153 | |

7.     Any stockholder of WIMC may file a written objection to the Settlement, the request by Plaintiff's Counsel for an award of Attorneys' Fees and Litigation Expenses, and/or any other aspect of the Settlement with the Clerk of the Court. Any such objection must also be mailed or delivered to Plaintiff's Counsel, Defendants' Counsel, and WIMC's Counsel at the addresses and in the manner and within the time period set forth in Paragraph 6 above.  By filing an objection, a person or entity shall be deemed to have submitted to the jurisdiction of the Court with respect to the Settlement and his, her, or its objection.

8.     An objection must satisfy all of the following conditions: (a) it must be submitted in a timely manner in accordance with the provisions of Paragraph 7 of this Order; (b) it must state the name, address, telephone number and email address of the objector, or, in the case of an entity, the name, address, telephone number, and email address of an authorized representative of the objector; (c) it must state the number of shares of WIMC common stock the objector owns and the dates of all purchases and sales of WIMC common stock by the objector; (d) it must be accompanied by adequate supporting documentation in the form of broker confirmation slips, broker account statements, a statement from a broker containing the transactional and holding information found in a broker confirmation slip or account statement, or other comparable

documentation; (e) it must state the basis for the objection and include copies of any papers, briefs, or other documents the objector relies on; (f) it must state whether the objector intends to appear at the Settlement Hearing, and, if so, the name(s) of any witness(es) the objector intends to call to testify and any exhibits the objector intends to introduce into evidence at the Settlement Hearing, and (g) it must be signed under penalty of perjury by the objector or an authorized representative of the objector. An objection shall not be effective unless it complies with all of these conditions.  Plaintiff's Counsel, Defendants' Counsel, and WIMCs' Counsel may, as they deem appropriate, submit papers replying to objections no later than five (5) calendar days prior to the Settlement Hearing.

9.      Any stockholder of WIMC who does not comply with the requirements stated in Paragraphs 7 and 8 for objections to the Settlement waives and forfeits his, her or its right to object to the Settlement, the request by Plaintiff's Counsel for an award of Attorneys' Fees and Litigation Expenses, and any other aspect of the Settlement, and to appear at the Settlement Hearing, and shall forever be barred and enjoined from objecting to the Settlement, an award of Attorneys' Fees and Litigation Expenses, and/or any other aspect of the Settlement or from otherwise being heard concerning the Settlement, the request by Plaintiff's Counsel for an award of Attorneys' Fees and Litigation Expenses, and/or any other aspect of the Settlement in this and any other proceeding, and shall forever be barred and enjoined from directly or indirectly prosecuting, maintaining, intervening in, or participating in or claims subject to the Settlement, the Judgment, and the releases provided for by the Judgment.

10.      **<u>Stay and Temporary Injunction</u>** – The Court stays all proceedings in the Action other than proceedings necessary to carry out or enforce the terms and conditions of the Stipulation and this Order and bars and enjoins the Parties and WIMC stockholders from

commencing or prosecuting any and all of claims that are the subject of the Settlement, the Judgment, and the releases provided for by the Judgment.

11.     **Termination of Settlement** – If the Settlement is terminated as provided in the Stipulation, if the Settlement is not approved, if the Judgment is not entered or is entered but does not become Final (as defined in the Stipulation), or if the Effective Date fails to occur for any reason, this Order shall be vacated, rendered null and void, and be of no further force and effect, except as provided by the Stipulation, and this Order shall be without prejudice to the rights of the Parties, and the Parties shall revert to their respective positions in the Action as of July 2, 2018.

12.     **Supporting Papers** – Plaintiff, Defendants, and WIMC, as they deem appropriate, may file and serve opening papers in support of final approval of the Settlement and the award of Attorneys' Fees and Litigation Expenses to Plaintiff's Counsel not later than thirty-five (35) calendar days before the Settlement Hearing. Reply papers, if any, shall be filed and served not later than five (5) calendar days before the Settlement Hearing.

13.     **Retention of Jurisdiction** – The Court retains jurisdiction with respect to the proposed Settlement.

SO ORDERED this _____ day of _____, 2018.


_____
The Honorable J. Curtis Joyner
United States District Judge

7

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| MICHAEL E. VACEK, JR., derivatively on behalf of WALTER INVESTMENT MANAGEMENT CORP., now known as Ditech Holding Corporation, | ) ) ) ) ) | |
| Plaintiff, | ) | Case 2:17-cv-02820-JCJ |
| v. | ) ) | |
| GEORGE M. AWAD, DANIEL G. BELTZMAN, MICHAEL M. BHASKARAN, NEAL P. GOLDMAN, WILLIAM J. MEURER, ALVARO G. de MOLINA, VADIM PERELMAN, and ANTHONY N. RENZI, | ) ) ) ) ) ) ) | |
| Defendants, | ) ) | |
| and | ) ) | |
| WALTER INVESTMENT MANAGEMENT CORP., now known as Ditech Holding Corporation, | ) ) ) | |
| Nominal Defendant. | ) | |

**PLAINTIFF'S NOTICE OF UNOPPOSED MOTION FOR**
**PRELIMINARY APPROVAL OF SETTLEMENT**

PLEASE TAKE NOTICE that upon the accompanying Stipulation of Settlement dated October 17, 2018 (the "Stipulation")[1], the exhibits attached thereto, the accompanying Memorandum of Law and all prior pleadings and proceedings, Plaintiff in the above-captioned consolidated shareholder derivative action, derivatively on behalf of Walter Investment Management Corp., now known as Ditech Holdings Corporation ("WIMC" or the "Company") hereby moves this Court, at the United States District Court for the Eastern District of Pennsylvania, before the Honorable J. Curtis Joyner, located at 601 Market Street, Courtroom 17-A, Philadelphia, PA 19106, for an Order: (1) granting preliminary approval of the proposed Settlement; (2) approving the Settling Parties' proposed form and method of giving notice of the Settlement to current WIMC stockholders; (3) scheduling a hearing at which time the Court will consider (a) the Settling Parties' request for final approval of the Settlement, and entry of final order and judgment, (b) Plaintiff's Counsel's application for an award of attorneys' fees and reimbursement of expenses, and (c) Plaintiff's application for a service award; and (4) granting such other relief as the Court deems just and proper.

Dated:  October 23, 2018                    Respectfully submitted,


                                            **DONOVAN LITIGATION GROUP, LLC**

                                            By: _s/ Michael D. Donovan_
                                            Michael D. Donovan
                                            15 Saint Asaphs Road
                                            Bala Cynwyd, PA 19004-2405
                                            Telephone: (610) 647-6067
                                            Facsimile: (610) 647-7215

---

[1] Unless otherwise defined herein, all defined terms shall have the meanings as set forth in the Stipulation, which is attached as Exhibit 1 to the Declaration of Thomas J. McKenna in Support of Plaintiff's Unopposed Motion for Preliminary Approval of Settlement

Email: mdonovan@donovanlitigationgroup.com

***Local counsel***

-and-

Thomas J. McKenna
**GAINEY McKENNA & EGLESTON**
440 Park Avenue South, 5th Floor
New York, NY 10016
Telephone: (212) 983-1300
Facsimile: (212) 983-0383
Email: tjmckenna@gme-law.com

***Attorneys for Plaintiff***

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHAEL E. VACEK, JR., derivatively on behalf of WALTER INVESTMENT MANAGEMENT CORP., now known as Ditech Holding Corporation, | ) ) ) ) ) | |
| Plaintiff, | ) | Case 2:17-cv-02820-JCJ |
| v. | ) ) | |
| GEORGE M. AWAD, DANIEL G. BELTZMAN, MICHAEL M. BHASKARAN, NEAL P. GOLDMAN, WILLIAM J. MEURER, ALVARO G. de MOLINA, VADIM PERELMAN, and ANTHONY N. RENZI, | ) ) ) ) ) ) ) | |
| Defendants, | ) ) | |
| and | ) ) | |
| WALTER INVESTMENT MANAGEMENT CORP., now known as Ditech Holding Corporation, | ) ) ) | |
| Nominal Defendant. | ) | |

# PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION <u>FOR PRELIMINARY APPROVAL OF SETTLEMENT</u>

## **TABLE OF CONTENTS**

I.      INTRODUCTION ............................................................................................1

II.     BACKGROUND OF THE ACTION ...........................................................3

        A.  Factual Background ...........................................................................3

        B.  Procedural Background.......................................................................4

                1.  *The Action* ...............................................................................4

                2.  *Settlement Negotiations* ...........................................................5

III.    TERMS OF THE PROPOSED SETTLEMENT ..................................6

IV.     THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL ..............................10

        A.  Applicable Legal Standards ..............................................................10

        B.  The Settlement Is the Product of Arm's-Length Negotiations by
            Experienced and Well-Informed Counsel, and Is Therefore
            Presumptively Fair ............................................................................11

        C.  The Non-Monetary Recovery Secured for WIMC Is Fair
            and Reasonable in Light of the Serious Risks of Establishing
            Liability and Damages .....................................................................13

        D.  Continued Litigation Would Be Complex, Time-Consuming and Expensive ............15

        E.  Sufficient Information Has Been Adduced at this Stage
            Of the Proceeding to Warrant Preliminary Approval .................................16

V.      THE PROPOSED NOTICE OF SETTLEMENT IS ADEQUATE ...............................16

VI.     PROPOSED SCHEDULE OF EVENTS........................................................18

VII.    CONCLUSION ...........................................................................................19

## <u>TABLE OF AUTHORITIES</u>

*Bell Atl. Corp. v. Bolger*,
   2 F.3d 1304 (3d Cir. 1993) ........................................................................ 10, 13, 18

*Bushansky v. Armacost*,
   2014 U.S. Dist. LEXIS 88072 (N.D. Cal. June 25, 2014) ....................................... 17

*Cohn v. Nelson*,
   375 F. Supp.2d 844 (E.D. Mo. 2005) ................................................................ 9, 12

*Daubert v. Merrell Dow Pharm., Inc.*,
   509 U.S. 579 (1993) ......................................................................................... 15

*In re Automotive Refinishing Paint Antitrust Litig.*,
   MDL Docket No. 1426, 2006 U.S. Dist. LEXIS 93936 (E.D. Pa. Dec. 28, 2006) .................. 11

*In re Corel Corp. Sec. Litig.*,
   293 F. Supp. 2d 484, 2003 U.S. Dist. LEXIS 21024 (E.D. Pa. 2003) ...................................... 18

*In Re: GMC Pick- up Truck Fuel Tank Prods. Liab. Litig.*,
   55 F.3d 768 (3d Cir. 1995)..........................................................................................10

*In re Lloyd's Am. Trust Fund Litig.*,
   No. 96 Civ. 1262 (RWS), 2002 U.S. Dist. LEXIS 22663 (S.D.N.Y. Nov. 26, 2002) .............. 15

*In re PaineWebber Ltd. P'ships Litig.*,
   171 F.R.D. 104 (S.D.N.Y. 1997) ......................................................................... 16

*In re Prudential Sec. Inc. Ltd. P'ship Litig.*,
   163 F.R.D. 200 (S.D.N.Y. 1995) ............................................................................11

*In re Rambus Inc. Derivative Litig.*,
   2009 U.S. Dist. LEXIS 131845 (N.D. Cal. Jan. 20, 2009) ........................................ 17

*In re Schering-Plough Corp. Stockholder Deriv. Litig.*,
   Master Derivative Docket Civ. Action No. 01-1412,
   2008 U.S. Dist. LEXIS 2569 (D.N.J. Jan. 14, 2008) ......................................... 13-14

*In re School Asbestos Litig.*,
   921 F.2d 1330 (3d Cir. 1990) ........................................................................... 10

*In Re: Warfarin Sodium Antitrust Litig.*,
   391 F.3d 516 (3d Cir. 2004) ............................................................................. 10

*Kyriazi v. Western Elec. Co.*,
   647 F.2d 388 (3d Cir. 1981)..............................................................................18

*Lewis v. Newman*,
  59 F.R.D. 525 (S.D.N.Y. 1973) ............................................. 14

*Mills v. Elec. Auto-Lite Co.*,
  396 U.S. 375 (1970) ...................................................... 13, 14

*Peak Fin., LLC v. Hassett*,
  2016 U.S. Dist. LEXIS 147565 (D. Nev. Oct. 20, 2016) ........................ 17

*Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*,
  390 U.S. 414 (1968) ......................................................... 15

*Shlensky v. Dorsey*,
  574 F.2d 131 (3d Cir. 1978) ............................................. 11, 13

*Tenuto v. Transworld Sys.*,
  No. Civ. A. 99-4228, 2001 U.S. Dist. LEXIS 17694 (E.D. Pa. Oct. 31, 2001) .................. 10, 11

*Unite Nat'l Ret. Fund v. Watts*,
  Civil Action No. 04-CV-3603 (DMC),
  2005 U.S. Dist. LEXIS 26246 (D.N.J. Oct. 28, 2005) .................................. 11, 13, 14

*Yong Soon Oh v. AT&T Corp.*,
  225 F.R.D. 142 (D.N.J. 2004) ............................................... 17

## **Statutes:**

Fed. R. Evid. 702 ............................................................. 15

Federal Rule of Civil Procedure 23.1 ......................................... 16

## **Other:**

Manual for Complex Litigation Third §30.41 .................................... 10

Plaintiff, in the above-captioned consolidated stockholder derivative action, derivatively on behalf of WIMC Investment Management Corp., now known as Ditech Holding Corporation ("WIMC" or the "Company"), respectfully submit this memorandum in support of his Unopposed Motion for Preliminary Approval of Settlement (the "Motion").  The Motion seeks entry of an order (the "Preliminary Approval Order") that will: (i) preliminarily approve the Settlement as set forth in the Stipulation and Agreement of Settlement dated October 17, 2018 (the "Stipulation")[1], entered into by and among the following parties through their respective counsel: (1) plaintiff Michael E. Vacek, Jr. ("Vacek" or "Plaintiff"), (2) Nominal Defendant WIMC, and (3) Defendants George M. Awad, Daniel G. Beltzman, Michael M. Bhaskaran, Neal P. Goldman, William J. Meurer, Alvaro G. De Molina, Vadim Perelman, and Anthony N. Renzi (collectively, the "settling Parties"); (ii) approve the form and manner of providing notice of the Settlement to current WIMC stockholders ("Notice"); and (iii) schedule a hearing at which the Court will consider final approval of the Settlement and other related issues (the "Settlement Hearing").

## I.    INTRODUCTION

The Settlement provides for WIMC's implementation and maintenance of corporate governance reforms and enhancements at WIMC (the "Reforms") and for the dismissal of the Action.

The Reforms confer material benefits to WIMC, the real party in interest in the Action.  As a result of the Settlement, WIMC will implement and maintain a set of Reforms that, as described below, address the alleged deficiencies in WIMC's internal controls over financial reporting.  In

---

[1]     Unless otherwise defined herein, all defined terms shall have the meanings as set forth in the Stipulation, which is attached as Exhibit 1 to the Declaration of Thomas J. McKenna in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Proposed Settlement.

the Action, Plaintiff asserted claims on behalf of WIMC against Defendants alleging breach of fiduciary duties, unjust enrichment, and waste of corporate assets involving, among other things, the origination, underwriting, and appraisal of mortgage products, claims by, and settlements with, government agencies concerning the origination, underwriting, and appraisal of mortgage products, and accounting and financial reporting related to default servicing activities, including, but not limited to, errors in financial statements and weaknesses in internal controls over financial reporting with respect to foreclosure tax liens, foreclosure related advances, processing and oversight of loans in bankruptcy, adjustments of reserves, and valuation allowances on deferred tax asset balances. *See* Stipulation, Ex. 1, ¶ C to the Declaration of Thomas J. McKenna in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Settlement ("McKenna Decl."). As a result of the Settlement, WIMC will maintain the Reforms for no less than three (3) years.

The Settlement of this complex litigation was the product of substantial effort, a vigorous pre- and post-filing investigation by Plaintiff's Counsel, and arm's-length negotiations by skilled and experienced counsel. Plaintiff has carefully weighed the benefits the Settlement guarantees for the Company against the significant risks, costs and delay that would be entailed in attempting to secure a better result through further litigation. Plaintiff's Counsel's recommendation that the Court approve the Settlement is based on counsel's significant experience in stockholder derivative litigation and is informed by, among other things, counsel's extensive pre- and post-commencement investigation; evaluation of the strengths and weaknesses of the claims and defenses; consideration of insurance coverage available; and a comparison of the relative value of the corporate governance achievable through settlement and the risks and rewards of continued litigation.

The settling Parties agree that Plaintiff's Counsel are entitled to an award of reasonable attorneys' fees and litigation expenses in recognition of the substantial benefits conferred on WIMC and its stockholders by the Settlement in the total amount of $257,500.00 (the "Attorneys' Fees and Litigation Expenses"), subject to Court approval.  McKenna Decl., Exhibit 1, Stipulation, ¶ 10.  Under the settling Parties' proposed schedule, *see infra* at § VI, Plaintiff will file his motion for final approval of the Settlement, including approval of the Fee Award at least thirty-five (35) calendar days prior to the Settlement Hearing.  *See id.*; McKenna Decl., Exhibit A to Exhibit 1, Preliminary Approval Order at ¶ 12.  Plaintiff is also seeking a modest service award for his participation in the Action in an amount not to exceed $2,500.00, subject to Court approval.  Any service award awarded by the Court will be paid from the Attorneys' Fees and Litigation Expenses award.  McKenna Decl., Exhibit 1, Stipulation, ¶ 10.

At the preliminary approval stage, the Court need only conclude that the Settlement is within the range of what might be found to be fair, reasonable, and adequate, such that Notice of the Settlement should be provided to WIMC's stockholders and the Settlement Hearing be scheduled.  As discussed herein, the Settlement meets this standard, and, therefore, the Court should preliminarily approve the Settlement and enter the Preliminary Approval Order.

## II.    BACKGROUND OF THE ACTION

### A.    Factual Background

WIMC, is a Maryland corporation with its principal place of business in Pennsylvania. WIMC describes itself as an independent servicer and originator of mortgage loans and servicer of reverse mortgage loans.  Amended Complaint, ¶ 5, Dkt. No. 28.  Plaintiff alleged that WIMC and its subsidiaries had a history of making false statements related to servicing reverse mortgage loans, and deceiving homeowners relating to loan servicing and modifications which resulted in two settlements with federal agencies and WIMC paying more than $92 million in fines.  *Id*., ¶ 23.

Plaintiff further alleged in the Action that from as early as May 3, 2016, WIMC Defendants permitted Walter Investment to engage in similar conduct involving some of the same subsidiaries that has previously caused harm to WIMC: (a) the Company was involved in fraudulent practices that violated the False Claims Act; (b) the Company's Ditech subsidiary (which was previously named Green Tree) had a material weakness in its internal controls over financial reporting, specifically in its default servicing activities (the same types of practices that harmed its subsidiaries Green Tree) and RMS); and (c) resultantly, the Company lacked adequate internal controls over financial reporting. *Id*., ¶ 24. This conduct by Defendants in ignoring the previous red flags of Company misconduct and allowing the Company to repeat its misconduct gives rise to the instant action. *Id*.

### B. **Procedural Background**

#### 1. *The Action*

On June 22, 2017, Plaintiff commenced the instant Action by the filing of a Verified Shareholder Derivative Complaint. Dkt. No. 1. As mentioned above, Plaintiff asserted various claims on behalf of Nominal Defendant WIMC against certain of the Defendants for breach of fiduciary duties.

On August 3, 2017, Defendants filed a motion to dismiss with supporting papers. *See* Dkt. Nos. 22 to 22-3. On September 13, 2017, Plaintiff filed a Verified Amended Shareholder Derivative Complaint. Dkt. No. 28. On October 5, 2017, Defendants filed a motion to dismiss the amended complaint (Dkt. Nos. 30 to 30-2). On November 6, 2017, Plaintiff filed his Memorandum of Law in Opposition to the Motion to Dismiss the Amended Complaint. Dkt. No. 31. On November 29, 2017, Defendants filed reply papers in support of their motion to dismiss the amended complaint. Dkt. Nos. 32 to 32-1.

Then, on December 1, 2017, while the motion to dismiss was pending, WIMC filed a Notice of Bankruptcy Filing and Imposition of Automatic Stay Pursuant to Section 362(a) of the Bankruptcy Code.  Dkt. No. 33.  The Action remained stayed until February 9, 2018 when WIMC filed its Notice of Emergence from bankruptcy and Modification of the Automatic Stay.  Dkt. No. 34.

After further briefing on supplemental authority submitted in connection with the pending motion to dismiss (*see* Dkt. Nos. 35 and 36), this Court on April 25, 2018 entered an Order denying Defendants' motion to dismiss the amended complaint.  *See* Dkt. No. 38.  On May 9, 2018, Defendants filed a Motion for Reconsideration or in the alternative Certification for appeal pursuant to 28 U.S.C. § 1292(b) ("Motion for Reconsideration").  *See* Dkt. Nos. 39 to 39-3.

### 2.   *Settlement Negotiations*

In March of 2018 while the motion to dismiss the Amended Complaint was pending, Plaintiff made a settlement demand upon Defendants, but no settlement discussions were had. Thereafter, while Defendants' Motion for Reconsideration was pending, Plaintiff's counsel and Defendants' Counsel explored a possible settlement in May and June of 2018 and eventually reached agreement on a Term Sheet of corporate governance measures.   Thereafter a Memorandum of Understanding was negotiated and executed on July 2, 2018.  Following that, the settling Parties negotiated and eventually executed on October 17, 2018, the Stipulation and Agreement of Settlement ("Stipulation") and supporting exhibits attached to the McKenna Decl. as Ex. 1.  As a condition of the settlement reflected in this Stipulation (the "Settlement"), WIMC will agree to institute and maintain for at least three (3) years certain corporate governance reforms, the terms of which are fully set forth in the Stipulation.  *See* McKenna Decl., Ex.1, ¶¶ 7-8.

Thereafter, the settling Parties negotiated at arm's-length the attorneys' fees and reimbursement of expenses to be paid to Plaintiff's Counsel, in light of the substantial benefits that will be conferred upon the Company by the corporate governance reforms and as a result of the institution and settlement of the Action. The settling Parties eventually agreed to a final proposal of an award of Attorneys' Fees and Litigation Expenses in the total amount of $257,500.00 to be paid to Plaintiffs' Counsel, subject to the approval of the Court. McKenna Decl., Ex.1, ¶¶ 9-10.

## III.   TERMS OF THE PROPOSED SETTLEMENT

The Settlement provides for the implementation of corporate governance reforms designed to prevent misconduct and detect potential violations of applicable law, regulations, and Company policies. The reforms are structured to ensure that WIMC's Board of Directors ("Board") fulfills its role in risk oversight of WIMC's operations. WIMC will maintain the reforms for a period of at least three years.

The reforms, with the paragraph numbers and letters assigned to them by the Stipulation, are as follows:

<u>**SETTLEMENT CONSIDERATION**</u>

7.   In consideration of the settlement of the Released Plaintiff's Claims against Defendants' Releasees and WIMC's Releasees, WIMC has adopted or will adopt the following corporate governance measures:

(a)   Since the commencement of this lawsuit on June 22, 2017, WIMC has "refreshed" its board of directors, board committees, and senior management as follows:

(i)   A majority of the Board's current members are new directors who joined the Board in 2018: of nine current directors, 1 joined in December 2015 (Daniel Beltzman); 1 joined in June 2016 (George Awad); 1 joined in January 2017 (Neal Goldman); and 6 joined in February 2018 (David Ascher, Seth Bartlett, John Brecker, Thomas Miglis, Thomas Marano, and Samuel Ramsey). All eight

6

of the Board's non-employee directors are independent under the NYSE listing requirements.

(ii)    WIMC hired a new Chief Executive Officer in 2018, Thomas Marano.

(iii)    WIMC hired a new Chief Financial Officer in 2018, Jerry Lombardo.

(iv)    WIMC hired a new Chief Operating Officer in 2018, Ritesh Chaturbedi.

(v)    A majority of the Board's Audit Committee consists of directors who joined the Board in 2018: on June 1, 2017, the Audit Committee consisted of Michael Bhaskaran, Alvaro De Molina, Neal Goldman, and William Meurer; as of April 20, 2018 the Audit Committee consists of John Brecker, Neal Goldman, and Samuel Ramsey. All members of the Audit Committee are independent under Rule 10A-3(b)(1) of the Securities Exchange Act of 1934, as amended.

(vi)    A majority of the Board's Compensation Committee consists of directors who joined the Board in 2018: on June 1, 2017, the Compensation Committee consisted of Daniel Beltzman, Alvaro De Molina, Neal Goldman, and Vadim Perelman; as of April 20, 2018 the Compensation Committee consists of Seth Bartlett, Daniel Beltzman, and Thomas Miglis.

(vii)    A majority of the Board's Finance Committee consists of directors who joined the Board in 2018: on June 1, 2017, the Finance Committee consisted of Daniel Beltzman, Alvaro De Molina, Neal Goldman, and Vadim Perelman; as of April 20, 2018 the Finance Committee consists of George Awad, John Brecker, and Samuel Ramsey.

(b)    Since the commencement of this lawsuit, WIMC has adopted the following corporate governance measures:

(i)    The Board amended its Corporate Governance Guidelines to provide that when the Chairman of the Board is not an independent director the Board will consider appointment of a Lead Independent Director, and added an Appendix to its Corporate Governance Guidelines describing the duties of the Lead Independent Director. In May 2018, the Board appointed Seth Bartlett, a director who joined the Board in 2018, to serve as Lead Independent Director.

(ii)     The Board created a Technology and Operations Committee, consisting of directors who joined the Board in 2018: David Ascher, Seth Bartlett, and Thomas Miglis.

(iii)    The Board approved an equity incentive plan (the Ditech Holding Corporation 2018 Equity Incentive Plan) providing for clawbacks of compensation where:

    (a)     the "compensation [is] . . . based on financial statements that are subsequently required to be restated in a way that would decrease the value of such compensation;" or

    (b)     within one year of the exercise or vesting of the compensation award (i) "Service is terminated for Cause," (ii) "Participant is subject to any recoupment of benefits pursuant to [WIMC's] compensation recovery, 'clawback' or similar policy, as may be in effect from time to time," or (iii) "Committee determines in its discretion either that, (1) during the Participant's period of Service, the Participant engaged in an act or omission which would have warranted termination of the Participant's Service for Cause or (2) after a Participant's termination of Service, the Participant engaged in conduct that materially violated any continuing obligation or duty of the Participant in respect of [WIMC] or any Subsidiary."

(iv)    WIMC has updated its website to ensure the correct listing of current members of all Board Committees.

(c)     WIMC agrees to adopt the following additional corporate governance measures no later than thirty (30) calendar days following the Effective Date:

(i)     The Board's Lead Independent Director and Compliance Committee will oversee annual self-evaluation of the Board and all Board Committees other than the Compliance Committee. The Lead Independent Director and the Audit Committee will oversee the Board's annual self-evaluation of the Compliance Committee.

(ii)    WIMC will amend its Corporate Governance Guidelines to reimburse directors for the cost of attending continuing director education programs in order to encourage directors to attend such programs and maintain the level of expertise required to perform their responsibilities as directors.

(iii)    WIMC will amend its Compliance Committee charter to provide that the Chief Risk and Compliance Officer will report to the Compliance Committee at least quarterly.

(iv)    The Board will amend the charters of the Audit Committee and the Compliance Committee to require that the Audit Committee and the Compliance Committee hold one joint meeting per year.

(v)    WIMC will require employees to certify annually that they have reviewed WIMC's Code of Conduct and completed all required compliance training.

(d)    WIMC agrees to keep the corporate governance measures stated in ¶¶ 7(b)-7(c) in place for at least three (3) years, unless (i) a majority of the Board's non-management directors determine in the exercise of their business judgment that maintenance of a particular measure no longer serves the best interests of WIMC or (ii) WIMC's General Counsel advises the Board that modification is required by law.

8.    WIMC acknowledges that the filing of the Action was a contributing factor in the adoption and implementation of the corporate governance measures stated in ¶¶ 7(a)-7(b) and a substantial contributing factor in the adoption and implementation of the corporate governance measures stated in ¶ 7(c) and that these corporate governance measures confer a material benefit on WIMC and its stockholders.

\*  \*  \*  \*

Accordingly, the Company's agreement to maintain the material reforms for three (3) years is a meaningful amount of time intended to ensure the reforms become embedded in the Company's policies, practices, and corporate culture. *See* McKenna Decl., Ex. 1, Stipulation, ¶¶ 7-8; *see, e.g.*, *Cohn v. Nelson*, 375 F. Supp.2d 844, 850 (E.D. Mo. 2005) (finding that corporate governance measures that must be in place for no less than three years will "provide meaningful ways of avoiding the problems [the company] experienced in the recent past").

IV.     **THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL**

The proposed settlement creates significant benefits for WIMC, is the result of intense and protracted arm's-length negotiations between experienced counsel, and merits preliminary approval.  If finally approved by the Court, Plaintiff will voluntarily dismiss with prejudice his Action against Defendants in return for the significant corporate governance changes achieved for the benefit of WIMC and its stockholders.

A.     <u>**Applicable Legal Standards**</u>

Preliminary approval should be granted unless the Court finds reasons to doubt its fundamental fairness or other obvious deficiencies.  *See Bell Atl. Corp. v. Bolger*, 2 F.3d 1304, 1318 (3d Cir. 1993) (affirming the substantive fairness of a non-collusive derivative settlement); *see also In Re: Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004); *In Re: GMC Pick- up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995); *In re School Asbestos Litig.*, 921 F.2d 1330, 1333 (3d Cir. 1990) (noting that the court encourages settlement of complex litigation "that otherwise could linger for years").

The Court is not required on preliminary approval to make a final determination that the proposed settlement is fair and reasonable.  "If the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies . . . and appears to fall within the range of possible approval," the Court should direct that notice be disseminated and schedule a final approval hearing.  Manual for Complex Litigation Third §30.41 at 297 (the "Manual").  "In evaluating a settlement for preliminary approval, the court determines whether the proposed settlement discloses grounds to doubt its fairness or other obvious deficiencies such as unduly preferential treatment of class representatives or segments of the class, or excessive compensation of attorneys, and whether it appears to fall within the range of possible approval."  *Tenuto v. Transworld Sys.*, No. Civ. A. 99-4228, 2001 U. S. Dist. LEXIS 17694, at *3

(E.D. Pa. Oct. 31, 2001).  In this regard, the Third Circuit has held that the principal factor in determining the fairness of a derivative settlement is "the extent of the benefit to be derived from the proposed settlement by the corporation, the real party in interest."  *Shlensky v. Dorsey*, 574 F.2d 131, 147 (3d Cir. 1978).

Further, courts have long recognized that in derivative actions, non-monetary benefits, such as material changes in corporate management or policies, provide real and substantial benefits and warrant approval.  The Courts' recognition of the importance of these types of reforms has heightened in the post-*Enron* era.  *See, e.g.*, *Unite Nat'l Ret. Fund v. Watts*, Civil Action No. 04-CV-3603 (DMC), 2005 U.S. Dist. LEXIS 26246, at *8 (D.N.J. Oct. 28, 2005) ("*Shell Deriv.*") (approving governance and compliance relief, noting that "the most important factor in evaluating the fairness of the settlement agreement is the benefit to the corporation").

**B.      The Settlement Is the Product of Arm's-Length Negotiations by Experienced and Well-Informed Counsel, and Is Therefore Presumptively Fair**

In assessing at the preliminary approval stage whether a proposed settlement raises any issue as to fairness, courts often focus on whether the settlement is the product of arm's-length negotiations.  *See, e.g.*, *In re Automotive Refinishing Paint Antitrust Litig.*, MDL Docket No. 1426, 2006 U.S. Dist. LEXIS 93936 (E.D. Pa. Dec. 28, 2006) (citing *In re Prudential Sec. Inc. Ltd. P'ship Litig.*, 163 F.R.D. 200, 209 (S.D.N.Y. 1995)); *Tenuto*, 2001 U. S. Dist. LEXIS 17694, at *3 ("The settlement agreement is a product of lengthy arm's-length negotiations, concluded after completion of discovery.").

Prior to arriving at the proposed settlement in this case, Plaintiff's Counsel conducted investigations relating to the claims and the underlying events alleged in the Action to which their client was a party, including, but not limited to: (1) reviewing and analyzing the Company's public

filings with the SEC, press releases, announcements, transcripts of investor conference calls, and news articles; (2) reviewing and analyzing the allegations contained in the related Securities Class Action[2]; (3) researching the applicable law with respect to the claims in the Action and the potential defenses thereto; (4) researching and drafting the stockholder derivative complaint in the Action; (5) researching and drafting the amended stockholder derivative complaint; (6) researching and drafting the opposition to the motion to dismiss the amended complaint; (7) researching corporate governance issues; (8) preparing extensive settlement demands and corporate governance reform proposals; (9) engaging in extensive settlement negotiations with Defendants' Counsel; (10) negotiating the contents of the settlement Term Sheet and the Memorandum of Understanding; and (11) negotiating the terms of the Stipulation and its exhibits. *See* McKenna Decl., Ex. 1.

In addition, the negotiation process undertaken here was at arm's-length and was intensive and hard fought. As discussed above, settlement negotiations in this case occurred over a lengthy period, and included the exchange of multiple proposals, initially by Plaintiff's Counsel with counter-proposals from Defendants' Counsel. The negotiation process included multiple telephonic and written communications. The terms and conditions of the Stipulation are the results of this intensive, arm's-length process. *See, e.g.*, *Cohn v. Nelson*, 375 F. Supp. 2d 844, 855 (E.D. Mo. 2005) ("In assessing the merits of the settlement, plaintiffs' counsel considered the factual and legal questions that were disputed in the derivative actions. The Court is convinced the proposed settlement was reached after counsel had conducted an extensive investigation . . ."). There are no grounds to doubt the fairness of the proposed Settlement or the intensive, arm's-length negotiations that achieved it. *See* McKenna Decl., Ex. 1, Stipulation.

---

[2]      *Elkin v. WIMC Investment Mgmt. Corp. et al*, Case No. 2:17-cv-2025-JCJ (E.D. Pa.).

Plaintiff's Counsel has decades of experience in stockholder representative litigation, and their skills have been recognized by courts across the nation in dozens of appointments to act as lead counsel in the prosecution of stockholder derivative actions. *See* McKenna Decl. Exs. 2 and 3, for the résumés of Gainey McKenna & Egleston and The Donovan Litigation Group, LLC, respectively. The positions Plaintiff's Counsel took in these negotiations were informed by careful analysis of the law, a thorough investigation and evaluation of the facts, consideration of the remaining insurance coverage available, and examination of the best corporate governance practices applicable to WIMC in light of the allegations contained in the amended complaint filed in the Action. Defendants were vigorously represented by Dechert, LLP, a corporate defense firm who is pre-eminent in the field of derivative and securities litigation and who were familiar with the relevant facts. McKenna Decl., Ex. 1, Stipulation.

Accordingly, the Settlement enjoys a strong presumption of fairness.

**C.    The Non-Monetary Recovery Secured for WIMC Is Fair and Reasonable in Light of the Serious Risks Establishing Liability and Damages**

In determining whether to approve a stockholder derivative settlement, "[t]he principal factor . . . is the extent of the benefit to be derived from the proposed settlement by the corporation, the real party in interest[.]" *Bell Atl.*, 2 F.3d at 1311 (internal quotation marks omitted) (alteration in original); *see also Shlensky*, 574 F.2d at 147.

Courts widely recognize that "a corporation may receive a 'substantial benefit' from a derivative suit . . . regardless of whether the benefit is pecuniary in nature." *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 395 (1970); *see also Shell Deriv.*, 2005 U.S. Dist. LEXIS 26246, at *18 ("the great benefit conferred upon Shell as a result of the new corporate governance principles provided for in the settlement agreement . . . will serve to prevent and protect Shell from the reoccurrence of certain alleged wrongdoings."); *In re Schering-Plough Corp. Stockholder Deriv.*

13

*Litig.*, Master Derivative Docket Civ. Action No. 01-1412, 2008 U.S. Dist. LEXIS 2569, at *9 (D.N.J. Jan. 14, 2008) (approving settlement "seek[ing] to foster the active involvement of the Board in oversight" and resulting in "the Board's oversight function [being] strengthened").  In particular, non-monetary benefits may support a settlement where "the relief is intended to prevent future harm."  *Shell Deriv.*, 2005 U.S. Dist. LEXIS 26246, at *9.  A non-monetary benefit is a "substantial benefit" where it is "something more than technical in its consequence and . . . accomplishes a result which corrects or prevents an abuse which would be prejudicial to the rights and interests of the corporation or affect the enjoyment or protection of an essential right to stockholder's interest." *Mills*, 396 U.S. at 396.

The settling Parties agree that the corporate governance reforms achieved by the Settlement confer substantial benefits to WIMC and current WIMC stockholders and that the filing and pendency of the Action comprised a substantial contributing factor to the Company's decision to implement the reforms.  *See* McKenna Decl., Ex. 1, Stipulation, ¶ 8.  As set forth above, the Settlement will result in WIMC's implementation and maintenance of corporate governance reforms that substantially reduce the likelihood that corporate governance lapses similar to those alleged in the Action will damage the Company in the future.  The reforms are designed to strengthen WIMC's overall corporate governance practices and internal controls and the rigor of Board oversight, generally.

These benefits are especially sufficient to warrant preliminary approval, given the very real possibility that continued litigation would yield no benefit for WIMC.  The risks of demonstrating liability and providing damages in complex stockholder litigation are substantial.  For example, as other courts have repeatedly recognized, "stockholder litigation is notably difficult and notoriously uncertain." *Lewis v. Newman*, 59 F.R.D. 525, 528 (S.D.N.Y. 1973).  Although Plaintiff strongly

believes his claims are meritorious, success in establishing Defendants' liability is by no means a foregone conclusion.

The challenges involved in determining and proving the amount of recoverable damages are equally daunting.  "The determination of damages . . . is a complicated and uncertain process, typically involving conflicting expert opinions.  The reaction of a jury to such complex expert testimony is highly unpredictable."  *In re Lloyd's Am. Trust Fund Litig.*, No. 96 Civ. 1262 (RWS), 2002 U.S. Dist. LEXIS 22663, at *61 (S.D.N.Y. Nov. 26, 2002).  In fact, Plaintiff faces substantial risks in even attempting to present expert testimony on damages, as Defendants undoubtedly would have challenged such testimony. *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 585 (1993), *superseded on other grounds by* Fed. R. Evid. 702.

Moreover, while Plaintiff believes in the merits of his case, the benefit to the Company of pursuing his claims to trial had to be weighed against the potential litigation expense to the Company.  The Settlement eliminates these and other risks of continued litigation, including the very real risk of no recovery for WIMC after years of additional litigation, while ensuring that the Company and its stockholders obtain immediate benefits through the valuable corporate governance reforms.  The Settlement is therefore eminently reasonable.

**D.**     **Continued Litigation Would Be Complex, Time-Consuming and Expensive**

A preliminary evaluation of the fairness of a settlement requires a court to balance the "likely rewards of litigation" with its risk and cost against the benefits obtained by settlement. *See Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 425 (1968).  Here, the complexity, expense and likely duration of continued litigation weigh heavily in favor of settlement.  Unless the proposed Settlement is clearly inadequate, its approval is preferable to continuing lengthy and expensive litigation with highly uncertain results.

Although Plaintiff's claims survived the motion to dismiss, the discovery required to survive summary judgment and bring the case to trial would have been complex. Experts would need to be prepared and expert discovery conducted. In addition, a myriad of complex issues of law and fact would need to be mastered in trying the case and pursuing it through appeal – all without any guarantee of materially improving on the Settlement's recovery. The Settlement obviates the expenditure of further time and resources, and resolves the litigation on favorable terms for WIMC, permitting the Company to return its full attention to operating its business and generating value for its stockholders. These considerations weigh heavily in favor of preliminary approval.

### E. Sufficient Information Has Been Adduced at this Stage of the Proceeding to Warrant Preliminary Approval

Plaintiff's Counsel's investigation preceding and subsequent to the filing of the detailed original and amended complaints is sufficient to support Plaintiff's Counsel's recommendation that the Settlement is fair and reasonable. *See In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y. 1997) ("'great weight' is accorded to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation").

## V. THE PROPOSED NOTICE OF SETTLEMENT IS ADEQUATE

Under Federal Rule of Civil Procedure 23.1, notice of a proposed settlement of a stockholder derivative action "must be given to stockholders . . . in the manner that the court directs." Fed. R. Civ. P. 23.1(c). The Stipulation and proposed Preliminary Approval Order contemplate that, within ten (10) business days after the entry of the Preliminary Approval Order WIMC shall: (i) post a copy of the Stipulation, the Preliminary Approval Order, and the Notice (defined in the Stipulation and substantially in the form attached as Exhibit B to the Stipulation) on WIMC's website; (ii) cause a Current Report on Form 8-K to be filed with the Securities and

Exchange Commission that attaches the Notice and provides a link to the Stipulation, the Preliminary Approval Order and the Notice posted on WIMC's website; and (iii) publish the Notice once in *Investor's Business Daily* and transmit it once over *PR Newswire*.  In addition, the costs of the Notice shall be paid by WIMC.  *See* McKenna Decl., Ex. 1, Stipulation, ¶ 13; *see also* Ex. A (proposed Preliminary Approval Order) and Ex. B (proposed Notice) to the Stipulation.

The Parties believe the content and manner of the Notice constitutes adequate and reasonable notice to current WIMC stockholders pursuant to applicable law and due process.  *Id.* Indeed, the settling Parties' proposed method of notice has been routinely approved by many other courts.[3]

The Notice is drafted in plain and easily understood language, clearly describes the nature of the Action and the claims alleged in the Action, the terms of the proposed Settlement, and the reasons for the Settlement.  In addition, the Notice invites WIMC stockholders who seek additional information to inspect the Stipulation and other documents filed with the Court by visiting WIMC's website where they will be posted.  *See* McKenna Decl., Ex. B to Ex. 1, Notice, page 2.

---

[3]     The use of website posting coupled with other publication has gained broad acceptance in light of the rapid transition of the investment community from a paper-based to a web-based disclosure system. *See* "Use of Electronic Media for Delivery Purposes," SEC Release No. 33-7233, 60 Fed. Reg. 53458, 53459 (Oct. 6, 1995) ("The Commission believes that the use of electronic media should be at least an equal alternative to the use of paper based media"); *Yong Soon Oh v. AT&T Corp.*, 225 F.R.D. 142, 149 (D.N.J. 2004) (approving settlement of class action in which access to the stipulation was made available by website). The notice program that the settling Parties stipulated to employ in this case – the Company's issuance of two press releases – one in a newspaper and one over the internet, the Company's posting on its website, and the Company's filing of a Form 8-K with the SEC -- has been widely used in similar stockholder derivative settlements and approved by numerous courts as meeting due process. *See, e.g.*, *Bushansky v. Armacost*, 2014 U.S. Dist. LEXIS 88072, at *21 (N.D. Cal. June 25, 2014) (requiring a notice plan to include a link on defendant's investor relations website that leads to a webpage to be displayed for a minimum of 30 days, a press release to be issued by defendant, and a Form 8-K filing with the SEC); *In re Rambus Inc. Derivative Litig.*, 2009 U.S. Dist. LEXIS 131845, at *7 (N.D. Cal. Jan. 20, 2009) (approving settlement where notice included a link on a company website, press release, and a Form 8-K filing with the SEC). *See also Peak Fin., LLC v. Hassett*, 2016 U.S. Dist. LEXIS 147565, at *3-4, 6-7 (D. Nev. Oct. 20, 2016) (approving settlement where notice comprised filing of a Form 8-K with the SEC, and the company's posting on its website).

As a result, the Notice is more than reasonably calculated to apprise current WIMC stockholders of the terms of the proposed Settlement and the options available in connection with the judicial proceeding. *See Bell Atl.*, 2 F.3d at 1317 (notice held adequate because it "summarized the Bell of Pennsylvania matter, the procedural history, the parties' contentions, the issues involved, the reasons each party recommended settlement, and the terms of the settlement agreement" and it "advised stockholders of their right to object, the consequences of not doing so, and how to go about obtaining further information available on file with the court") (citing *Kyriazi v. Western Elec. Co.*, 647 F.2d 388, 395 (3d Cir. 1981)); *In re Corel Corp. Sec. Litig.*, 293 F. Supp. 2d 484, 2003 U.S. Dist. LEXIS 21024 (E.D. Pa. 2003).

Accordingly, the Court should approve the proposed method and form of notice to current WIMC stockholders.

## VI.     PROPOSED SCHEDULE OF EVENTS

In connection with preliminary approval of the Settlement, Plaintiff requests that the Court establish dates by which the Notice will be provided and by which current WIMC stockholders may object to the Settlement.  Plaintiff also requests that the Court set the date for a hearing on the final approval of the Settlement (the "Settlement Hearing").  The proposed schedule is extended to include briefing on the Settlement, which will be heard at the Settlement Hearing.  The following schedule is proposed:

| <u>Event</u> | <u>Deadline</u> |
|---|---|
| WIMC shall: (i) cause a press release to be issued that contains the contents of the Notice once in *Investor's Business Daily* and transmit it once over *PR Newswire*; (ii) cause a Current Report on Form 8-K to be filed with the SEC that contains the contents of the Notice; and (iii) post on the Investor Relations portion of its | Within ten (10) business days of entry of the Preliminary Approval Order. |

| **Event** | **Deadline** |
|---|---|
| website the Notice together with the Stipulation and the Preliminary Approval Order. | |
| Deadline for filing and serving all opening briefs and supporting documents in support of the Settlement, including the Attorneys' Fee and Litigation Expense award and the service award. | At least thirty-five (35) calendar days prior to the Settlement Hearing. |
| Deadline for current WIMC stockholders to submit objections and any response papers in opposition to the Settlement and the Attorneys' Fee and Litigation Expense award and the service award. | At least twenty-one (21) calendar days prior to the Settlement Hearing. |
| Deadline for Defendants' Counsel to file and serve Affidavit or Declaration of publication, filing and posting of the Notice. | At least seven (7) calendar days prior to the Settlement Hearing. |
| Deadline for filing reply papers in further support of the Settlement and Attorneys' Fee and Litigation Expense award and the service award, or in response to objections, if any. | At least five (5) calendar days prior to the Settlement Hearing. |
| Date of Settlement Hearing. | At least fifty-five (55) calendar days after entry of the Preliminary Approval Order. |

This schedule is similar to those used in numerous other stockholder derivative settlements and provides sufficient due process to current WIMC stockholders with respect to their rights concerning the Settlement.  If this schedule is not convenient to the Court, the Parties request that the Court utilize similar time intervals for the events in completing the proposed Preliminary Approval Order.

## VII.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court: (i) preliminarily approve the terms of the Settlement as set forth in the Stipulation and enter the proposed Preliminary Approval Order; (ii) approve the form and manner of disseminating the Notice to

current WIMC stockholders; and (iii) schedule the Settlement Hearing to consider the final

approval of the Settlement and related issues.

Dated:  October 23, 2018                    Respectfully submitted,

                                            **DONOVAN LITIGATION GROUP, LLC**

                                            By: _s/ Michael D. Donovan_

                                            Michael D. Donovan
                                            15 Saint Asaphs Road
                                            Bala Cynwyd, PA 19004-2405
                                            Telephone: (610) 647-6067
                                            Facsimile: (610) 647-7215
                                            Email: mdonovan@donovanlitigationgroup.com

                                            _Local counsel_

                                            -and-

                                            Thomas J. McKenna
                                            **GAINEY McKENNA & EGLESTON**
                                            440 Park Avenue South, 5th Floor
                                            New York, NY 10016
                                            Telephone: (212) 983-1300
                                            Facsimile: (212) 983-0383
                                            Email: tjmckenna@gme-law.com

                                            _Attorneys for Plaintiff_