# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHAEL E. VACEK, JR., derivatively on behalf of WALTER INVESTMENT MANAGEMENT CORP.,<br><br>Plaintiff,<br>v.<br><br>GEORGE M. AWAD, DANIEL G. BELTZMAN, MICHAEL M. BHASKARAN, NEAL P. GOLDMAN, WILLIAM J. MEURER, ALVARO G. de MOLINA, VADIM PERELMAN, and ANTHONY N. RENZI,<br><br>Defendants,<br>and<br><br>WALTER INVESTMENT MANAGEMENT CORP.,<br>Nominal Defendant. | Case 2:17-cv-02820-JCJ |

## [PROPOSED] JUDGMENT AND ORDER
## <u>APPROVING DERIVATIVE ACTION SETTLEMENT</u>

WHEREAS, a derivative action is pending in this Court entitled *Vacek v. Awad, et al.*, Case No. 2:17-CV-02820-JCJ (the "Action");

WHEREAS, (a) Plaintiff Michael E. Vacek, Jr. ("Plaintiff"), derivatively on behalf of Walter Investment Management Corp., now known as Ditech Holding Corporation ("WIMC"), (b) Nominal Defendant WIMC, and (c) Defendants George M. Awad, Daniel G. Beltzman, Michael M. Bhaskaran, Neal P. Goldman, William J. Meurer, Alvaro G. de Molina, Vadim Perelman, and Anthony N. Renzi ("Defendants," and together with Plaintiff and WIMC, the "Parties") have entered into a Stipulation and Agreement of Settlement dated  October 17, 2018

(the "Stipulation") that provides for a complete dismissal of the Action on the terms and conditions set forth in the Stipulation, subject to approval of this Court (the "Settlement");

WHEREAS, by Order dated December 3, 2018 (the "Preliminary Approval Order"), this Court, among other things, (a) preliminarily approved the Settlement; (b) ordered that notice of the Settlement be provided to stockholders of WIMC; (c) provided stockholders of WIMC the opportunity to object to the Settlement; and (d) scheduled a hearing (the "Settlement Hearing") for the following purposes:

(a)     to determine whether the Settlement on the terms and conditions stated in the Stipulation is fair, reasonable, and adequate to WIMC, and should be approved by the Court;

(b)     to determine whether a Judgment in the form attached as Exhibit C to the Stipulation (the "Judgment"), including the releases provided for in the Judgment, should be entered;

(c)     to hear and rule on any objections to the Settlement;

(d)     to determine whether the award of Attorneys' Fees and Litigation Expenses (defined in the Stipulation) to Plaintiff's Counsel provided for in the Stipulation should be approved by the Court; and

(e)     to consider any other matters as the Court deems appropriate.

WHEREAS, the Preliminary Approval Order ordered that, within ten (10) business days of the date of entry of the Preliminary Approval Order, WIMC shall (i) post a copy of the Stipulation, the Preliminary Approval Order, and the Notice of Proposed Settlement of Derivative Action and Motion for an Award of Attorneys' Fees and Litigation Expenses (the "Notice"), substantially in the form attached to the Stipulation as Exhibit B, on WIMC's website; (ii) cause a Current Report on Form 8-K to be filed with the Securities and Exchange

2

Commission that attaches the Notice and provides a link to the Stipulation, the Preliminary Approval Order and the Notice posted on WIMC's website; and (iii) publish the Notice once in Investor's Business Daily and transmit it once over PR Newswire;

WHEREAS, the Notice advised stockholders of WIMC of the date, time, place, and purposes of the Settlement Hearing and that any objections to the Settlement were required to be filed with the Court no later than January 10, 2019;

WHEREAS, the Court conducted the Settlement Hearing on January 31, 2019;

WHEREAS, the Court, having reviewed and considered the Stipulation, all arguments and written submissions regarding the Settlement, and the record in the Action, and good cause appearing therefor;

WHEREAS, the Parties have consented to the entry of this Judgment; and

WHEREAS, unless otherwise defined herein, all terms with initial capitalization have the same meanings as they have in the Stipulation;

NOW THEREFORE, after due deliberation, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED as follows:

1. **Jurisdiction** – The Court has jurisdiction over the subject matter of the Action, and all matters relating to the Settlement, as well as personal jurisdiction over the Parties.

2. **Incorporation of Settlement Documents** – This Judgment incorporates and makes a part hereof: (a) the Stipulation filed with the Court on October 23, 2018 as part of Docket No. 45-1; and (b) the Notice filed with the Court on January ____, 2019.

3. **Notice** – The Court finds that the notice to stockholders of WIMC provided for in the Preliminary Approval Order: (a) was implemented in accordance with the Preliminary Approval Order, and (b) (i) constitutes the best notice practicable under the circumstances; (ii)

was reasonably calculated, under the circumstances, to inform stockholders of WIMC concerning the pendency of the Action, the Settlement, the terms and conditions of the Settlement, including this Judgment and the releases provided for in this Judgment, the request by Plaintiff's Counsel for an award of Attorneys' Fees and Litigation Expenses, the right of WIMC stockholders to object to the Settlement, including the award of Attorneys' Fees and Litigation Expenses to Plaintiff's Counsel, and any other aspect of the Settlement, and the right of WIMC stockholders to appear at the Settlement Hearing; (iii) constitutes due, adequate, and sufficient notice to all persons and entities entitled to receive notice of the Settlement; and (iv) satisfies the requirements of Rule 23.1 of the Federal Rules of Civil Procedure and the United States Constitution (including the Due Process Clause), and all other applicable laws and rules.

4. [**<u>Objections</u>** – The Court has considered each of the objections to the Settlement, including the objections submitted by [list objectors]. The Court finds and concludes that each of the objections is with/without merit, and each objection is hereby sustained/overruled.]

5. **<u>Final Settlement Approval and Dismissal of Claims</u>** – In light of the benefits to WIMC, the complexity, expense, and possible duration of further litigation, the risks of establishing liability and damages and the costs of continued litigation, the Court, pursuant to and in accordance with Rule 23.1 of the Federal Rules of Civil Procedure, hereby fully and finally approves the Settlement as set forth in the Stipulation in all respects, including, without limitation, the releases provided for in the Settlement and in this Judgment, and the dismissal with prejudice of the claims asserted against Defendants and Defendants' Releasees (defined below), and finds that the Settlement is in all respects fair, reasonable, and adequate and in the best interests of WIMC. The Court further finds the Settlement as set forth in the Stipulation is

4

the result of arm's-length negotiations between experienced counsel representing the interests of Plaintiff, Defendants, and WIMC. The Parties are directed to implement, perform and consummate the Settlement in accordance with the terms and provisions in the Stipulation.

6.     The Action and all of the claims asserted against Defendants in the Action are hereby dismissed in their entirety with prejudice. The Parties shall bear their own costs and expenses except as otherwise provided in the Stipulation.

7.     **Binding Effect of Judgment** – The terms of the Settlement, as stated in the Stipulation, and of this Judgment, including the releases provided for in this Judgment, shall be forever binding on Defendants, Plaintiff and WIMC.

8.     **Releases** – The releases set forth in paragraphs 4 and 5 of the Stipulation, together with the definitions contained in Paragraph 1 of the Stipulation, are expressly incorporated herein in all respects. The Releases are effective as of the Effective Date.

9.     As used in this Judgment and the releases in Paragraphs 4 and 5 of the Stipulation and below, the following terms shall have the meanings set forth below.

(a)     "Defendants' Counsel" means Dechert, LLP.

(b)     "Defendants' Releasees" means Defendants, Defendants' Counsel, and each of their present and former predecessors, successors, affiliates, employees, general partners, attorneys, accountants, auditors, bankers, advisors, agents, assigns, assignees, indemnifiers, insurers, reinsurers, heirs, estates, executors, trustees, administrators, or trusts, in their capacities as such.

(c)     "Effective Date" means the first business day after all of the conditions specified in ¶ 15 of the Stipulation have occurred or been waived.

5

(d)     "Excluded Claims" means (i) claims asserted in the class action pending in the United States District Court for the Eastern District of Pennsylvania styled *Elkin v. Walter Investment Management Corp., et al.*, Class Action No. 2:17-cv-02025-JCJ, (ii) claims by Defendants or other Defendants' Releasees or WIMC or other WIMC's Releasees against his, her, its, or their insurers, and (iii) claims relating to the enforcement of this Stipulation and the Settlement.

(e)     "Person" means any individual, corporation, professional corporation, limited liability company, partnership, limited partnership, limited liability partnership, association, joint stock company, estate, legal representative, trust, unincorporated association, government or any political subdivision or agency thereof, or any other business or legal entity.

(f)     "Plaintiff's Counsel" means the Donovan Litigation Group, LLC and Gainey McKenna & Egleston.

(g)     "Plaintiff's Releasees" means Plaintiff, Plaintiff's Counsel, and their respective present and former predecessors, successors, affiliates, employees, general partners, managers, attorneys, accountants, auditors, bankers, advisors, agents, assigns, assignees, indemnifiers, insurers, reinsurers, heirs, estates, executors, trustees, administrators, or trusts, in their capacities as such.

(h)     "Released Claims" means Released Defendants' Claims, Released WIMC Claims, and Released Plaintiff's Claims.

(i)     "Released Defendants' Claims" means all claims and causes of action of every nature and description, whether known claims or Unknown Claims, whether arising under federal, state, common or foreign law, that arise out of or relate in any way to the institution,

prosecution, or settlement of the claims asserted in the Action. Released Defendants' Claims do not include the Excluded Claims.

(j)     "Released Plaintiff's Claims" means all claims and causes of action of every nature and description, whether known claims or Unknown Claims, whether arising under federal, state, common or foreign law, that Plaintiff has asserted in the Action or could have asserted in the Action or other action in any forum arising out of or based on the allegations, transactions, facts, claims, matters or occurrences involved, set forth, or referred to in the Action, concerning, among other things, the origination, underwriting, and appraisal of mortgage products, claims by, and settlements with, government agencies concerning the origination, underwriting, and appraisal of mortgage products, and accounting and financial reporting related to default servicing activities, including, but not limited to, errors in financial statements and weaknesses in internal controls over financial reporting with respect to foreclosure tax liens, foreclosure related advances, processing and oversight of loans in bankruptcy status, adjustments of reserves, and valuation allowances on deferred tax asset balances. Released Plaintiff's Claims do not include the Excluded Claims.

(k)     "Released WIMC Claims" means all claims and causes of action of every nature and description, whether known claims or Unknown Claims, whether arising under federal, state, common or foreign law, that arise out of or relate in any way to the subject matter of the Released Plaintiff's Claims and the Released Defendants' claims. Released WIMC Claims do not include the Excluded Claims.

(l)     "Releasee(s)" means Plaintiff's Releasees, Defendants' Releasees, and WIMC's Releasees.

(m)     "Unknown Claims" means any Released Claims that Plaintiff, WIMC, or Defendants or any of the Defendants does not know or suspect to exist in his or its favor at the time of the release of the Released Claims, which, if known by him or it, might have affected his or its decision(s) with respect to the Settlement. With respect to any and all Released Claims, the Parties stipulate and agree that, upon the Effective Date, Plaintiff, WIMC, and Defendants shall be deemed to have waived, and by operation of the Judgment shall have, to the fullest extent permitted by law, waived and relinquished any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States, or principle of common law or foreign law, which is similar, comparable, or equivalent to California Civil Code §1542, which provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

Plaintiff, WIMC, and Defendants acknowledge that Plaintiff, WIMC, or Defendants may hereafter discover facts, legal theories, or authorities in addition to or different from those which he or they now knows or believes to be true with respect to the subject matter of the Released Claims, but that Plaintiff, WIMC, and Defendants intend to, and upon the Effective Date, by operation of the Judgment, shall be deemed to have, and shall have, settled and released, fully, finally, and forever, the Released Claims, known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden, which have existed, now exist, or will exist, upon any theory of law or equity, including, but not limited to, conduct which is negligent, reckless, intentional, with or without malice, or a breach of any duty, law, or rule, without regard to the subsequent discovery or existence of such different or additional facts, legal theories, or authorities. Plaintiff, WIMC, and Defendants acknowledge that the inclusion of "Unknown Claims" in Released Plaintiff's Claims, Released Defendants' Claims, and Released

WIMC Claims was separately bargained for and was a material and essential element of this Stipulation and the Settlement.

(n)   "WIMC's Counsel" means Hangley Aronchick Segal Pudlin & Schiller and Weil, Gotshal & Manges LLP.

(o)   "WIMC's Releasees" means WIMC, WIMC's Counsel, and their respective present and former predecessors, successors, affiliates, employees, general partners, managers, attorneys, accountants, auditors, bankers, advisors, agents, assigns, assignees, indemnifiers, insurers, reinsurers, heirs, estates, executors, trustees, administrators, or trusts, in their capacities as such.

10.   This Court orders that:

(a)   Without further action by anyone, upon the Effective Date, Plaintiff, derivatively on behalf of WIMC, and Plaintiff's and WIMC's respective heirs, executors, administrators, predecessors, successors, and assigns in their capacities as such, shall be deemed to have, and by operation of law and of the Judgment shall have, fully, finally and forever compromised, settled, released, dismissed, resolved, relinquished, waived and discharged the Released Plaintiff's Claims against Defendants' Releasees and WIMC's Releasees, and shall forever be barred and enjoined from directly or indirectly prosecuting, maintaining, intervening in, or participating in, individually, derivatively, as a class member or otherwise, the Released Plaintiff's Claims against Defendants' Releasees and WIMC's Releasees.  This release shall not apply to the Excluded Claims.

(b)   Without further action by anyone, upon the Effective Date, Defendants and WIMC, on behalf of themselves and their respective heirs, executors, administrators, predecessors, successors, and assigns in their capacities as such, shall be deemed to have, and by

operation of law and of the Judgment shall have, fully, finally and forever compromised, settled, released, dismissed, resolved, relinquished, waived and discharged the Released Defendants' Claims and the Released WIMC Claims against Plaintiff and Plaintiff's Releasees, and shall forever be barred and enjoined from directly or indirectly prosecuting, maintaining, intervening in, or participating in, individually, derivatively, as a class member or otherwise, the Released Defendants' Claims and the Released WIMC Claims against any of the Plaintiff's Releasees. This release shall not apply to the Excluded Claims.

(c)     Notwithstanding paragraphs 10(a) and (b) above, nothing in this Judgment shall bar any action by any of the Parties to enforce or effectuate the terms of the Stipulation, the Settlement, or this Judgment.

11.     **Use of this Judgment** – This Judgment, the Stipulation, and the Settlement, whether or not the Effective Date occurs, and any discussions, negotiations, arguments made during negotiations, acts performed, communications, drafts, or agreements relating to this Judgment, the Stipulation, the Settlement, and any matter in connection with such discussions, negotiations, arguments made during negotiations, acts performed, communications, drafts, documents, or agreements, shall not be offered or received against or to the prejudice of Plaintiff, Defendants, WIMC or any Releasee for any purpose other than in an action to enforce the terms of this Judgment, the Stipulation, and the Settlement, and in particular:

(a)     Do not constitute, and shall not be described as, construed as, or otherwise offered or received against any of the Defendants, WIMC or any of Defendants' Releasees or WIMC's Releasees as evidence of (or deemed to be evidence of) any admission, concession, or presumption by any of the Defendants, Defendants' Releasees, WIMC, or WIMC's Releasees with respect to (i) the truth of any allegation or claim in the Action or in any litigation or

10

proceeding in any other forum; (ii) the deficiency of any defense that has been or could have been asserted in the Action or in any other litigation or proceeding in any other forum; (iii) any liability, damages, negligence, fault, or other wrongdoing of any kind by any of Defendants, WIMC or any of Defendants' Releasees or WIMC's Releasees; or (iv) referred to for any other reason against or to the prejudice of any of the Defendants, Defendants' Releasees, WIMC, or WIMC's Releasees, in this or any other civil, criminal, or administrative action or proceeding.

(b)     Do not constitute, and shall not be described as, construed as, or otherwise offered or received against Plaintiff or Plaintiff's Releasees as evidence of (or be deemed evidence of) any admission, concession, or presumption by Plaintiff or Plaintiff's Releasees of any infirmity in any claims in the Action or in any litigation or proceeding in any other forum or in any way referred to for any other reason against or to the prejudice of Plaintiff and Plaintiff's Releasees in this or any other civil, criminal, or administrative action or proceeding.

(c)     Do not constitute, and shall not be described as, construed as, or otherwise offered or received against Plaintiff, Defendants, WIMC or Releasees as evidence of (or deemed to be evidence of) any admission, concession, or presumption that the Settlement consideration represents the amount that could be or would have been recovered after trial and appeals in the Action or that the amount that could be or would have been recovered after trial and appeals in the Action would or would not have exceeded the Settlement consideration.

12.     **<u>Retention of Jurisdiction</u>** – Without affecting the finality of this Judgment in any way, this Court retains continuing and exclusive jurisdiction over: (a) the Parties for purposes of the administration, interpretation, implementation and enforcement of the Settlement; (b) any award to Plaintiff's Counsel of Attorneys' Fees and Litigation Expenses; and (c) all other related matters.

11

13.     **Attorneys' Fees and Litigation Expenses** – Plaintiff's Counsel in the Action are hereby awarded Attorneys' Fees and Litigation Expenses in the amount of $_____. The Court finds that this amount is fair and reasonable under the facts and circumstances of this Action.  Payment of such award of Attorneys' Fees and Litigation Expenses shall be made in accordance with the provisions of the Stipulation.  Any appeal of this portion of the Judgment shall in no way disturb, affect or delay the finality of this Judgment or the Effective Date of the Settlement and shall be considered as a separate part of this Judgment as provided for in the Stipulation.

14.     **Modification of the Agreement of Settlement** – Without further approval from the Court, Plaintiff, Defendants, and WIMC are hereby authorized to agree to and adopt amendments or modifications of the Settlement as stated in the Stipulation that are not materially inconsistent with this Judgment. Without further order of the Court, Plaintiff, Defendants, and WIMC may agree to reasonable extensions of time to carry out any provisions of the Settlement.

15.     **Termination of Settlement** – If the Settlement is terminated as provided for in the Stipulation or the Effective Date of the Settlement does not occur for any other reason, this Judgment shall be vacated, rendered null and void and be of no further force and effect, except as stated in the Stipulation, and this Judgment shall be without prejudice to the rights of the Parties, and the Parties shall revert to their respective positions in the Action as of July 2, 2018.

16.     **Entry of Final Judgment** – There is no just reason to delay the entry of this Judgment as a final judgment in this Action. Accordingly, the Clerk of the Court is expressly directed to immediately enter this final Judgment in this Action.

SO ORDERED this _____ day of _____, 2019.


_____
The Honorable J. Curtis Joyner
United States District Judge

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| MICHAEL E. VACEK, JR., derivatively on behalf of WALTER INVESTMENT MANAGEMENT CORP., now known as Ditech Holding Corporation, | ) ) ) ) ) | |
| Plaintiff, | ) | Case 2:17-cv-02820-JCJ |
| v. | ) | |
| | ) | |
| GEORGE M. AWAD, DANIEL G. BELTZMAN, MICHAEL M. BHASKARAN, NEAL P. GOLDMAN, WILLIAM J. MEURER, ALVARO G. de MOLINA, VADIM PERELMAN, and ANTHONY N. RENZI, | ) ) ) ) ) ) ) | |
| | ) | |
| Defendants, | ) | |
| and | ) | |
| | ) | |
| WALTER INVESTMENT MANAGEMENT CORP., now known as Ditech Holding Corporation, | ) ) ) | |
| Nominal Defendant. | ) | |

## NOTICE OF PLAINTIFF'S MOTION FOR FINAL APPROVAL OF SETTLEMENT AND IN SUPPORT OF ATTORNEYS' FEES, SERVICE AWARD FOR NAMED <u>PLAINTIFF AND REIMBURSEMENT OF CASE EXPENSES</u>

**PLEASE TAKE NOTICE** that upon the accompanying Declaration of Thomas J. McKenna in Support of Plaintiff's Motion for Final Approval of Settlement and in Support of Attorneys' Fees, Service Award for Named Plaintiff and Reimbursement of Case Expenses dated December 27, 2018, the exhibits attached thereto, the accompanying Memorandum of Law and all prior pleadings and proceedings, Plaintiff in the above-captioned stockholder derivative action, derivatively on behalf of Walter Investment Management Corp., now known as Ditech Holding Corporation ("WIMC" or "the Company"), hereby moves this Court, at the United States District Court for the Eastern District of Pennsylvania, before the Honorable J. Curtis Joyner, located at 601 Market Street, Courtroom 17-A, Philadelphia, PA 19106, on January 31, 2019 at 10:30 a.m. or as soon thereafter as counsel can be heard, for an Order: (1) granting final approval of the proposed Settlement; (2) entering the proposed final Judgment and Order dismissing all claims; (3) awarding the agreed-upon negotiated attorneys' fees, service award and reimbursement of case expenses; and (4) granting such other relief as the Court deems just and proper.

Dated: December 27, 2018

Respectfully submitted,

**DONOVAN LITIGATION GROUP, LLC**

By: *s/ Michael D. Donovan*
Michael D. Donovan
15 Saint Asaphs Road
Bala Cynwyd, PA 19004-2405
Telephone: (610) 647-6067
Facsimile: (610) 647-7215
Email: mdonovan@donovanlitigationgroup.com

*Local counsel for Plaintiff*

-and-

Thomas J. McKenna
**GAINEY McKENNA & EGLESTON**
440 Park Avenue South, 5th Floor

1

New York, NY 10016
Telephone: (212) 983-1300
Facsimile: (212) 983-0383
Email: tjmckenna@gme-law.com

***Attorneys for Plaintiff***

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| MICHAEL E. VACEK, JR., derivatively on behalf of WALTER INVESTMENT MANAGEMENT CORP., now known as Ditech Holding Corporation, | ) ) ) ) ) | |
| Plaintiff, | ) | Case 2:17-cv-02820-JCJ |
| v. | ) ) | |
| GEORGE M. AWAD, DANIEL G. BELTZMAN, MICHAEL M. BHASKARAN, NEAL P. GOLDMAN, WILLIAM J. MEURER, ALVARO G. de MOLINA, VADIM PERELMAN, and ANTHONY N. RENZI, | ) ) ) ) ) ) ) | |
| Defendants, | ) ) | |
| And | ) ) | |
| WALTER INVESTMENT MANAGEMENT CORP., now known as Ditech Holding Corporation, | ) ) ) | |
| Nominal Defendant. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR FINAL APPROVAL OF SETTLEMENT AND IN SUPPORT OF ATTORNEYS' FEES, SERVICE AWARD AND REIMBURSEMENT OF CASE EXPENSES**

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ................................................................................................... 1

II.    BACKGROUND OF THE ACTIONS ................................................................... 3

    A.    Factual Background ................................................................................. 3

    B.    Procedural Background ........................................................................... 4

        1.    *The Action* ................................................................................. 4

        2.    *Settlement Negotiations* ........................................................... 5

III.    TERMS OF THE SETTLEMENT ........................................................................ 6

IV.    THE SETTLEMENT WARRANTS FINAL APPROVAL ................................. 10

    A.    Applicable Legal Standards ................................................................. 10

    B.    The Settlement Is the Product of Arm's-Length Negotiations by Experienced and Well-Informed Counsel, and Is Therefore Presumptively Fair ........................................................................................................ 11

    C.    The Non-Monetary Recovery Secured for WIMC Is Fair and Reasonable in Light of the Serious Risks of Establishing Liability and Damages ................. 13

    D.    Continued Litigation Would Be Complex, Time-Consuming and Expensive ............................................................................................. 16

    E.    Sufficient Information Has Been Adduced at this Stage of the Proceeding to Warrant Final Approval ...................................................................... 16

V.    THE NOTICE OF SETTLEMENT WAS ADEQUATE ................................... 17

VI.    THE AGREED UPON ATTORNEYS' FEES AND EXPENSES AMOUNT IS FAIR AND REASONABLE ................................................................................ 20

    A.    Legal Standards Governing Attorneys' Fee and Expense Awards ...................... 20

    B.    The *Gunter* Factors Confirm the Reasonableness of the Agreed Fees and Expenses Amount .................................................................................. 23

        1.    *The Agreed Fees and Expenses Amount Is a Small Fraction of the Value of the Benefits Conferred* ................................................ 23

        2.    *The Skill Demonstrated by Plaintiffs' Counsel in Navigating This Complex Matter to a Successful Early Settlement Supports the Agreed Fees and Expenses Amount* ........................................ 24

        3.    *The Contingency Risk Borne by Plaintiffs' Counsel Supports the Agreed Fees and Expenses Amount* ........................................ 25

        4.    *The Substantial Time and Expense Devoted to the Litigation in a Concentrated Period Supports the Agreed Fees and Expenses Amount* .................................................................................... 26

    5.  *Public Policy Supports the Proposed Award* ............................................ 28

  C.  The Case Expenses Incurred Are Reasonable ....................................................... 29

  D.  The Service Award Requested for the Named Plaintiff Is Reasonable ................ 29

VII.  CONCLUSION ............................................................................................................... 30

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abrams v. Lightolier, Inc.*,
   50 F.3d 1204 (3d Cir. 1995) ..................................................................... 29

*Backman v. Polaroid Corp.*,
   910 F.2d 10 (lst Cir. 1990) ....................................................................... 25

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
   472 U.S. 299 (1985) .................................................................................. 26

*Bell Atl. Corp. v. Bolger*,
   2 F.3d 1304 (3d Cir. 1993) ........................................................ 10, 13, 18, 19

*Berkey Photo, Inc. v. Eastman Kodak Co.*,
   603 F.2d 263 (2d Cir. 1979) ..................................................................... 25

*Bushansky v. Armacost*,
   2014 U.S. Dist. LEXIS 88072 (N.D. Cal. June 25, 2014) ....................... 18

*Cohen v. Beneficial Indus. Loan Corp.*,
   337 U.S. 541 (1949) .................................................................................. 28

*Cohn v. Nelson*,
   375 F. Supp.2d 844 (E.D. Mo. 2005) ........................................... 9, 12, 26

*Daubert v. Merrell Dow Pharm., Inc.*,
   509 U.S. 579 (1993) .................................................................................. 14

*Gunter v. Ridgewood Energy Corp.*,
   223 F.3d 190 (3rd Cir. 2000) ................................................................... 20

*Hall v. AT & T Mobility LLC*,
   Civil Action No. 07-5325 (JLL),
   2010 U.S. Dist. LEXIS 109355 (D.N.J. Oct. 13, 2010) .......................... 25

*Hensley v. Eckerhart*,
   461 U.S. 424 (1983) .................................................................................. 21

*Hicks v. Morgan Stanley & Co.*,
   2005 U.S. Dist. LEXIS 24890 (S.D.N.Y. Oct. 24, 2005) ....................... 22

*In re Am. Investors Life Ins. Co. Annuity Mktg. & Sales Practices Litig.*,
   263 F.R.D 226 (E.D. Pa. 2009) ............................................................ 24, 28

*In re AOL Time Warner S'holder Derivative Litig.*,
  2009 U.S. Dist. LEXIS 124372 (S.D.N.Y. Nov. 9, 2009) ................................... 28

*In re AOL Time Warner Shareholder Derivative Litigation*,
  2006 U.S. Dist. LEXIS 63260 (S.D.N.Y. September 6, 2006) ............................. 19

*In re Apollo Group, Inc. Sec. Litig.*,
  No. CV 04-2147-PHX-JAT, 2008 U.S. Dist. LEXIS 61995 (D. Ariz. Aug. 4, 2008)........... 25

*In re Ashanti Goldfields Sec. Litig.*,
  2005 U.S. Dist. LEXIS 28431 (E.D.N.Y. Nov. 15, 2005) ................................... 24

*In re AT&T Corp.*,
  455 F.3d 160 (3d Cir. 2006) ................................................... 20, 21

*In re Automotive Refinishing Paint Antitrust Litig.*,
  No. 1426, 2006 U.S. Dist. LEXIS 93936 (E.D. Pa. Dec. 28, 2006) ...................... 11

*In re Bear Stearns Cos. Sec., Deriv. & ERISA Litig.*,
  909 F. Supp. 2d 259 (S.D.N.Y. 2012) ................................................ 21-22

*In re Cendant Corp. Litig.*,
  264 F.3d 201 (3d Cir. 2001) ......................................................... 20

*In re Corel Corp. Sec. Litig.*,
  293 F. Supp. 2d 484, 2003 U.S. Dist. LEXIS 21024 (E.D. Pa. 2003) ................... 19

*In Re: GMC Pick- up Truck Fuel Tank Prods. Liab. Litig.*,
  55 F.3d 768 (3d Cir. 1995) .......................................................... 10

*In re Lloyd's Am. Trust Fund Litig.*,
  No. 96 Civ. 1262 (RWS), 2002 U.S. Dist. LEXIS 22663 (S.D.N.Y. Nov. 26, 2002) ........... 15

*In re Marsh ERISA Litig.*,
  265 F.R.D. 128 (S.D.N.Y. 2010) ..................................................... 29

*In re PaineWebber Ltd. P'ships Litig.*,
  171 F.R.D. 104 (S.D.N.Y. 1997) ..................................................... 16

*In re Pet Food Prods. Liab. Litig*,
  No. 07-2867, 2008 U.S. Dist. LEXIS 94603 (D.N.J. Nov. 18, 2008) ............... 20, 25

*In re Pittsburgh & Lake Erie R.R. Co. Sec. & Antitrust Litig.*,
  543 F.2d 1058 (3d Cir. 1976) ........................................................ 10

*In re Presidential Life Secs.*,
  857 F. Supp. 331 (S.D.N.Y. 1994) ................................................... 29

*In re Prudential Sec. Inc. Ltd. P'ship Litig.,*
  163 F.R.D. 200 (S.D.N.Y. 1995) ........................................................................... 11

*In re Rambus Inc. Derivative Litig.*,
  2009 U.S. Dist. LEXIS 131845 (N.D. Cal. Jan. 20, 2009) ..................................... 18

*In re Rite Aid Corp. Sec. Litig.,*
  396 F.3d 294 (3d Cir. 2005)............................................................................ 21, 28

*In re Safety Components Int'l Sec. Litig.,*
  166 F. Supp. 2d 72 (D.N.J. 2001) .................................................................... 28-29

*In re Schering-Plough Corp. Shareholder Deriv. Litig.*,
  No. 01-1412, 2008 U.S. Dist. LEXIS 2569 (D.N.J. Jan. 14, 2008)................... 14, 23

*In re School Asbestos Litig.*,
  921 F.2d 1330 (3d Cir. 1990)........................................................................... 10-11

*In re Warner Commc'ns Secs. Litig.*,
  618 F. Supp. 735 (S.D.N.Y. 1985), *aff'd,*
  798 F.2d 35 (2d Circ. 1986)................................................................................... 24

*In re WorldCom, Inc. Sec. Litig.,*
  388 F. Supp. 2d 319 (S.D.N.Y. 2005)................................................................... 24

*In Re: Warfarin Sodium Antitrust Litig.,*
  391 F.3d 516 (3d Cir. 2004)................................................................................... 10

*Ingram v. Coca-Cola*,
  200 F.R.D. 685 (N.D. Ga. 2001) ........................................................................... 21

*Kamen v. Kemper Fin. Servs.,*
  500 U.S. 90 (1991)................................................................................................. 28

*Kyriazi v. Western Elec. Co.*,
  647 F.2d 388 (3d Cir. 1981).................................................................................. 19

*Lewis v. Newman*,
  59 F.R.D. 525 (S.D.N.Y. 1973) ............................................................................ 15

*Lizondro–Garcia v. Kefi LLC,*
  2014 U.S. Dist. LEXIS 143165 (S.D.N.Y. Oct. 7, 2014) ..................................... 29

*Maher v. Zapata Corp.*,
  714 F.2d 436 (5th Cir. 1983) ................................................................................ 23

*Maley v. Del Global Techs. Corp.*,
  186 F. Supp. 2d 358 (S.D.N.Y. 2002).................................................................... 19

*McGee v. Cont'l Tire N. Am., Inc.,*
  No. 06-6234 (GEB), 2009 U.S. Dist. LEXIS 17199 (D.N.J. Mar. 4, 2009)........................ 25

*Milliron v. T-Mobile USA, Inc.,*
  Civil Action No. 08-4149 (JLL),
  2009 U.S. Dist. LEXIS 101201 (D.N.J. Sep. 10, 2009) ................................. 24, 28

*Mills v. Elec. Auto-Lite Co.,*
  396 U.S. 375 (1970)..........................................................................14, 19-20, 23

*Novartis Pharms. Corp.,*
  2010 U.S. Dist. LEXIS 125945 (S.D.N.Y. Nov. 30, 2010)................................... 27

*Peak Fin., LLC v. Hassett,*
  2016 U.S. Dist. LEXIS 147565 (D. Nev. Oct. 20, 2016) ..................................... 18

*Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson,*
  390 U.S. 414 (1968)................................................................................... 16

*Shapiro v. JPMorgan Chase & Co.,*
  2014 U.S. Dist. LEXIS 37872 (S.D.N.Y. Mar. 24, 2014) ................................... 21

*Shlensky v. Dorsey,*
  574 F.2d 131 (3d Cir. 1978)........................................................... 10, 11, 13

*Strougo v. Bassini,*
  258 F. Supp. 2d 254 (S.D.N.Y. 2003)..................................................... 19

*Surowitz v. Hilton Hotels Corp.,*
  383 U.S. 363 (1966)........................................................................ 28

*Tenuto v. Transworld Sys.,*
  No. 99-4228, 2001 U.S. Dist. LEXIS 17694 (E.D. Pa. Oct. 31, 2001) ................ 11

*Unite Nat'l Ret. Fund v. Watts,*
  No. 04-CV-3603 (DMC), 2005 U.S. Dist. LEXIS 26246 (D.N.J. Oct. 28, 2005)...... 11, 13, 14

*Yong Soon Oh v. AT&T Corp.,*
  225 F.R.D. 142 (D.N.J. 2004)........................................................... 17

## Rules

Fed. R. Civ. P. 23.1 ...................................................................... 18

Fed. R. Civ. P. 23.1(c) ................................................................. 18

Plaintiff, in the above-captioned consolidated stockholder derivative action, derivatively on behalf of WIMC Investment Management Corp., now known as Ditech Holding Corporation ("WIMC" or the "Company"), respectfully submits this memorandum in support of his Motion for Final Approval of Settlement and in Support of Attorneys' Fees, Service Award and Reimbursement of Case Expenses (the "Motion").   The Motion seeks entry of an order (the "[Proposed] Judgment and Order Approving Derivative Action Settlement") that will: (i) grant final approval to the Settlement as set forth in the Stipulation and Agreement of Settlement dated October 17, 2018 (the "Stipulation")[1], entered into by and among the following parties through their respective counsel: (1) plaintiff Michael E. Vacek, Jr. ("Vacek" or "Plaintiff"), (2) Nominal Defendant WIMC, and (3) Defendants George M. Awad, Daniel G. Beltzman, Michael M. Bhaskaran, Neal P. Goldman, William J. Meurer, Alvaro G. De Molina, Vadim Perelman, and Anthony N. Renzi (collectively, the "settling Parties"); (ii) approve the form and manner of notice of the Settlement that was sent to current WIMC stockholders as consistent with due process and this Court's prior Order Preliminarily Approving Settlement and Providing for Notice (Dkt. No. 47) ("Preliminary Approval Order") ("Notice"); (iii) grant an award of attorneys' fees, a service award to the named Plaintiff and reimbursement of case expenses in the negotiated collective amount of $257,500; and (iv) grant such other and further relief as the Court deems proper.

## I.      INTRODUCTION

---

[1] Unless otherwise defined herein, all defined terms shall have the meanings as set forth in the Stipulation, which is attached as Exhibit 1 to the accompanying Declaration of Thomas J. McKenna in Support of Plaintiff's Motion for Final Approval of Settlement and in Support of Attorneys' Fees, Service Award and Reimbursement of Case Expenses (hereinafter "McKenna Fact Decl.").

The Settlement provides for WIMC's implementation and maintenance of corporate governance reforms and enhancements at WIMC (the "Reforms") and for the dismissal of the Action.

The Reforms confer material benefits to WIMC, the real party in interest in the Action.  As a result of the Settlement, WIMC will implement and maintain a set of Reforms that, as described below, address the alleged deficiencies in WIMC's internal controls over financial reporting.  In the Action, Plaintiff asserted claims on behalf of WIMC against Defendants alleging breach of fiduciary duties, unjust enrichment, and waste of corporate assets involving, among other things, the origination, underwriting, and appraisal of mortgage products, claims by, and settlements with, government agencies concerning the origination, underwriting, and appraisal of mortgage products, and accounting and financial reporting related to default servicing activities, including, but not limited to, errors in financial statements and weaknesses in internal controls over financial reporting with respect to foreclosure tax liens, foreclosure related advances, processing and oversight of loans in bankruptcy, adjustments of reserves, and valuation allowances on deferred tax asset balances.  *See* Stipulation, Ex. 1, ¶ C to the McKenna Fact Decl. As a result of the Settlement, WIMC will maintain the Reforms for no less than three (3) years.

The Settlement of this complex litigation was the product of substantial effort, a vigorous pre- and post-filing investigation by Plaintiff's Counsel, and arm's-length negotiations by skilled and experienced counsel.  Plaintiff has carefully weighed the benefits the Settlement guarantees for the Company against the significant risks, costs and delay that would be entailed in attempting to secure a better result through further litigation.  Plaintiff's Counsel's recommendation that the Court approve the Settlement is based on counsel's significant experience in stockholder derivative litigation and is informed by, among other things, counsel's extensive pre- and post-

commencement investigation; evaluation of the strengths and weaknesses of the claims and defenses; consideration of insurance coverage available; and a comparison of the relative value of the corporate governance achievable through settlement and the risks and rewards of continued litigation.

The settling Parties agreed that Plaintiff's Counsel are entitled to an award of reasonable attorneys' fees and litigation expenses in recognition of the substantial benefits conferred on WIMC and its stockholders by the Settlement in the total amount of $257,500.00 (the "Attorneys' Fees and Litigation Expenses"), subject to Court approval.  McKenna Fact Decl., Ex. 1, Stipulation, ¶ 10.  Under this Court's Preliminary Approval Order, Plaintiff was required to file his motion for final approval of the Settlement, including approval of the proposed fee award at least thirty-five (35) calendar days prior to the Settlement Hearing. *See* Dkt. No. 47, ¶12.  Plaintiff is also seeking a modest service award for his participation in the Action in an amount not to exceed $2,500.00, subject to Court approval.  Any service award awarded by the Court will be paid from the Attorneys' Fees and Litigation Expenses award and will not cost the Company anything extra.  McKenna Fact Decl., Ex. 1, Stipulation, ¶ 10.

At this final stage, the Court must now determine whether the Settlement is within the range of what is fair, reasonable, and adequate, and whether the Notice of the Settlement sent to WIMC's stockholders complied with the requirements of due process and this Court's prior Preliminary Approval Order.  As discussed herein, the Settlement meets this standard, and, therefore, the Court should finally approve the Settlement and enter the [Proposed] Judgment and Order Approving Derivative Action Settlement ("Judgment"), a proposed version of which is attached as Ex. C to the Stipulation. *See* Ex. 1 to McKenna Fact Decl., Ex. C attached thereto.

## II.    BACKGROUND OF THE ACTIONS

### A.    <u>Factual Background</u>

3

WIMC, is a Maryland corporation with its principal place of business in Pennsylvania. WIMC describes itself as an independent servicer and originator of mortgage loans and servicer of reverse mortgage loans. Amended Complaint, ¶ 5, Dkt. No. 28. Plaintiff alleged that WIMC and its subsidiaries had a history of making false statements related to servicing reverse mortgage loans, and deceiving homeowners relating to loan servicing and modifications which resulted in two settlements with federal agencies and WIMC paying more than $92 million in fines. *Id*., ¶ 23.

Plaintiff further alleged in the Action that from as early as May 3, 2016, WIMC Defendants permitted Walter Investment to engage in similar conduct involving some of the same subsidiaries that had previously caused harm to WIMC: (a) the Company was involved in fraudulent practices that violated the False Claims Act; (b) the Company's Ditech subsidiary (which was previously named Green Tree) had a material weakness in its internal controls over financial reporting, specifically in its default servicing activities (the same types of practices that harmed its subsidiaries Green Tree and RMS); and (c) as a result, the Company lacked adequate internal controls over financial reporting. *Id*., ¶ 24. This conduct by Defendants in ignoring the previous red flags of Company misconduct and allowing the Company to repeat its misconduct gave rise to the instant action. *Id*.

**B.    Procedural Background**

**1.    *The Action***

On June 22, 2017, Plaintiff commenced the instant Action by the filing of a Verified Shareholder Derivative Complaint. Dkt. No. 1. As mentioned above, Plaintiff asserted various claims on behalf of Nominal Defendant WIMC against certain of the Defendants for breach of fiduciary duties.

On August 3, 2017, Defendants filed a motion to dismiss with supporting papers.  *See* Dkt. Nos. 22 to 22-3.   On September 13, 2017, Plaintiff filed a Verified Amended Shareholder Derivative Complaint.  Dkt. No. 28.   On October 5, 2017, Defendants filed a motion to dismiss the amended complaint (Dkt. Nos. 30 to 30-2).  On November 6, 2017, Plaintiff filed his proposed order and Memorandum of Law in Opposition to the Motion to Dismiss the Amended Complaint. Dkt. No. 31. On November 29, 2017, Defendants filed reply papers in support of their motion to dismiss the amended complaint.  Dkt. Nos. 32 to 32-1.

Then, on December 1, 2017, while the motion to dismiss was pending, WIMC filed a Notice of Bankruptcy Filing and Imposition of Automatic Stay Pursuant to Section 362(a) of the Bankruptcy Code.  Dkt. No. 33.  The Action remained stayed until February 9, 2018 when WIMC filed its Notice of Emergence from Bankruptcy and Modification of the Automatic Stay.  Dkt. No. 34.

After further briefing on supplemental authority submitted in connection with the pending motion to dismiss (*see* Dkt. Nos. 35 and 36), this Court on April 25, 2018 entered an Order denying Defendants' motion to dismiss the amended complaint.  *See* Dkt. No. 38.  On May 9, 2018, Defendants filed a Motion for Reconsideration or in the alternative Certification for appeal pursuant to 28 U.S.C. § 1292(b) ("Motion for Reconsideration").  *See* Dkt. Nos. 39 to 39-3.

## 2. *Settlement Negotiations*

In March of 2018 while the motion to dismiss the Amended Complaint was pending, Plaintiff made a settlement demand upon Defendants, but no settlement discussions were had. Thereafter, while Defendants' Motion for Reconsideration was pending, Plaintiff's counsel and Defendants' Counsel explored a possible settlement in May and June of 2018 and eventually reached agreement on a Term Sheet of corporate governance measures.   Thereafter a

Memorandum of Understanding was negotiated and executed on July 2, 2018.  Following that, the settling Parties negotiated and eventually executed on October 17, 2018, the Stipulation and Agreement of Settlement ("Stipulation") and supporting exhibits attached to the McKenna Fact Decl. as Ex. 1.  As a condition of the settlement reflected in this Stipulation (the "Settlement"), WIMC will agree to institute and maintain for at least three (3) years certain corporate governance reforms, the terms of which are fully set forth in the Stipulation.  *See* McKenna Fact Decl., Ex.1, ¶¶ 7-8.

Thereafter, the settling Parties negotiated at arm's-length the attorneys' fees and reimbursement of case-related expenses to be paid to Plaintiff's Counsel, together with a proposed service award to the named Plaintiff, in light of the substantial benefits that will be conferred upon the Company by the corporate governance reforms and as a result of the institution and settlement of the Action.  The settling Parties eventually agreed to a final proposal of an award of Attorneys' Fees and Litigation Expenses in the total amount of $257,500.00 to be paid to Plaintiff's Counsel, subject to the approval of the Court.  McKenna Fact Decl., Ex.1, ¶¶ 9-10.

## III.    TERMS OF THE SETTLEMENT

The Settlement provides for the implementation of corporate governance reforms designed to prevent misconduct and detect potential violations of applicable law, regulations, and Company policies.  The reforms are structured to ensure that WIMC's Board of Directors ("Board") fulfills its role in risk oversight of WIMC's operations.  WIMC will maintain the reforms for a period of at least three years.

The reforms, with the paragraph numbers and letters assigned to them by the Stipulation, are as follows:

**Settlement Consideration**

7.      In consideration of the settlement of the Released Plaintiff's Claims against Defendants' Releasees and WIMC's Releasees, WIMC has adopted or will adopt the following corporate governance measures:

(a)      Since the commencement of this lawsuit on June 22, 2017, WIMC has "refreshed" its board of directors, board committees, and senior management as follows:

(i)      A majority of the Board's current members are new directors who joined the Board in 2018: of nine current directors, 1 joined in December 2015 (Daniel Beltzman); 1 joined in June 2016 (George Awad); 1 joined in January 2017 (Neal Goldman); and 6 joined in February 2018 (David Ascher, Seth Bartlett, John Brecker, Thomas Miglis, Thomas Marano, and Samuel Ramsey). All eight of the Board's non-employee directors are independent under the NYSE listing requirements.

(ii)      WIMC hired a new Chief Executive Officer in 2018, Thomas Marano.

(iii)      WIMC hired a new Chief Financial Officer in 2018, Jerry Lombardo.

(iv)      WIMC hired a new Chief Operating Officer in 2018, Ritesh Chaturbedi.

(v)      A majority of the Board's Audit Committee consists of directors who joined the Board in 2018: on June 1, 2017, the Audit Committee consisted of Michael Bhaskaran, Alvaro De Molina, Neal Goldman, and William Meurer; as of April 20, 2018 the Audit Committee consists of John Brecker, Neal Goldman, and Samuel Ramsey. All members of the Audit Committee are independent under Rule 10A-3(b)(1) of the Securities Exchange Act of 1934, as amended.

(vi)      A majority of the Board's Compensation Committee consists of directors who joined the Board in 2018: on June 1, 2017, the Compensation Committee consisted of Daniel Beltzman, Alvaro De Molina, Neal Goldman, and Vadim Perelman; as of April 20, 2018 the Compensation Committee consists of Seth Bartlett, Daniel Beltzman, and Thomas Miglis.

(vii)      A majority of the Board's Finance Committee consists of directors who joined the Board in 2018: on June 1, 2017, the Finance Committee consisted of Daniel Beltzman, Alvaro De Molina, Neal Goldman, and Vadim Perelman; as of April 20, 2018 the Finance

Committee consists of George Awad, John Brecker, and Samuel Ramsey.

(b)     Since the commencement of this lawsuit, WIMC has adopted the following corporate governance measures:

(i)     The Board amended its Corporate Governance Guidelines to provide that when the Chairman of the Board is not an independent director the Board will consider appointment of a Lead Independent Director, and added an Appendix to its Corporate Governance Guidelines describing the duties of the Lead Independent Director. In May 2018, the Board appointed Seth Bartlett, a director who joined the Board in 2018, to serve as Lead Independent Director.

(ii)     The Board created a Technology and Operations Committee, consisting of directors who joined the Board in 2018: David Ascher, Seth Bartlett, and Thomas Miglis.

(iii)     The Board approved an equity incentive plan (the Ditech Holding Corporation 2018 Equity Incentive Plan) providing for clawbacks of compensation where:

(a)     the "compensation [is] . . . based on financial statements that are subsequently required to be restated in a way that would decrease the value of such compensation;" or

(b)     within one year of the exercise or vesting of the compensation award (i) "Service is terminated for Cause," (ii) "Participant is subject to any recoupment of benefits pursuant to [WIMC's] compensation recovery, 'clawback' or similar policy, as may be in effect from time to time," or (iii) "Committee determines in its discretion either that, (1) during the Participant's period of Service, the Participant engaged in an act or omission which would have warranted termination of the Participant's Service for Cause or (2) after a Participant's termination of Service, the Participant engaged in conduct that materially violated any continuing obligation or duty of the Participant in respect of [WIMC] or any Subsidiary."

(iv)     WIMC has updated its website to ensure the correct listing of current members of all Board Committees.

(c)     WIMC agrees to adopt the following additional corporate governance measures no later than thirty (30) calendar days following the Effective Date:

(i)    The Board's Lead Independent Director and Compliance Committee will oversee annual self-evaluation of the Board and all Board Committees other than the Compliance Committee. The Lead Independent Director and the Audit Committee will oversee the Board's annual self-evaluation of the Compliance Committee.

(ii)    WIMC will amend its Corporate Governance Guidelines to reimburse directors for the cost of attending continuing director education programs in order to encourage directors to attend such programs and maintain the level of expertise required to perform their responsibilities as directors.

(iii)    WIMC will amend its Compliance Committee charter to provide that the Chief Risk and Compliance Officer will report to the Compliance Committee at least quarterly.

(iv)    The Board will amend the charters of the Audit Committee and the Compliance Committee to require that the Audit Committee and the Compliance Committee hold one joint meeting per year.

(v)    WIMC will require employees to certify annually that they have reviewed WIMC's Code of Conduct and completed all required compliance training.

(d)    WIMC agrees to keep the corporate governance measures stated in ¶¶ 7(b)-7(c) in place for at least three (3) years, unless (i) a majority of the Board's non-management directors determine in the exercise of their business judgment that maintenance of a particular measure no longer serves the best interests of WIMC or (ii) WIMC's General Counsel advises the Board that modification is required by law.

8.    WIMC acknowledges that the filing of the Action was a contributing factor in the adoption and implementation of the corporate governance measures stated in ¶¶ 7(a)-7(b) and a substantial contributing factor in the adoption and implementation of the corporate governance measures stated in ¶ 7(c) and that these corporate governance measures confer a material benefit on WIMC and its stockholders.

\* \* \* \*

The Company has agreed to maintain the Reforms for three (3) years – which is a meaningful amount of time intended to ensure the Reforms become embedded in the Company's policies, practices, and corporate culture, thus protecting against discontinuation of these Reforms following the five-year period. *See* McKenna Fact Decl., Ex. 1, Stipulation, ¶ 7(d); *see, e.g.*, *Cohn v. Nelson*, 375 F. Supp.2d 844, 850 (E.D. Mo. 2005) (finding that corporate governance measures

that must be in place for no less than three years will "provide meaningful ways of avoiding the

problems [the company] experienced in the recent past").

## IV.     THE SETTLEMENT WARRANTS FINAL APPROVAL

The Settlement creates significant benefits for WIMC, is the result of intense and protracted

arm's-length negotiations between experienced counsel, and merits final approval.  Once finally

approved by this Court, Plaintiff's Action against Defendants will be dismissed with prejudice in

return for the significant corporate governance changes achieved for the benefit of WIMC and its

shareholders.

### A.     <u>Applicable Legal Standards</u>

In *Shlensky v. Dorsey*, 574 F.2d 131, 147 (3d Cir. 1978), the court described the standard

by which to decide whether to grant final approval to a derivative settlement as follows:

> The principal factor . . . is the extent of the benefit to be derived
> from the proposed settlement by the corporation, the real party in
> interest. . . . The adequacy of the recovery must be considered in the
> light of the best possible recovery, of the risks of establishing
> liability and proving damages in the event the case is not settled, and
> of the cost of prolonging the litigation.

*Id.* at 147. Also considered is the response of other shareholders to the proposed settlement. *Id.* at

148.  *See also In re Pittsburgh & Lake Erie R.R. Co. Sec. & Antitrust Litig.*, 543 F.2d 1058, 1070

(3d Cir. 1976).

Final approval should be granted unless the Court finds reasons to doubt its fundamental

fairness or other obvious deficiencies. *See Bell Atl. Corp. v. Bolger*, 2 F.3d 1304, 1318 (3d Cir.

1993) (affirming the substantive fairness of a non-collusive derivative settlement); *see also In Re:*

*Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004); *In Re: GMC Pick- up Truck*

*Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995); *In re School Asbestos Litig.*, 921

F.2d 1330, 1333 (3d Cir. 1990) (noting that the court encourages settlement of complex litigation "that otherwise could linger for years").

The Court on a motion for final approval is required to make a final determination that the proposed settlement is fair and reasonable. As noted above, the Third Circuit has held that the principal factor in determining the fairness of a derivative settlement is "the extent of the benefit to be derived from the proposed settlement by the corporation, the real party in interest." *Shlensky*, 574 F.2d at 147. Further, courts have long recognized that in derivative actions, non-monetary benefits, such as material changes in corporate management or policies, provide real and substantial benefits and warrant approval. The Courts' recognition of the importance of these types of reforms has heightened in the post-*Enron* era. *See, e.g.*, *Unite Nat'l Ret. Fund v. Watts*, Civil Action No. 04-CV-3603 (DMC), 2005 U.S. Dist. LEXIS 26246, at *8 (D.N.J. Oct. 28, 2005) ("*Shell Deriv.*") (approving governance and compliance relief, noting that "the most important factor in evaluating the fairness of the settlement agreement is the benefit to the corporation").

**B.**    **The Settlement Is the Product of Arm's-Length Negotiations by Experienced and Well-Informed Counsel, and Is Therefore Presumptively Fair**

In assessing at the final approval stage whether a settlement raises any issue as to fairness, courts often focus on whether the settlement is the product of arm's-length negotiations. *See, e.g.*, *In re Automotive Refinishing Paint Antitrust Litig.*, MDL Docket No. 1426, 2006 U.S. Dist. LEXIS 93936 (E.D. Pa. Dec. 28, 2006) (citing *In re Prudential Sec. Inc. Ltd. P'ship Litig.*, 163 F.R.D. 200, 209 (S.D.N.Y. 1995)); *Tenuto v. Transworld Sys.*, No. 99-4228, 2001 U.S. Dist. LEXIS 17694, at *3 (E.D. Pa. Oct. 31, 2001) ("The settlement agreement is a product of lengthy arm's-length negotiations, concluded after completion of discovery.").

Prior to arriving at the Settlement in this case, Plaintiff's Counsel conducted investigations relating to the claims and the underlying events alleged in the Action including, but not limited to:

(1) reviewing and analyzing the Company's public filings with the SEC, press releases, announcements, transcripts of investor conference calls, and news articles; (2) reviewing and analyzing the allegations contained in a related Securities Class Action;[2] (3) researching and drafting the shareholder derivative complaint in the Action; (4) reviewing and analyzing Defendants' motion to dismiss the original complaint; (5) doing further investigation and research and drafting and filing the amended complaint; (6) analyzing Defendants' motion to dismiss the amended complaint; (7) drafting and filing papers in opposition to the Defendants' motion to dismiss the amended complaint; (8) reviewing this Court's Order denying Defendants' motion to dismiss the amended complaint; (9) reviewing and analyzing Defendants' motion for reconsideration or in the alternative for certification for appeal pursuant to 28 U.S.C. § 1292(b); (10) researching corporate governance issues; (11) preparing extensive settlement demands and corporate governance reforms proposals; (12) engaging in extensive settlement discussions with opposing counsel; (13) reviewing internal corporate information produced to the Plaintiff by WIMC; (14) negotiating with opposing counsel a Term Sheet of Corporate Governance Reforms and a Memorandum of Understanding; and (15) preparing for and participating in telephonic negotiations to reach and then document the substantive terms of the Settlement and to confirm the conclusion that the Settlement is fair, reasonable, and adequate and in the best interests of WIMC. McKenna Fact Decl., ¶ 12.

In addition, the negotiation process here was undertaken at arm's-length, was intensive and was hard fought. Settlement negotiations in this case occurred over a lengthy period, and included the exchange of multiple proposals, designed initially by Plaintiff's Counsel. McKenna Fact Decl., ¶12, 18-20. The negotiation process included multiple telephonic and written communications.

---

[2] *See Elkin v. Walter Investment Management Corp., et al,* Case No.: 2:17-cv-02025 (E.D. Pa.)

The terms and conditions of the Settlement are the results of this intensive, arm's-length process. *See, e.g.*, *Cohn*, 375 F. Supp. 2d at 855 ("In assessing the merits of the settlement, plaintiffs' counsel considered the factual and legal questions that were disputed in the derivative actions. The Court is convinced the proposed Settlement was reached after counsel had conducted an extensive investigation . . ."). There are no grounds to doubt the fairness of the proposed Settlement or the intensive, arm's-length negotiations that achieved it. *See* McKenna Fact Decl., Ex. 1, ¶ 2, 11-12, 18-20, 22-25.

Plaintiff's Counsel has decades of experience in shareholder representative litigation, and their skills have been recognized by courts across the nation in dozens of appointments to act as lead counsel in the prosecution of shareholder derivative and direct actions. *See* McKenna Fact Decl. Exs. 2 and 3 for the résumés of Gainey, McKenna & Egleston, and the Donovan Litigation Group, LLC respectively. Plaintiff's Counsel's positions in these negotiations were informed by careful analysis of the law, a thorough investigation and evaluation of the facts, consideration of the remaining insurance coverage available, and examination of the best corporate governance practices applicable to WIMC in light of the allegations contained in the operative complaint filed in the Action. McKenna Fact Decl., ¶¶12, 18, 22-26. Defendants were vigorously represented by Dechert LLP, Hangley Aronchick Segal Pudlin & Schiller, and Weil, Gotshal & Manges LLP, preeminent corporate defense firms in the fields of derivative and securities litigation familiar with the relevant facts. All parts of the Settlement were reached at arm's-length and there was no collusion. McKenna Fact Decl., ¶ 2.

Accordingly, the Settlement enjoys a strong presumption of fairness.

**C.      The Non-Monetary Recovery Secured for WIMC Is Fair and Reasonable in Light of the Serious Risks of Establishing Liability and Damages**

In determining whether to approve a shareholder derivative settlement, "[t]he principal factor . . . is the extent of the benefit to be derived from the proposed settlement by the corporation, the real party in interest[.]" *Bell Atl.*, 2 F.3d at 1311 (internal quotation marks omitted) (alteration in original); *see also Shlensky*, 574 F.2d at 147.

Courts widely recognize that "a corporation may receive a 'substantial benefit' from a derivative suit . . . regardless of whether the benefit is pecuniary in nature." *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 395 (1970); *see Shell Deriv.*, 2005 U.S. Dist. LEXIS 26246, at *18 ("the great benefit conferred upon Shell as a result of the new corporate governance principles provided for in the settlement agreement . . . will serve to prevent and protect Shell from the reoccurrence of certain alleged wrongdoings."); *In re Schering-Plough Corp. Shareholder Deriv. Litig.*, Master Derivative Docket Civ. Action No. 01-1412, 2008 U.S. Dist. LEXIS 2569, at *3-4 (D.N.J. Jan. 14, 2008) (approving settlement "seek[ing] to foster the active involvement of the Board in oversight" and resulting in "the Board's oversight function [being] strengthened"). In particular, non-monetary benefits may support a settlement where "the relief is intended to prevent future harm." *Shell Deriv.*, 2005 U.S. Dist. LEXIS 26246, at *9. A non-monetary benefit is a "substantial benefit" where it is "'something more than technical in its consequence and . . . accomplishes a result which corrects or prevents an abuse which would be prejudicial to the rights and interests of the corporation or affect the enjoyment or protection of an essential right to stockholder's interest.'" *Mills*, 396 U.S. at 396.

The settling Parties agree that the Reforms achieved by the Settlement confer substantial benefits to WIMC and current WIMC stockholders and that the filing and pendency of the Action comprised a contributing factor to the Company's decision to adopt and implement the corporate governance measures listed in paragraphs 7(a) and 7(b) of the Settlement and a substantial

contributing factor to the adoption and implementation of the corporate governance measures listed in paragraph 7(c) of the Settlement. *See* McKenna Fact Decl., Ex. 1, Stipulation, ¶8. As set forth above, the Settlement will result in WIMC's implementation and maintenance of multiple corporate governance measures that substantially reduce the likelihood that corporate governance lapses similar to those alleged in the Action will damage the Company in the future. The corporate governance measures are designed to strengthen WIMC's overall corporate governance practices and internal controls and the rigor of Board oversight, generally.

These benefits are especially sufficient to warrant final approval, given the real possibility that continued litigation would yield no benefit for WIMC. The risks of demonstrating liability and providing damages in complex shareholder litigation are substantial. For example, as other courts have repeatedly recognized, "stockholder litigation is notably difficult and notoriously uncertain." *Lewis v. Newman*, 59 F.R.D. 525, 528 (S.D.N.Y. 1973). Although Plaintiff strongly believes his claims are meritorious, success in establishing Defendants' liability is by no means an automatic conclusion.

The challenges involved in determining and proving the amount of recoverable damages are equally daunting. "The determination of damages . . . is a complicated and uncertain process, typically involving conflicting expert opinions. The reaction of a jury to such complex expert testimony is highly unpredictable." *In re Lloyd's Am. Trust Fund Litig.*, No. 96 Civ. 1262 (RWS), 2002 U.S. Dist. LEXIS 22663, at *61 (S.D.N.Y. Nov. 26, 2002). In fact, Plaintiff faces substantial risks in even attempting to present expert testimony on damages, as Defendants undoubtedly would have challenged such testimony. *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 585 (1993), *superseded on other grounds by* Fed. R. Evid. 702.

Moreover, while Plaintiff believes in the merits of his case, the benefit to the Company of pursuing his claims to trial had to be weighed against the potential litigation expense to the Company.  The Settlement eliminates these and other risks of continued litigation, including the very real risk of no recovery for WIMC after years of additional litigation, while ensuring that the Company and its shareholders obtain immediate benefits through the valuable corporate governance measures.  The Settlement is therefore eminently reasonable.

### D.   Continued Litigation Would Be Complex, Time-Consuming and Expensive

An evaluation of the fairness of a settlement requires a court to balance the "likely rewards of litigation" with its risk and cost against the benefits obtained by settlement. *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424-25 (1968). Here, the complexity, expense and likely duration of continued litigation weigh heavily in favor of settlement. Unless the Settlement is clearly inadequate, its approval is preferable to continuing lengthy and expensive litigation with highly uncertain results.

Assuming Plaintiff's claims survived the anticipated motions to dismiss, the discovery required would have been complex.  Experts would need to be prepared and expert discovery conducted.  In addition, a multitude of complex issues of law and fact would need to be mastered in trying the claims and pursuing them through appeal – all without any guarantee of materially improving on the Settlement's recovery.  The Settlement avoids the expenditure of further time and resources, and resolves the litigation on favorable terms for WIMC, permitting the Company to return its full attention to operating its business and generating value for its stockholders.  These considerations weigh heavily in favor of final approval.

### E.   Sufficient Information Has Been Adduced at this Stage of the Proceeding to Warrant Final Approval

Plaintiff's Counsel's investigation preceding and subsequent to the filing of the detailed complaints is sufficient to support Plaintiff's Counsel's recommendation that the Settlement is fair and reasonable. *See In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y. 1997) ("'great weight' is accorded to the recommendations of counsel, who are most closely acquainted with the fact of the underlying litigation"). Moreover, this Court denied Defendants' motion to dismiss the amended complaint after full briefing. Thus, the Action was continuing, though this Court held that the issue of whether demand was futile upon the Board under Maryland law could be presented again by Defendants via motion for summary judgment. Dkt. No. 38 at 3. Thus, defeat snatched from the jaws of victory was still possible for the claims of Plaintiff.

## V.      THE NOTICE OF SETTLEMENT WAS ADEQUATE

Under Federal Rule of Civil Procedure 23.1, notice of a proposed settlement of a shareholder derivative action "must be given to shareholders . . . in the manner that the court directs." Fed. R. Civ. P. 23.1(c).  The Preliminary Approval Order required that, within ten (10) business days after the entry of the Preliminary Approval Order, WIMC shall: (i) post a copy of the Stipulation, the Preliminary Approval Order, and the Notice (defined in the Stipulation and substantially in the form attached as Exhibit B to the Stipulation) on WIMC's website; (ii) cause a Current Report on Form 8-K to be filed with the Securities and Exchange Commission that attached the Notice and provided a link to the Stipulation, the Preliminary Approval Order and the Notice posted on WIMC's website; and (iii) publish the Notice once in Investor's Business Daily and transmit it once over PR Newswire.  Dkt. No. 47, ¶4.

Defendants' Counsel will be submitting an affidavit or declaration at least seven (7) days before the January 31, 2019 Settlement Hearing attesting that these three forms of notice to current WIMC stockholders were all accomplished on time and as ordered.

The Parties respectfully submit that the content, manner and various forms of the Notice given constituted adequate and reasonable notice to current WIMC stockholders pursuant to applicable law and due process. Preliminary Approval Order, ¶5.  Indeed, the method of notice suggested by the settling Parties' and approved by this Court has been routinely approved by courts. *See Yong Soon Oh v. AT&T Corp.*, 225 F.R.D. 142, 149 (D.N.J. 2004) (approving settlement of class action in which access to the stipulation was made available by website). In addition, lead counsel for the Plaintiff, Gainey McKenna & Egleston, also posted the settlement on its website. McKenna Fact Decl., ¶7.

The notice program that the settling Parties used in this case – the Company's issuance of a press release, the Company's posting on its website, and the Company's filing of a Form 8-K with the SEC -- has been widely used in similar shareholder derivative settlements and approved by numerous courts as meeting due process. *See, e.g.*, *Bushansky v. Armacost*, 2014 U.S. Dist. LEXIS 88072, at *21 (N.D. Cal. June 25, 2014) (requiring a notice plan to include a link on defendant's investor relations website that leads to a webpage to be displayed for a minimum of 30 days, a press release to be issued by defendant, and a Form 8-K filing with the SEC); *In re Rambus Inc. Derivative Litig.*, 2009 U.S. Dist. LEXIS 131845, at *7 (N.D. Cal. Jan. 20, 2009) (approving settlement where notice included a link on a company website, press release, and a Form 8-K filing with the SEC). *See also Peak Fin., LLC v. Hassett*, 2016 U.S. Dist. LEXIS 147565, at *3-4, 6-7 (D. Nev. Oct. 20, 2016) (approving settlement where notice comprised filing of a Form 8-K with the SEC, and the company's posting on its website).

The Notice was drafted in plain and easily understood language, clearly described the nature of the Action and the claims alleged in the Action, the terms of the proposed Settlement, and the reasons for the Settlement.  In addition, the Notice invited WIMC stockholders who sought

additional information to contact Plaintiff's counsel to inspect the Settlement and other documents filed with the Court.  As a result, the Notice was more than reasonably calculated to apprise the stockholders of the terms of the proposed Settlement and the options available to them in connection with the judicial proceeding.  *See Bell Atl.*, 2 F.3d at 1317 (notice held adequate because it "summarized the Bell of Pennsylvania matter, the procedural history, the parties' contentions, the issues involved, the reasons each party recommended settlement, and the terms of the settlement agreement" and it "advised shareholders of their right to object, the consequences of not doing so, and how to go about obtaining further information available on file with the court") (citing *Kyriazi v. Western Elec. Co.*, 647 F.2d 388, 395 (3d Cir. 1981)); *In re Corel Corp. Sec. Litig.*, 293 F. Supp. 2d 484, 2003 U.S. Dist. LEXIS 21024 (E.D. Pa. 2003).

The deadline for stockholders to object to the proposed Settlement is January 10, 2019. To date, counsel has not heard from any stockholder indicating that they are not satisfied with this Settlement.  This fact weighs heavily in favor of final approval.  *Bell Atl.*, 2 F.3d at 1313  ("Less than 30 of approximately 1.1 million shareholders objected. This is an infinitesimal number."). *See also In re AOL Time Warner Shareholder Derivative Litigation*, 2006 U.S. Dist. LEXIS 63260, at *16 (S.D.N.Y. September 6, 2006) ("'lack of objections may well evidence the fairness of the Settlement'"); *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 374 (S.D.N.Y. 2002) (lack of objection following notice "attests to the approval of the Class with respect to the Settlement and the fee and expense application"); *Strougo v. Bassini*, 258 F. Supp. 2d 254, 258 (S.D.N.Y. 2003) ("It has repeatedly been held that 'one indication of the fairness of a settlement is the lack of or small number of objections.'") (citations omitted).[3]

---

[3] Subsequently filed objections, if any, will be addressed as appropriate in advance of the January 31, 2019 Hearing.

## VI.   THE AGREED UPON ATTORNEYS' FEES AND LITIGATION EXPENSES AMOUNT IS FAIR AND REASONABLE

Under the "substantial benefit" doctrine, counsel who prosecute a stockholder derivative action that generates substantial benefits for the corporation are entitled to an award of reasonable attorneys' fees and expenses commensurate with the benefits' value and the risks of proceeding on a contingency basis. *Mills*, 396 U.S. at 394-96 ("a corporation may receive a 'substantial benefit' from a derivative suit, justifying an award of counsel fees, regardless of whether the benefit is pecuniary in nature . . . .  Private stockholders' actions of this sort 'involve corporate therapeutics,' and furnish a benefit to all stockholders").

As a result of Plaintiff's Counsel's efforts, WIMC will enjoy long-term benefits flowing from the Settlement's corporate governance, oversight, training and risk management reforms. These Reforms will prevent recurrence of the alleged wrongdoing Plaintiff contended damaged WIMC and its stockholders, and help to restore investor confidence in the transparency, effectiveness, and fidelity of WIMC's management.  The value of the corporate therapeutics on investor confidence can only help reverse WIMC's loss of reputation in the marketplace. The agreed upon Attorneys' Fees and Litigation Expenses is $257,500 and designed to compensate all of Plaintiff's Counsel for their legal work, out-of-pocket case expenses and includes the requested $2,500 service award for the named Plaintiff. This amount is a small fraction of the value of these benefits, and is appropriate given the complexity of the matter, the litigation risks, the positive results, and the substantial time and expenses Plaintiff's Counsel invested on a fully contingent basis.

### A.    Legal Standards Governing Attorneys' Fee and Expense Awards

"Under Third Circuit law, [a] plaintiffs' requested fee enjoys a presumption of reasonableness which can be rebutted only by a showing that it is, prima facie, clearly excessive."

*In re Pet Food Prods. Liab. Litig*, Civ. No. 07-2867, 2008 U.S. Dist. LEXIS 94603, at *102 (D.N.J. Nov. 18, 2008) (citing *In re Cendant Corp. Litig.,* 264 F.3d 201, 283 (3d Cir. 2001); *In re AT&T Corp.*, 455 F.3d 160, 167-68 (3d Cir. 2006). To determine whether the fee is reasonable, rather than "clearly excessive," courts often look to the following seven factors as set forth in *Gunter v. Ridgewood Energy Corp*., 223 F.3d 190 (3rd Cir. 2000):

1.  The size of the fund created and the number of persons benefitted;

2.  The presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel;

3.  The skill and efficiency of the attorneys involved;

4.  The complexity and duration of the litigation;

5.  The risk of nonpayment;

6.  The amount of time devoted to the case by plaintiffs' counsel; and

7.  Awards in similar cases.

*Id.* at 195 n. 2; *see also AT&T,* 455 F.3d at 165 (quoting *In re Rite Aid Corp. Sec. Litig.,* 396 F.3d 294, 301 (3d Cir. 2005)). However, this list is "not intended to be exhaustive," and the factors "should not be applied in a formulaic way;" rather, "what is important is that the district court evaluate what class counsel actually did and how it benefitted the class." *Id.* at 165-66.

Here, the Court is not being called upon to fashion a fee and expense award; rather, it is being asked to determine whether the Attorneys' Fees and Litigation Expenses agreed to by the settling Parties falls within the range of reasonableness. While the *Gunter* factors remain useful in making this determination, the Court's role is more limited. The Supreme Court has endorsed the determination of attorneys' fees through agreement as the ideal to which litigants should strive. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) ("Ideally . . . litigants will settle the amount of a

21

fee."). Accordingly, where the parties reach agreement on the award through separate arm's-length negotiations conducted after the material substantive terms of the settlement are determined, the Court should give "substantial weight" to the negotiated fee amount. *Ingram v. Coca-Cola*, 200 F.R.D. 685, 695 (N.D. Ga. 2001); *see also Shapiro v. JPMorgan Chase & Co.*, 2014 U.S. Dist. LEXIS 37872, at *85 (S.D.N.Y. Mar. 24, 2014) ("That the Attorneys' Fee Payment was later separately negotiated weighs in favor of its reasonableness."); *In re Bear Stearns Cos. Sec., Deriv. & ERISA Litig.*, 909 F. Supp. 2d 259, 272 (S.D.N.Y. 2012) (fact that requested fee was product of negotiations support approval).

The agreement on the Attorneys' Fees and Litigation Expenses should be given substantial weight.  Sophisticated parties, including corporate entities WIMC and its director and officer liability insurer, represented by skilled counsel, settled on the Attorneys' Fees and Litigation Expenses through extensive arm's-length, adversarial negotiations conducted after the material substantive terms of the Settlement had been determined. McKenna Fact Decl. ¶¶2, 12, 18-19. There is no hint of collusion. *Id*. at ¶2.  In fact, settlement negotiations were protracted and broke down more than once. *Id*.; *see also Hicks v. Morgan Stanley & Co.*, 2005 U.S. Dist. LEXIS 24890, at *15 (S.D.N.Y. Oct. 24, 2005) ("A breakdown in settlement negotiations can tend to display the negotiation's arms-length and non-collusive nature."). Unlike in class actions, where the diverging interests of class counsel and absent class members at the fee stage warrant closer judicial scrutiny, in this stockholder derivative matter, WIMC and its insurers participated in the negotiations, were represented by counsel, and had every incentive to negotiate the lowest reasonable fee for the services rendered by Plaintiff's Counsel.

Accordingly, the settling Parties' conclusion that the agreed Attorneys' Fees and Litigation Expenses is fair and reasonable is entitled to substantial deference.

**B.** **The *Gunter* Factors Confirm the Reasonableness of the Agreed Fees and Expenses Amount**

> **1. The Agreed Fees and Expenses Amount Is a Small Fraction of the Value of the Benefits Conferred**

The agreed Attorneys' Fees and Litigation Expense award is reasonable because the Settlement confers substantial non-monetary benefits in the form of comprehensive corporate governance, oversight, risk mitigation and training. These corporate governance measures are structured to ensure that WIMC's Board fulfills its role in risk oversight of WIMC's operations. These reforms will significantly improve WIMC's compliance and internal control environment; prevent misconduct and detect potential violations of applicable law, regulations, and Company policies; substantially reduce the likelihood of future wrongdoing and mismanagement; and generate long-term economic benefits by restoring investor confidence in WIMC management and laying the foundation for the reversal of its stock price decline.

Counsel responsible for a corporation's decision to adopt such important corporate governance measures are entitled to a fee award that reflects their value, separate and apart from the value of any monetary recovery. *See Mills*, 396 U.S. at 396 ("'corporate therapeutics' . . . furnish a benefit to all shareholders" warranting fee award); *Maher v. Zapata Corp.*, 714 F.2d 436, 461 & n.43 (5th Cir. 1983) (improvements in "the functioning of the corporation may have a substantially greater economic impact on it, both long- and short-term, than the dollar amount of any likely judgment in its favor . . . ."). Indeed, the value of the comprehensive and rigorous corporate therapeutics here would justify the agreed award, standing alone. *See, e.g.*, *In re Schering-Plough Corp. S'holders Deriv. Litig.*, 2008 U.S. Dist. LEXIS 2569, at *15-16 ("This litigation provides an example of how derivative actions that result in the adoption of rigorous compliance standards confer tangible benefits to the corporation and its shareholders . . . .  The adoption of the corporate governance and compliance mechanisms required by the settlement can

prevent breakdowns in oversight that would otherwise subject the company to the risk of regulatory action, or uncover and remedy a problem at the early stages before it becomes the subject of a government investigation.  Effective corporate governance can also affect stock price by bolstering investor confidence and improving consumer perceptions.").

**2.  *The Skill Demonstrated by Plaintiff's Counsel in Navigating This Complex Matter to a Successful Early Settlement Supports the Agreed Fees and Expenses Amount***

Courts reward counsel who bring complex matters to a successful early resolution. *See, e.g.*, *In re Ashanti Goldfields Sec. Litig.*, 2005 U.S. Dist. LEXIS 28431, at *10 (E.D.N.Y. Nov. 15, 2005) ("The 'quality of representation' factor is designed to reward 'particularly resourceful' legal work that 'secures a substantial benefit . . . with a minimum of time invested.'"). In addition, "[t]he quality of opposing counsel is also important in evaluating the quality of plaintiff's counsels' work." *In re Warner Commc'ns Secs. Litig.*, 618 F. Supp. 735, 749 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986). By any measure, this matter was exceedingly complex.  Defense counsel, Dechert LLP, Hangley Aronchick Segal Pudlin & Schiller, and Weil, Gotshal & Manges LLP, are pre-eminent corporate defense firms who vigorously defended their clients' interests. Only the sustained effort that Plaintiff's skilled and experienced counsel applied to this matter could have driven it to a successful early resolution.  *See, e.g., Milliron,* 2009 U.S. Dist. LEXIS 101201, at *32 ("[t]he quality of opposing counsel is also important in evaluating the quality of Class Counsel's work.");  *In re Am. Investors Life Ins. Co. Annuity Mktg. & Sales Practices Litig.*, 263 F.R.D. 226 at 244 (E.D. Pa. 2009) (the fact that defense counsel "vigorously defended against, the claims on behalf of the class" weighed in favor of the fee request); *In re WorldCom, Inc. Sec. Litig.,* 388 F. Supp. 2d 319, 357-58 (S.D.N.Y. 2005) (evaluating quality of representation by reference to the substantial risks faced by counsel, which "obtained remarkable settlements for the Class while facing formidable opposing counsel from some of the best defense firms in the

24

country."); *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 749 (S.D.N.Y. 1985) ("The quality of opposing counsel is also important in evaluating the quality of plaintiff counsel's work.").

Successful early settlement demanded that Plaintiff's Counsel quickly master a broad range of complex facts and law.  Plaintiff's Counsel conducted intensive research and analysis to master the factual and legal issues inherent in WIMC's corporate activities and alleged wrongful conduct, successfully opposed Defendants' motion to dismiss and negotiated important corporate governance reforms to benefit WIMC. The legal issues arising from the multiple layers of procedural defenses and merits defenses were complex.

### 3. The Contingency Risk Borne by Plaintiff's Counsel Supports the Agreed Fees and Expenses Amount

The proposed award is particularly reasonable in light Plaintiff's Counsel's risk of non-payment. As has been recognized, "the risk associated with taking a case on contingency is a real and important factor to consider." *Hall v. AT & T Mobility LLC*, Civil Action No. 07-5325 (JLL), 2010 U.S. Dist. LEXIS 109355 at *66 (D.N.J. Oct. 13, 2010) (Linares, J.)  Indeed, courts have routinely recognized that this risk is an important factor in determining a fair fee award. *See McGee v. Cont'l Tire N. Am., Inc.,* No. 06-6234 (GEB), 2009 U.S. Dist. LEXIS 17199 at *42 (D.N.J. Mar. 4, 2009) ("Class Counsel invested a substantial amount of time and effort to reach this point and obtain the favorable Settlement. Class Counsel accepted the responsibility of prosecuting this class action on a contingent fee basis and without any guarantee of success or award. Accordingly, this factor weighs in favor of approval."); *Pet Food*, 2008 U.S. Dist. LEXIS 94603, at *113 ("Courts have consistently recognized that the risk of receiving little or no recovery is a major factor in considering an award of attorneys' fees."). *See, e.g., In re Apollo Group, Inc. Sec. Litig.,* No. CV 04-2147-PHX-JAT, 2008 U.S. Dist. LEXIS 61995 (D. Ariz. Aug. 4, 2008) (the court, on a motion

for judgment as a matter of law, overturned a jury verdict of $277 million in favor of shareholders based on insufficient evidence presented at trial to establish loss causation); *Backman v. Polaroid Corp.*, 910 F.2d 10 (lst Cir. 1990) (where the class won a substantial jury verdict and motion for judgment n.o.v. was denied, on appeal the judgment was reversed and the case was dismissed -- after 11 years of litigation); *Berkey Photo, Inc. v. Eastman Kodak Co.,* 603 F.2d 263 (2d Cir. 1979) (multimillion dollar judgment reversed after lengthy trial).

Had Plaintiff's Counsel failed to secure a substantial benefit for WIMC, they would have recovered nothing for the time and expenses invested in this complex and risky litigation.  As discussed, Plaintiff's Counsel faced significant litigation risks in pursuing this derivative action. These risks and the benefits secured for WIMC and its stockholders fully justify the proposed award.  *See Cohn*, 375 F. Supp. 2d at 865-66  ("[I]t is imperative that the filing of contingent class action and derivative lawsuits not be chilled by the failure to award attorneys' fees or by the imposition of fee awards that fail to adequately compensate counsel for the risks of pursuing such litigation . . . .  [B]ecause of the complexity and societal importance of stockholder and derivative litigation, the most able counsel should be obtained. The attorneys' fees awarded should reflect this goal.") (citing *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985)).

### 4. The Substantial Time and Expense Devoted to the Litigation in a Concentrated Period Supports the Agreed Fees and Expenses Amount

Plaintiff's Counsel necessarily devoted a significant amount of time and resources to this litigation in a concentrated period of time to achieve an early settlement that maximizes the benefits to WIMC, while minimizing the costs and disruptions to WIMC and preserving its insurance.

Plaintiff's Counsel incurred 369.20 hours during the prosecution of the litigation.

McKenna Fact Decl., ¶36.  This time was spent: (1) reviewing and analyzing the Company's public filings with the SEC, press releases, announcements, transcripts of investor conference calls, and news articles; (2) reviewing and analyzing the allegations contained in a related Securities Class Action;[4] (3) researching and drafting the shareholder derivative complaint in the Action; (4) reviewing and analyzing Defendants' motion to dismiss the original complaint; (5) doing further investigation and research and drafting and filing the amended complaint; (6) analyzing Defendants' motion to dismiss the amended complaint; (7) drafting and filing papers in opposition to the Defendants' motion to dismiss the amended complaint; (8) reviewing this Court's Order denying Defendants' motion to dismiss the amended complaint; (9) reviewing and analyzing Defendants' motion for reconsideration or in the alternative for certification for appeal pursuant to 28 U.S.C. § 1292(b); (10) researching corporate governance issues; (11) preparing extensive settlement demands and corporate governance reforms proposals; (12) engaging in extensive settlement discussions with opposing counsel; (13) reviewing internal corporate information produced to the Plaintiff by WIMC; (14) negotiating with opposing counsel a Term Sheet of Corporate Governance Reforms and a Memorandum of Understanding; and (15) preparing for and participating in telephonic negotiations to reach and then document the substantive terms of the Settlement and to confirm the conclusion that the Settlement is fair, reasonable, and adequate and in the best interests of WIMC. McKenna Fact Decl., ¶12. The tasks that consumed the vast majority of Plaintiff's Counsel's time contributed directly to generating the knowledge base and leverage necessary to secure the benefits for WIMC, and, later, to confirming their conclusion that the Settlement serves WIMC's best interests. *Id*., ¶¶12, 18, 25-26, 29

Plaintiff's Counsel incurred $1,979.74 in total expenses performing these tasks. *See* Exs. 2

---

[4] *See Elkin v. Walter Investment Management Corp., et al,* Case No.: 2:17-cv-02025 (E.D. Pa.)

and 3 to McKenna Fact Decl. These expenses were necessary to effectively prosecute and resolve the case on favorable terms, would have been billed in non-contingency matters, and are therefore properly reimbursed. McKenna Fact Decl. ¶35-36; *see also* Exs. 2 and 3 to McKenna Fact Decl. *See also Novartis Pharms. Corp.*, 2010 U.S. Dist. LEXIS 125945, at *67 (S.D.N.Y. Nov. 30, 2010) ("It is well-established that counsel who create a common fund . . . are entitled to the reimbursement of [all reasonable] litigation costs and expenses.").

### 5. *Public Policy Supports the Proposed Award*

Derivative actions like the instant case play an important role in "protect[ing] the interests of the corporation from the misfeasance and malfeasance of 'faithless directors and managers.'" *Kamen v. Kemper Fin. Servs.*, 500 U.S. 90, 95 (1991); *see also Surowitz v. Hilton Hotels Corp.*, 383 U.S. 363, 371 (1966) ("derivative suits have played a rather important role in protecting shareholders of corporations from the designing schemes and wiles of insiders"); *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 548 (1949) (derivative action is "the chief regulator of corporate management . . . without it there would be little practical check on [management] abuses"); *see also In re AOL Time Warner S'holder Derivative Litig.*, 2009 U.S. Dist. LEXIS 124372, at *70 (S.D.N.Y. Nov. 9, 2009) (fee award should incentivize "future counsel to devise remedies as an alternative to money, strengthening corporate America in the long run through innovation and prophylaxis").

To date, no objections have been received. The lack of substantial objections is a factor strongly in favor of the requested award, and can be read as an endorsement of the results received and the services rendered by Plaintiff's Counsel.  *See Rite Aid,* 396 F.3d at 305 ("The District Court did not abuse its discretion in finding the absence of substantial objections by class members to the fee requests weighed in favor of approving the fee request"); *Am. Investors,* 263 F.R.D at 244 (E.D. Pa. 2009) (the small number of objectors "indicate[s] that the class is satisfied with the

fee award"); *Milliron v. T-Mobile USA, Inc.,* Civil Action No. 08-4149 (JLL), 2009 U.S. Dist. LEXIS 101201, at *30 (D.N.J. Sep. 10, 2009) (Linares, J.) (absence of class member objection "is strong evidence that the requested fee is reasonable").

### C.      The Case Expenses Incurred Are Reasonable

The Third Circuit has expressly approved of the awarding of expenses -- in addition to fees -- to counsel who obtain a recovery for the class and thus by analogy for a corporation through a derivative action. *In re Safety Components Int'l Sec. Litig.*, 166 F. Supp. 2d 72, 108 (D.N.J. 2001) ("Counsel for a class action is entitled to reimbursement of expenses that were adequately documented and reasonable and appropriately incurred in the prosecution of the class action."), *see also Abrams v. Lightolier, Inc.*, 50 F.3d 1204, 1225 (3d Cir. 1995). Here, the out-of-pocket case expenses total $1,979.74 for all firms, were incurred in the normal course of commercial and complex litigation and are included within the modest Attorneys' Fees and Litigation Expenses Award sought. *See* McKenna Fact Decl., Exs. 2 and 3.

### D.      The Service Award Requested for the Named Plaintiff Is Reasonable

Plaintiff respectfully requests that the Court approve the service award of $2,500 for the named Plaintiff to be paid from the Attorneys' Fees and Litigation Expenses Award in recognition of his role in creating substantial benefits for WIMC and its stockholders. *See Lizondro–Garcia v. Kefi LLC*, 2014 U.S. Dist. LEXIS 143165, at *23 (S.D.N.Y. Oct. 7, 2014) (service awards common in shareholder representative actions); *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 150-51 (S.D.N.Y. 2010) (service awards reimburse representatives for assuming leadership's risks and burdens). The proposed service award would constitute a small fraction of a percent of the benefit secured for WIMC, and, because it is drawn from the Attorneys' Fees and Litigation Expenses Award, it would not reduce the benefit enjoyed by the Company or increase the cost to the Company. *See In re Presidential Life Secs.*, 857 F. Supp. 331, 337 (S.D.N.Y. 1994) (incentive

29

awards "need not be subject to intense scrutiny inasmuch as these funds will come out of the attorneys' fees").

## VII.   CONCLUSION

The Settlement provides a substantial benefit to WIMC and is otherwise fair, reasonable, and adequate and should therefore be approved in all respects.

Dated:  December 27, 2018

Respectfully submitted,

**DONOVAN LITIGATION GROUP, LLC**

By: *s/ Michael D. Donovan*
Michael D. Donovan
15 Saint Asaphs Road
Bala Cynwyd, PA 19004-2405
Telephone: (610) 647-6067
Facsimile: (610) 647-7215
Email: mdonovan@donovanlitigationgroup.com

*Local counsel*

-and-

Thomas J. McKenna
**GAINEY McKENNA & EGLESTON**
440 Park Avenue South, 5th Floor
New York, NY 10016
Telephone: (212) 983-1300
Facsimile: (212) 983-0383
Email: tjmckenna@gme-law.com

*Attorneys for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on December 27, 2018, I caused a true and correct copy of the foregoing to be served on counsel of record by electronically filing it with the Clerk of the Court using the ECF system, which will send notification of such filing to the registered participants and via email to counsel for Defendants.

<u>*s/ Michael D. Donovan*</u>
Michael D. Donovan

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHAEL E. VACEK, JR., derivatively on behalf of WALTER INVESTMENT MANAGEMENT CORP., now known as Ditech Holding Corporation, | ) ) ) ) ) |
| Plaintiff, | ) Case 2:17-cv-02820-JCJ |
| v. | ) ) |
| GEORGE M. AWAD, DANIEL G. BELTZMAN, MICHAEL M. BHASKARAN, NEAL P. GOLDMAN, WILLIAM J. MEURER, ALVARO G. de MOLINA, VADIM PERELMAN, and ANTHONY N. RENZI, | ) ) ) ) ) ) ) |
| Defendants, | ) ) |
| And | ) ) |
| WALTER INVESTMENT MANAGEMENT CORP., now known as Ditech Holding Corporation, | ) ) ) |
| Nominal Defendant. | ) |

## DECLARATION OF THOMAS J. McKENNA IN SUPPORT OF PLAINTIFF'S MOTION FOR FINAL APPROVAL OF SETTLEMENT AND IN SUPPORT OF ATTORNEYS' FEES, SERVICE AWARD FOR NAMED PLAINTIFF AND REIMBURSEMENT OF CASE EXPENSES

I, THOMAS J. McKENNA, declare as follows:

1.      I am an attorney duly licensed to practice before all courts of the State of New York and have been admitted pro hac vice in this matter.

2.      I make this Declaration in support of Plaintiff's Motion for Final Approval of Settlement and In Support of Attorneys' Fees, Service Award and Reimbursement of Case Expenses.  I hereby state of record that there has been no collusion or complicity of any kind in connection with the negotiations for, or the agreement to, settle this derivative action.  I state of record that all settlement negotiations in this case were conducted at arms'-length by adverse, represented parties and broke down more than once over disputes between the parties as to the terms of the settlement.

3.      I am a member of the law firm of Gainey, McKenna & Egleston, lead counsel in the above-captioned derivative action brought on behalf of Walter Investment Management Corp., now known as Ditech Holding Corporation ("WIMC" or the "Company") and counsel of record for Plaintiff Michael E. Vacek, Jr.

4.      This Court previously entered an Order granting preliminary approval to the proposed settlement of the Action.  *See* Dkt. No. 47 ("Preliminary Approval Order").

5.      The proposed settlement, pursuant to the terms of the Stipulation and Agreement of Settlement dated as of October 17, 2018 and attached hereto as Exhibit 1 ("Stipulation"), will result in the termination of this action.  The capitalized terms used herein have the same meaning ascribed to them in the Stipulation.

6.      The Preliminary Approval Order required WIMC to do several things within ten (10) business days of the date of entry of said Order.  Namely, WIMC was required to (i) post a copy of the Stipulation, the Preliminary Approval Order, and the Notice (defined in the Stipulation

and substantially in the form attached as Exhibit B to the Stipulation) on WIMC's website; (ii) cause a Current Report on Form 8-K to be filed with the Securities and Exchange Commission that attached the Notice and provided a link to the Stipulation, the Preliminary Approval Order and the Notice posted on WIMC's website; and (iii) publish the Notice once in Investor's Business Daily and transmit it once over PR Newswire.

7.     WIMC's Counsel has informed the undersigned that all of the required events have occurred, as follows:  (1) WIMC posted a copy of the Stipulation, Preliminary Approval Order, and Notice on its website on December 7, 2018; (2) WIMC filed a Form 8-K that attached the Notice and provided a link to the Stipulation, Preliminary Approval Order, and Notice posted on WIMC's website on December 7, 2018; (3) WIMC transmitted the Notice over PR Newswire on December 7, 2018; and (4) WIMC published the Notice in Investor's Business Daily on December 10, 2018.  In addition, the undersigned's office also posted the Motion for Preliminary Settlement Approval and the accompanying Declaration of Thomas J. McKenna to its website at www.gme-law.com on or about October 25, 2018.  These documents are stamped Dkt. Nos. 45 and 45-1 and include a copy of the Stipulation of Settlement and all of its exhibits.

8.     Accordingly, all of the various methods and manners of Notice to the current stockholders have been given in the manner required by this Court's Preliminary Approval Order. In addition, WIMC's Counsel will file with this Court proof, by affidavit or declaration, of the giving of notice as required by the Preliminary Approval Order not later than seven (7) calendar days prior to the Settlement Hearing.

9.     The Notice provides that the last date on which a stockholder can lodge an objection is twenty-one (21) days before the January 31, 2019 final fairness hearing.  That date is January 10, 2019.

10.     As of today's date, Plaintiff's Counsel has not received any objections and has confirmed with WIMC's Counsel and Defendants' Counsel that they too have received no objections.  No objections are posted to the Court's docket.  If any objections are received after today's date, Plaintiff's Counsel will review them and provide a response as appropriate in advance of, or at, the final fairness hearing.

11.     For the reasons set forth below, Plaintiff's Counsel respectfully submits that the proposed settlement has achieved a substantial benefit for the Company and is otherwise fair, reasonable and adequate and should be given final approval.

12.     All of the following were undertaken by Plaintiff's Counsel before the Settlement was reached:  (1) reviewing and analyzing the Company's public filings with the SEC, press releases, announcements, transcripts of investor conference calls, and news articles; (2) reviewing and analyzing the allegations contained in a related Securities Class Action;[1] (3) researching and drafting the stockholder derivative complaint in the Action; (4) reviewing and analyzing Defendants' motion to dismiss the original complaint; (5) doing further investigation and research and drafting and filing the amended complaint; (6) analyzing Defendants' motion to dismiss the amended complaint; (7) drafting and filing papers in opposition to the Defendants' motion to dismiss the amended complaint; (8) reviewing this Court's Order denying Defendants' motion to dismiss the amended complaint; (9) reviewing and analyzing Defendants' motion for reconsideration or in the alternative for certification for appeal pursuant to 28 U.S.C. § 1292(b); (10) researching corporate governance issues; (11) preparing extensive settlement demands and corporate governance reform proposals; (12) engaging in extensive settlement discussions with opposing counsel; (13) reviewing internal corporate information produced to the Plaintiff by

---

[1] *See Elkin v. Walter Investment Management Corp., et al,* Case No.: 2:17-cv-02025 (E.D. Pa.)

WIMC; (14) negotiating with opposing counsel a Term Sheet of Corporate Governance Reforms and a Memorandum of Understanding; and (15) preparing for and participating multiple telephonic negotiations to reach and then document the substantive terms of the Settlement and to confirm the conclusion that the Settlement is fair, reasonable, and adequate and in the best interests of WIMC.

13.     WIMC is a Maryland corporation with its principal place of business in Pennsylvania. WIMC describes itself as an independent servicer and originator of mortgage loans and servicer of reverse mortgage loans.  Amended Complaint, ¶ 5, Dkt. No. 28.  Plaintiff alleged that WIMC and its subsidiaries had a history of making false statements related to servicing reverse mortgage loans, and deceiving homeowners relating to loan servicing and modifications which resulted in two settlements with federal agencies and WIMC paying more than $92 million in fines. *Id.*, ¶ 23.

14.     Plaintiff further alleged in the Action that from as early as May 3, 2016, the WIMC Defendants permitted the Company to engage in similar conduct involving some of the same subsidiaries that has previously caused harm to WIMC: (a) the Company was involved in fraudulent practices that violated the False Claims Act; (b) the Company's Ditech subsidiary (which was previously named Green Tree) had a material weakness in its internal controls over financial reporting, specifically in its default servicing activities (the same types of practices that harmed its subsidiaries Green Tree and RMS); and (c) resultantly, the Company lacked adequate internal controls over financial reporting.  *Id.*, ¶ 24.  This conduct by Defendants in ignoring the previous red flags of Company misconduct and allowing the Company to repeat its misconduct gives rise to the instant action. *Id.*

A.     <u>**Procedural Background**</u>

14.     On June 22, 2017, Plaintiff commenced the instant Action by the filing of a Verified Shareholder Derivative Complaint.  Dkt. No. 1.  As mentioned above, Plaintiff asserted various claims on behalf of Nominal Defendant WIMC against certain of the Defendants for breach of fiduciary duties.

15.     On August 3, 2017, Defendants filed a motion to dismiss with supporting papers. *See* Dkt. Nos. 22 to 22-3.  On September 13, 2017, Plaintiff filed a Verified Amended Shareholder Derivative Complaint.  Dkt. No. 28.   On October 5, 2017, Defendants filed a motion to dismiss the amended complaint (Dkt. Nos. 30 to 30-2).   On November 6, 2017, Plaintiff filed his Memorandum of Law in Opposition to the Motion to Dismiss the Amended Complaint.  Dkt. No. 31. On November 29, 2017, Defendants filed reply papers in support of their motion to dismiss the amended complaint.  Dkt. Nos. 32 to 32-1.

16.     Then, on December 1, 2017, while the motion to dismiss was pending, WIMC filed a Notice of Bankruptcy Filing and Imposition of Automatic Stay Pursuant to Section 362(a) of the Bankruptcy Code.  Dkt. No. 33.  The Action remained stayed until February 9, 2018 when WIMC filed its Notice of Emergence from bankruptcy and Modification of the Automatic Stay.  Dkt. No. 34.

17.     After further briefing on supplemental authority submitted in connection with the pending motion to dismiss (*see* Dkt. Nos. 35 and 36), this Court on April 25, 2018 entered an Order denying Defendants' motion to dismiss the amended complaint.  *See* Dkt. No. 38.  On May 9, 2018, Defendants filed a Motion for Reconsideration or in the alternative Certification for appeal pursuant to 28 U.S.C. § 1292(b) ("Motion for Reconsideration").  *See* Dkt. Nos. 39 to 39-3.

**B.      Settlement Negotiations**

18.     In March of 2018 while the Defendants' Motion to Dismiss Amended Complaint was pending, Plaintiff made a settlement demand upon Defendants, but no settlement discussions were had.  Thereafter, while Defendants' Motion for Reconsideration was pending, Plaintiff's Counsel and opposing counsel explored a possible settlement in May and June of 2018 and eventually reached agreement on a Term Sheet of corporate governance measures.  Thereafter a Memorandum of Understanding was negotiated and executed on July 2, 2018.  Following that, the settling Parties negotiated and eventually executed on October 17, 2018, the Stipulation and Agreement of Settlement ("Stipulation") and supporting exhibits attached hereto as Ex. 1.  As a condition of the settlement reflected in this Stipulation (the "Settlement"), WIMC will agree to institute and maintain for at least three (3) years certain corporate governance reforms, the terms of which are fully set forth in the Stipulation.  *See* Ex.1, ¶¶ 7-8.

19.     Thereafter, the settling Parties negotiated at arm's-length the attorneys' fees and reimbursement of expenses to be paid to Plaintiff's Counsel, in light of the substantial benefits that will be conferred upon the Company by the corporate governance reforms and as a result of the institution and settlement of the Action.  The settling Parties eventually agreed to a final proposal of an award of Attorneys' Fees and Litigation Expenses in the total amount of $257,500.00 to be paid to Plaintiff' Counsel, subject to the approval of the Court.  Ex.1, ¶¶ 9-10.

20.     The Settlement provides for the implementation of Reforms designed to prevent misconduct and detect potential violations of applicable law, regulations, and Company policies. The Reforms will be structured to ensure that WIMC's Board of Directors ("Board") fulfills its role in risk oversight of WIMC's operations.  WIMC will maintain the Reforms for a period of at least three (3) years.

The reforms, with the paragraph numbers and letters assigned to them by the Stipulation, are as follows:

## Settlement Consideration

7.      In consideration of the settlement of the Released Plaintiff's Claims against Defendants' Releasees and WIMC's Releasees, WIMC has adopted or will adopt the following corporate governance measures:

(a)      Since the commencement of this lawsuit on June 22, 2017, WIMC has "refreshed" its board of directors, board committees, and senior management as follows:

(i)      A majority of the Board's current members are new directors who joined the Board in 2018: of nine current directors, 1 joined in December 2015 (Daniel Beltzman); 1 joined in June 2016 (George Awad); 1 joined in January 2017 (Neal Goldman); and 6 joined in February 2018 (David Ascher, Seth Bartlett, John Brecker, Thomas Miglis, Thomas Marano, and Samuel Ramsey). All eight of the Board's non-employee directors are independent under the NYSE listing requirements.

(ii)      WIMC hired a new Chief Executive Officer in 2018, Thomas Marano.

(iii)      WIMC hired a new Chief Financial Officer in 2018, Jerry Lombardo.

(iv)      WIMC hired a new Chief Operating Officer in 2018, Ritesh Chaturbedi.

(v)      A majority of the Board's Audit Committee consists of directors who joined the Board in 2018: on June 1, 2017, the Audit Committee consisted of Michael Bhaskaran, Alvaro De Molina, Neal Goldman, and William Meurer; as of April 20, 2018 the Audit Committee consists of John Brecker, Neal Goldman, and Samuel Ramsey. All members of the Audit Committee are independent under Rule 10A-3(b)(1) of the Securities Exchange Act of 1934, as amended.

(vi)      A majority of the Board's Compensation Committee consists of directors who joined the Board in 2018: on June 1, 2017, the Compensation Committee consisted of Daniel Beltzman, Alvaro De Molina, Neal Goldman, and Vadim Perelman; as of April 20, 2018 the Compensation Committee consists of Seth Bartlett, Daniel Beltzman, and Thomas Miglis.

(vii)   A majority of the Board's Finance Committee consists of directors who joined the Board in 2018: on June 1, 2017, the Finance Committee consisted of Daniel Beltzman, Alvaro De Molina, Neal Goldman, and Vadim Perelman; as of April 20, 2018 the Finance Committee consists of George Awad, John Brecker, and Samuel Ramsey.

(b)     Since the commencement of this lawsuit, WIMC has adopted the following corporate governance measures:

(i)     The Board amended its Corporate Governance Guidelines to provide that when the Chairman of the Board is not an independent director the Board will consider appointment of a Lead Independent Director, and added an Appendix to its Corporate Governance Guidelines describing the duties of the Lead Independent Director. In May 2018, the Board appointed Seth Bartlett, a director who joined the Board in 2018, to serve as Lead Independent Director.

(ii)    The Board created a Technology and Operations Committee, consisting of directors who joined the Board in 2018: David Ascher, Seth Bartlett, and Thomas Miglis.

(iii)   The Board approved an equity incentive plan (the Ditech Holding Corporation 2018 Equity Incentive Plan) providing for clawbacks of compensation where:

(a)    the "compensation [is] . . . based on financial statements that are subsequently required to be restated in a way that would decrease the value of such compensation;" or

(b)    within one year of the exercise or vesting of the compensation award (i) "Service is terminated for Cause," (ii) "Participant is subject to any recoupment of benefits pursuant to [WIMC's] compensation recovery, 'clawback' or similar policy, as may be in effect from time to time," or (iii) "Committee determines in its discretion either that, (1) during the Participant's period of Service, the Participant engaged in an act or omission which would have warranted termination of the Participant's Service for Cause or (2) after a Participant's termination of Service, the Participant engaged in conduct that materially violated any continuing obligation or duty of the Participant in respect of [WIMC] or any Subsidiary."

(iv)    WIMC has updated its website to ensure the correct listing of current members of all Board Committees.

9

(c)     WIMC agrees to adopt the following additional corporate governance measures no later than thirty (30) calendar days following the Effective Date:

      (i)     The Board's Lead Independent Director and Compliance Committee will oversee annual self-evaluation of the Board and all Board Committees other than the Compliance Committee. The Lead Independent Director and the Audit Committee will oversee the Board's annual self-evaluation of the Compliance Committee.

      (ii)    WIMC will amend its Corporate Governance Guidelines to reimburse directors for the cost of attending continuing director education programs in order to encourage directors to attend such programs and maintain the level of expertise required to perform their responsibilities as directors.

      (iii)   WIMC will amend its Compliance Committee charter to provide that the Chief Risk and Compliance Officer will report to the Compliance Committee at least quarterly.

      (iv)    The Board will amend the charters of the Audit Committee and the Compliance Committee to require that the Audit Committee and the Compliance Committee hold one joint meeting per year.

      (v)     WIMC will require employees to certify annually that they have reviewed WIMC's Code of Conduct and completed all required compliance training.

(d)     WIMC agrees to keep the corporate governance measures stated in ¶¶ 7(b)-7(c) in place for at least three (3) years, unless (i) a majority of the Board's non-management directors determine in the exercise of their business judgment that maintenance of a particular measure no longer serves the best interests of WIMC or (ii) WIMC's General Counsel advises the Board that modification is required by law.

8.     WIMC acknowledges that the filing of the Action was a contributing factor in the adoption and implementation of the corporate governance measures stated in ¶¶ 7(a)-7(b) and a substantial contributing factor in the adoption and implementation of the corporate governance measures stated in ¶ 7(c) and that these corporate governance measures confer a material benefit on WIMC and its stockholders.

* * * *

21.     The Stipulation also provides for the entry of judgment dismissing the Action on the merits with prejudice, and a complete release of the Released Claims as detailed in the Stipulation.

22.     The settling Parties have determined that it is desirable and beneficial that the Action, and all of the disputes related thereto, be fully and finally settled in the manner and upon the terms and conditions set forth in the Stipulation.

23.     The precise details of the Reforms, and how they will be implemented, are set forth in the Stipulation. *See* Ex. 1, Stipulation, ¶¶ 7-8.

24.     The Company has agreed to maintain the Reforms for three (3) years – which is a meaningful amount of time intended to ensure the Reforms become embedded in the Company's policies, practices, and corporate culture, thus protecting against discontinuation of these Reforms following the three-year period.  *See* Ex. 1, Stipulation, ¶ 7(d).

25.     As noted above, Plaintiff's Counsel conducted an extensive investigation relating to the claims and the underlying events and transactions alleged in the Action.  Plaintiff's Counsel believe that the Action has substantial merit, and Plaintiff's entry into the Stipulation is not intended to be and shall not be construed as an admission or concession concerning the relative strength or merit of his claims.

26.     However, Plaintiff and Plaintiff's Counsel recognize and acknowledge the significant risk, expense, and length of continued proceedings necessary to prosecute the Action against the Defendants through trial and through possible appeals. The undersigned also has taken into account the uncertain outcome and the risk of any litigation, as well as the difficulties and delays inherent in such litigation.  Plaintiff's Counsel are also mindful of the inherent problems of establishing that demand on the Board was futile, and the possible defenses to the claims alleged in the Action.

27.     Defendants have denied and continue to deny each and all of the claims and allegations of wrongdoing made by Plaintiff in the Action and they assert they have meritorious

defenses. Defendants have also contended that many of the allegations in the Amended Complaint are materially inaccurate.

28.     The Defendants also have denied and continue to deny, among other allegations, the allegations that Plaintiff, WIMC, or its stockholders have suffered damage or that Plaintiff, WIMC or its stockholders were harmed in any way by the conduct or statements alleged in the Action or otherwise.  The Defendants also asserted that at all times they acted in good faith and in a manner they reasonably believe to be and that was in the best interests of WIMC and its stockholders.

29.     Based on my thorough review and analysis of the relevant facts, allegations, defenses, and controlling legal principles, I believe that the Settlement set forth in the Stipulation is fair, reasonable, and adequate, and confers substantial benefits upon WIMC and its stockholders. Based upon this evaluation, Plaintiff and Plaintiff's Counsel have determined that the Settlement is in the best interests of WIMC and its stockholders and have agreed to settle the Action upon the terms and subject to the conditions set forth in the Stipulation.

30.     In addition, the undersigned believes that the Defendants have also concluded that further litigation activities would be protracted and expensive, and that the Settlement confers substantial benefits on WIMC and is fair, reasonable, adequate, and in the best interests of WIMC and its stockholders.

31.     Plaintiff's Counsel has not received any payment for our work in connection with the Litigation, nor have we been reimbursed for our out-of-pocket case-related expenses. After negotiating the substantive terms of the Settlement, the undersigned and Defendants' Counsel then separately negotiated a fair and reasonable sum to be paid to Plaintiff's Counsel for attorneys' fees

and expenses (the "Attorneys' Fees and Litigation Expense" award).  The Attorneys' Fees and Litigation Expense award agreed to by the Settling Parties is $257,500 in total.  Ex. 1, ¶¶ 9-10.

32.     From that amount, besides legal fees and Plaintiff's Counsel's out-of-pocket case-related expenses, it is also proposed that a service award to the named Plaintiff in the amount of $2,500 be deducted from the Attorneys' Fees and Litigation Expense award.  *Id.,* ¶ 10.

33.     This agreed upon Attorneys' Fees and Litigation Expense award and its amount was voluntarily reached by the settling Parties and is designed to compensate Plaintiff's Counsel and Plaintiff for the results achieved in the Action for the benefit of the Company and the risks of undertaking the prosecution of the Action on a contingent basis.  *Id.*

34.     Defendants take no position on Plaintiff's request for a service award of $2,500 to the Plaintiff, so long as it is deducted from the Attorneys' Fees and Litigation Expense award and is not an additional assessment made against the Company.  *Id.*

35.     Attached hereto as Exhibit 2 is a Declaration of Thomas J. McKenna in Support of Plaintiff's Motion for ("McKenna Fee Decl."), setting forth the time expended by my firm in the prosecution and settlement of this action to date, and the out-of-pocket case-related expenses incurred to date.  Attached as Exhibit 3 is a Declaration of Michael D. Donovan in Support of Plaintiff's Motion for Attorneys' Fees, Reimbursement of Case Expenses and Named Plaintiff Case Contribution Award.  Also attached to each Fee Declaration is a copy of the firm resume of the law firm in question.

36.     The total time ("lodestar") of all Plaintiff' Counsel is $246,552.50, representing 369.20 total hours to date, *see* attached Exhibits 2 and 3.  In addition, the total case-related expenses of all counsel is $1,979.74, *see* Exs. 2 and 3.  As can be seen from the attached Fee Declarations, the total time expended is a modest "positive" lodestar of 1.04% of the agreed-upon

combined Attorneys' Fees and Litigation Expense award, from which will also be deducted the case-related expenses incurred of $1,979.74 and the proposed service award of $2,500 for the named Plaintiff.  In addition, further work will be required to prepare for and attend the final Settlement Hearing on January 31, 2019, all of which will likely make the lodestar slightly "negative" by that point.

37.     The undersigned has worked closely with the Plaintiff throughout the duration of the instant litigation, including during the investigative phase and throughout the prosecution of the Action. The Plaintiff was responsive and supplied necessary information to his counsel, reviewed and supervised the progress of the litigation and was consulted about and approved the proposed Settlement. It is therefore respectfully submitted that the modest $2,500 service award to the Plaintiff is well-justified.  Because it will be paid from the agreed-upon Attorneys' Fees and Litigation Expense award of $257,500, it will not cost the Company anything extra.

38.     Therefore, it is respectfully submitted that the proposed Settlement has conferred a substantial benefit upon the Company in addressing the conduct which previously caused the Company harm and is otherwise fair, adequate and reasonable in all its particulars.  Accordingly, it is respectfully submitted that the instant motion to give final approval to the Settlement and to set $257,500 as the amount of the Attorneys' Fees and Litigation Expense award should be granted in its entirety.

Executed this 27th day of December 2018.


By: *s/ Thomas J. McKenna*
      Thomas J. McKenna

# *EXHIBIT 1*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| MICHAEL E. VACEK, JR., derivatively on behalf of WALTER INVESTMENT MANAGEMENT CORP., | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case 2:17-cv-02820-JCJ |
| GEORGE M. AWAD, DANIEL G. BELTZMAN, MICHAEL M. BHASKARAN, NEAL P. GOLDMAN, WILLIAM J. MEURER, ALVARO G. de MOLINA, VADIM PERELMAN, and ANTHONY N. RENZI, | ) ) ) ) ) ) ) | |
| Defendants, | ) ) | |
| and | ) ) | |
| WALTER INVESTMENT MANAGEMENT CORP., | ) ) ) | |
| Nominal Defendant. | ) | |

## STIPULATION AND AGREEMENT OF SETTLEMENT

This Stipulation and Agreement of Settlement, dated as of October 17, 2018 (the "Stipulation") is entered into between (a) Plaintiff Michael E. Vacek, Jr. ("Plaintiff"), derivatively on behalf of Walter Investment Management Corp., now known as Ditech Holding Corporation ("WIMC"), (b) Nominal Defendant WIMC, and (c) Defendants George M. Awad, Daniel G. Beltzman, Michael M. Bhaskaran, Neal P. Goldman, William J. Meurer, Alvaro G. de Molina, Vadim Perelman, and Anthony N. Renzi ("Defendants"), and embodies the terms and conditions of the settlement of the above-captioned action (the "Action"). Subject to the approval of the Court and the terms and conditions expressly provided herein, this Stipulation fully, finally and forever compromises, settles, releases, resolves, and dismisses with prejudice the Action and all claims

asserted in the Action. All terms with initial capitalization have the meanings ascribed to them in ¶ 1.

WHEREAS:

A.      On June 22, 2017, Plaintiff initiated this Action by filing a Verified Shareholder Derivative Complaint.

B.      On August 3, 2017, WIMC and Defendants moved to dismiss the Action.

C.      On September 13, 2017, Plaintiff filed a Verified Shareholder Amended Derivative Complaint. As amended, the Action asserts claims on behalf of WIMC against Defendants alleging breach of fiduciary duties, unjust enrichment, and waste of corporate assets involving, among other things, the origination, underwriting, and appraisal of mortgage products, claims by, and settlements with, government agencies concerning the origination, underwriting, and appraisal of mortgage products, and accounting and financial reporting related to default servicing activities, including, but not limited to, errors in financial statements and weaknesses in internal controls over financial reporting with respect to foreclosure tax liens, foreclosure related advances, processing and oversight of loans in bankruptcy, adjustments of reserves, and valuation allowances on deferred tax asset balances.

D.      On October 5, 2017, WIMC and Defendants again moved to dismiss the Action.

E.      WIMC and Defendants' motions to dismiss contended that Plaintiff lacked standing to pursue the claims in the Action because Plaintiff was required to—but did not—first demand that WIMC's board of directors pursue the claims alleged in the Action on WIMC's behalf. The motions to dismiss also contended that Plaintiff's claims failed under WIMC's charter and Md. Code Ann., Md. Cts. & Jud. Proc. § 5-418, pursuant to which a claim against WIMC directors and officers must be dismissed absent allegations that the directors and officers "actually received an

improper benefit or profit in money" or directors' and officers' "action, or failure to act, was the result of active and deliberate dishonesty," and, Defendants contended, Plaintiff failed to allege facts showing that WIMC's directors and officers received an improper benefit or that they acted with active and deliberate dishonesty.

F.      On November 6, 2017, Plaintiff opposed the motion to dismiss the Amended Complaint. On November 29, 2017, WIMC and Defendants filed reply papers in further support of the motion to dismiss.

G.      On November 20, 2017, WIMC commenced a voluntary bankruptcy proceeding. From November 30, 2017 to February 9, 2018 the Action was automatically stayed pursuant to 11 U.S.C. § 362 until the bankruptcy case concluded.

H.      On April 26, 2018, the Court denied WIMC's and Defendants' motion to dismiss on the ground that Plaintiff was not required to make a pre-suit demand on the Board. The Court did not address the second ground for the motion: that Plaintiff's claims failed under WIMC's charter and Md. Code Ann. Md. Cts & Jud. Proc. § 5-418 because, Defendants contended, Plaintiff was required to—but did not—allege that WIMC's directors and officers received an improper benefit or that they acted with active and deliberate dishonesty.

I.      On May 9, 2018, WIMC and Defendants moved for reconsideration or certification to the Unites States Court of Appeals for the Third Circuit of the Court's denial of the motion to dismiss. Plaintiff, WIMC, and Defendants then began discussing a possible resolution of the Action.

J.      On July 2, 2018, before Plaintiff responded to the motion for reconsideration or certification, Plaintiff, WIMC and Defendants entered into a memorandum of understanding to settle the Action and release all claims asserted against Defendants in the Action in exchange for

WIMC's adoption of corporate governance measures stated in the Memorandum of Understanding, contingent on satisfactory completion of this Stipulation of Settlement. This Stipulation reflects the Parties' final and binding agreement.

K.   Based upon their investigation and prosecution of the case, Plaintiff and Plaintiff's Counsel have concluded that the terms and conditions of this Stipulation are fair, reasonable and adequate to Plaintiff and WIMC, and in their best interests. With the advice of Plaintiff's Counsel, Plaintiff has agreed to settle and release the claims in the Action pursuant to the terms and provisions of this Stipulation, including the releases provided for in this Stipulation, after considering, among other things, the benefits that WIMC will receive in the Settlement, and the substantial risks and costs of continued litigation, including the pending motion for reconsideration or certification, motions for summary judgment, trial, and appeals.

L.   WIMC and Defendants are entering into this Stipulation solely to eliminate the uncertainty, burden and expense and risk of further protracted litigation. Defendants deny the claims alleged by Plaintiff in the Action, including, among other things, that Defendants breached any fiduciary duties, were unjustly enriched or wasted corporate assets in the manner alleged in the Action or in any other way. Defendants maintain that they have meritorious defenses to all claims alleged in the Action and all claims released in the Settlement provided for in this Stipulation. Defendants further deny that Plaintiff or WIMC suffered damages as a result of any wrongful act by Defendants. WIMC, which has indemnification obligations to Defendants under WIMC's certificate of incorporation and bylaws, and Defendants nonetheless have concluded that continued litigation of the Action, including, if the pending motion for reconsideration or certification is denied, further motions, discovery, trial, and appeals, would be protracted, burdensome, and expensive, and that it is desirable and beneficial to WIMC and Defendants that

4

the Action be fully and finally compromised, settled, and terminated in the manner and upon the terms and conditions stated in this Stipulation, including the releases provided for in this Stipulation.

M.     The Parties agree that the Action was initiated, filed and prosecuted by Plaintiff in good faith and defended by WIMC and Defendants in good faith, that the Action is being voluntarily settled with the advice of counsel, and that the terms of the Settlement are fair, adequate and reasonable.

N.     NOW THEREFORE, it is hereby STIPULATED AND AGREED, by Plaintiff (individually and on behalf of WIMC) and WIMC and Defendants, by and through their respective undersigned attorneys and subject to the approval of the Court, that, in consideration of the benefits flowing to Plaintiff, WIMC and Defendants from the Settlement, all Released Plaintiff's Claims (defined below) as against WIMC's Releasees (defined below) and Defendants' Releasees (defined below) and all Released WIMC Claims (defined below) and Released Defendants' Claims (defined below) as against the Plaintiff's Releasees (defined below) shall be settled and released, upon and subject to the terms and conditions set forth below.

## **DEFINITIONS**

1.     As used in this Stipulation and its exhibits, the following capitalized terms shall have the following meanings:

(a)     "Action" means the action styled *Vacek v. Awad*, No. 2:17-cv-02820-JCJ, pending in the United States District Court for the Eastern District of Pennsylvania.

(b)     "Attorneys' Fees and Litigation Expenses" means the attorneys' fees, costs and expenses WIMC and Defendants will cause their insurance carrier to pay, and that WIMC and Defendants' insurance carrier has agreed to pay, to Plaintiff's Counsel, set forth in ¶¶ 9-12, subject

to Court approval, for the benefits Plaintiff and Plaintiff's Counsel have conferred upon WIMC by the initiation, prosecution, and settlement of the Action.

(c) "Counsel" means "Plaintiff's Counsel, Defendants' Counsel, and WIMC's Counsel.

(d) "Court" means the United States District Court for the Eastern District of Pennsylvania.

(e) "Defendants" means George M. Awad, Daniel G. Beltzman, Michael M. Bhaskaran, Neal P. Goldman, William J. Meurer, Alvaro G. de Molina, Vadim Perelman, and Anthony N. Renzi.

(f) "Defendants' Counsel" means Dechert, LLP.

(g) "Defendants' Releasees" means Defendants, Defendants' Counsel, and each of their present and former predecessors, successors, affiliates, employees, general partners, attorneys, accountants, auditors, bankers, advisors, agents, assigns, assignees, indemnifiers, insurers, reinsurers, heirs, estates, executors, trustees, administrators, or trusts, in their capacities as such.

(h) "Effective Date" means the first business day after all of the conditions specified in ¶ 15 below have occurred or been waived.

(i) "Excluded Claims" means (i) claims asserted in the class action pending in the United States District Court for the Eastern District of Pennsylvania styled *Elkin v. Walter Investment Management Corp., et al.*, Class Action No. 2:17-cv-02025-JCJ, (ii) claims by Defendants or other Defendants' Releasees or WIMC or other WIMC's Releasees against his, her, its, or their insurers, and (iii) claims relating to the enforcement of this Stipulation and the Settlement.

(j)     "Final," with respect to the Judgment or any other court order means the latest of: (i) if no appeal is filed, the expiration of the time for filing or noticing any appeal under the Federal Rules of Appellate Procedure, *i.e.*, thirty (30) days after entry of the Judgment or order; or (ii) if an appeal or appeals are filed, (a) the date on which all appeals have been dismissed and the expiration of the time for filing or noticing any motion or motions for reconsideration or reargument or petition or petitions for a writ of certiorari or other form of further appeal or review, and, in the event of the filing of any motion or motions for reconsideration or reargument or petition or petitions for a writ of certiorari or other form of further appeal or review, the date on which all such proceedings are completed in a manner resulting in the dismissal remaining in place, or (b) the date on which the Judgment or order is affirmed on appeal and the expiration of the time for filing of any motion or motions for reconsideration or reargument or petition or petitions for a writ of certiorari or other form of further appeal or review, or the denial of any such motion or motions for reconsideration or reargument or petition or petitions for a writ of certiorari or other form of further appeal or review, and, if further review or certiorari is granted, the date on which all such proceedings are completed in a manner resulting in the Judgment or order remaining in place. However, no appeal or proceeding or subsequent judicial review pertaining solely to a provision of the Judgment or order with respect to Attorneys' Fees and Litigation Expenses shall in any way delay or preclude the Judgment or any order from becoming Final.

(k)     "Judgment" means the final judgment, substantially in the form attached hereto as Exhibit C or as otherwise agreed upon by the Parties, entered by the Court approving the Settlement.

(l)     "Notice" means the Notice of Proposed Settlement of Derivative Action and Motion for an Award of Attorneys' Fees and Litigation Expenses, substantially in the form attached as Exhibit B.

(m)     "Parties" means Plaintiff, Defendants, and WIMC.

(n)     "Party" means each of Plaintiff, Defendants, and WIMC.

(o)     "Person" means any individual, corporation, professional corporation, limited liability company, partnership, limited partnership, limited liability partnership, association, joint stock company, estate, legal representative, trust, unincorporated association, government or any political subdivision or agency thereof, or any other business or legal entity.

(p)     "Plaintiff" means Michael E. Vacek, Jr.

(q)     "Plaintiff's Counsel" means the Donovan Litigation Group, LLC and Gainey McKenna & Egleston.

(r)     "Plaintiff's Releasees" means Plaintiff, Plaintiff's Counsel, and their respective present and former predecessors, successors, affiliates, employees, general partners, managers, attorneys, accountants, auditors, bankers, advisors, agents, assigns, assignees, indemnifiers, insurers, reinsurers, heirs, estates, executors, trustees, administrators, or trusts, in their capacities as such.

(s)     "Preliminary Approval Order" means the order, substantially in the form attached as Exhibit A or as otherwise agreed upon by the Parties, to be entered by the Court preliminarily approving the Settlement, directing that notice of the Settlement be provided in the manner provided for in the Preliminary Approval Order, and scheduling the Settlement Hearing.

(t)     "Released Claims" means Released Defendants' Claims, Released WIMC Claims, and Released Plaintiff's Claims.

(u)     "Released Defendants' Claims" means all claims and causes of action of every nature and description, whether known claims or Unknown Claims, whether arising under federal, state, common or foreign law, that arise out of or relate in any way to the institution, prosecution, or settlement of the claims asserted in the Action. Released Defendants' Claims do not include the Excluded Claims.

(v)     "Released Plaintiff's Claims" means all claims and causes of action of every nature and description, whether known claims or Unknown Claims, whether arising under federal, state, common or foreign law, that Plaintiff has asserted in the Action or could have asserted in the Action or other action in any forum arising out of or based on the allegations, transactions, facts, claims, matters or occurrences involved, set forth, or referred to in the Action, concerning, among other things, the origination, underwriting, and appraisal of mortgage products, claims by, and settlements with, government agencies concerning the origination, underwriting, and appraisal of mortgage products, and accounting and financial reporting related to default servicing activities, including, but not limited to, errors in financial statements and weaknesses in internal controls over financial reporting with respect to foreclosure tax liens, foreclosure related advances, processing and oversight of loans in bankruptcy status, adjustments of reserves, and valuation allowances on deferred tax asset balances. Released Plaintiff's Claims do not include the Excluded Claims.

(w)     "Released WIMC Claims" means all claims and causes of action of every nature and description, whether known claims or Unknown Claims, whether arising under federal, state, common or foreign law, that arise out of or relate in any way to the subject matter of the Released Plaintiff's Claims and the Released Defendants' claims. Released WIMC Claims do not include the Excluded Claims.

(x)     "Releasee(s)" means Plaintiff's Releasees, Defendants' Releasees, and WIMC's Releasees.

(y)     "Releases" means the releases set forth in ¶¶ 4-5 of this Stipulation.

(z)      "Settlement" means the settlement provided for in this Stipulation.

(aa)     "Settlement Hearing" means the hearing set by the Court pursuant to Federal Rule of Civil Procedure 23.1(c) to consider final approval of the Settlement.

(bb)     "Stipulation" means this Stipulation, including Exhibits A-C.

(cc)     "Unknown Claims" means any Released Claims that Plaintiff, WIMC, or Defendants or any of the Defendants does not know or suspect to exist in his or its favor at the time of the release of the Released Claims, which, if known by him or it, might have affected his or its decision(s) with respect to the Settlement. With respect to any and all Released Claims, the Parties stipulate and agree that, upon the Effective Date, Plaintiff, WIMC, and Defendants shall be deemed to have waived, and by operation of the Judgment shall have, to the fullest extent permitted by law, waived and relinquished any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States, or principle of common law or foreign law, which is similar, comparable, or equivalent to California Civil Code §1542, which provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

Plaintiff, WIMC, and Defendants acknowledge that Plaintiff, WIMC, or Defendants may hereafter discover facts, legal theories, or authorities in addition to or different from those which he or they now knows or believes to be true with respect to the subject matter of the Released Claims, but that Plaintiff, WIMC, and Defendants intend to, and upon the Effective Date, by operation of the Judgment, shall be deemed to have, and shall have, settled and released, fully,

10

finally, and forever, the Released Claims, known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden, which have existed, now exist, or will exist, upon any theory of law or equity, including, but not limited to, conduct which is negligent, reckless, intentional, with or without malice, or a breach of any duty, law, or rule, without regard to the subsequent discovery or existence of such different or additional facts, legal theories, or authorities. Plaintiff, WIMC, and Defendants acknowledge that the inclusion of "Unknown Claims" in Released Plaintiff's Claims, Released Defendants' Claims, and Released WIMC Claims was separately bargained for and was a material and essential element of this Stipulation and the Settlement.

(dd)    "WIMC" means Walter Investment Management Corp., now known as Ditech Holding Corporation.

(ee)    "WIMC's Counsel" means Hangley Aronchick Segal Pudlin & Schiller and Weil, Gotshal & Manges LLP.

(ff)    "WIMC's Releasees" means WIMC, WIMC's Counsel, and their respective present and former predecessors, successors, affiliates, employees, directors, officers, general partners, managers, attorneys, accountants, auditors, bankers, advisors, agents, assigns, assignees, indemnifiers, insurers, reinsurers, heirs, estates, executors, trustees, administrators, or trusts, in their capacities as such.

## PRELIMINARY APPROVAL OF SETTLEMENT

2.    Promptly following execution of this Stipulation, Plaintiff will move for preliminary approval of the Settlement and entry of the Preliminary Approval Order, and the scheduling of the Settlement Hearing. WIMC and Defendants shall not oppose this motion.

## RELEASE OF CLAIMS

3.       The obligations incurred pursuant to this Stipulation are in consideration of: (i) the full and final disposition of the Action; and (ii) the Releases provided for herein.

4.       Pursuant to the Judgment, without further action by anyone, upon the Effective Date, Plaintiff, derivatively on behalf of WIMC, and Plaintiff's and WIMC's respective heirs, executors, administrators, predecessors, successors, and assigns in their capacities as such, shall be deemed to have, and by operation of law and of the Judgment shall have, fully, finally and forever compromised, settled, released, dismissed, resolved, relinquished, waived and discharged the Released Plaintiff's Claims against Defendants' Releasees and WIMC's Releasees, and shall forever be barred and enjoined from directly or indirectly prosecuting, maintaining, intervening in, or participating in, individually, derivatively, as a class member or otherwise, the Released Plaintiff's Claims against Defendants' Releasees and WIMC's Releasees.  This release shall not apply to the Excluded Claims.

5.       Pursuant to the Judgment, without further action by anyone, upon the Effective Date, Defendants and WIMC, on behalf of themselves and their respective heirs, executors, administrators, predecessors, successors, and assigns in their capacities as such, shall be deemed to have, and by operation of law and of the Judgment shall have, fully, finally and forever compromised, settled, released, dismissed, resolved, relinquished, waived and discharged the Released Defendants' Claims and the Released WIMC Claims against Plaintiff and Plaintiff's Releasees, and shall forever be barred and enjoined from directly or indirectly prosecuting, maintaining, intervening in, or participating in, individually, derivatively, as a class member or otherwise, the Released Defendants' Claims and the Released WIMC Claims against any of the Plaintiff's Releasees.  This release shall not apply to the Excluded Claims.

6.      Notwithstanding ¶¶ 4-5 above, nothing in the Judgment shall bar any action by any of the Parties to enforce or effectuate the terms of this Stipulation or the Judgment.

## SETTLEMENT CONSIDERATION

7.      In consideration of the settlement of the Released Plaintiff's Claims against Defendants' Releasees and WIMC's Releasees, WIMC has adopted or will adopt the following corporate governance measures:

(a)      Since the commencement of this lawsuit on June 22, 2017, WIMC has "refreshed" its board of directors, board committees, and senior management as follows:

(i)      A majority of the Board's current members are new directors who joined the Board in 2018: of nine current directors, 1 joined in December 2015 (Daniel Beltzman); 1 joined in June 2016 (George Awad); 1 joined in January 2017 (Neal Goldman); and 6 joined in February 2018 (David Ascher, Seth Bartlett, John Brecker, Thomas Miglis, Thomas Marano, and Samuel Ramsey). All eight of the Board's non-employee directors are independent under the NYSE listing requirements.

(ii)      WIMC hired a new Chief Executive Officer in 2018, Thomas Marano.

(iii)      WIMC hired a new Chief Financial Officer in 2018, Jerry Lombardo.

(iv)      WIMC hired a new Chief Operating Officer in 2018, Ritesh Chaturbedi.

(v)      A majority of the Board's Audit Committee consists of directors who joined the Board in 2018: on June 1, 2017, the Audit Committee consisted of Michael Bhaskaran, Alvaro De Molina, Neal Goldman, and William Meurer; as of April 20, 2018 the Audit Committee consists of John Brecker, Neal Goldman, and Samuel Ramsey. All members of the Audit Committee are independent under Rule 10A-3(b)(1) of the Securities Exchange Act of 1934, as amended.

(vi)      A majority of the Board's Compensation Committee consists of directors who joined the Board in 2018: on June 1, 2017, the Compensation Committee consisted of Daniel Beltzman, Alvaro De Molina, Neal Goldman, and Vadim Perelman; as of April 20,

2018 the Compensation Committee consists of Seth Bartlett, Daniel Beltzman, and Thomas Miglis.

(vii)     A majority of the Board's Finance Committee consists of directors who joined the Board in 2018: on June 1, 2017, the Finance Committee consisted of Daniel Beltzman, Alvaro De Molina, Neal Goldman, and Vadim Perelman; as of April 20, 2018 the Finance Committee consists of George Awad, John Brecker, and Samuel Ramsey.

(b)     Since the commencement of this lawsuit, WIMC has adopted the following corporate governance measures:

(i)     The Board amended its Corporate Governance Guidelines to provide that when the Chairman of the Board is not an independent director the Board will consider appointment of a Lead Independent Director, and added an Appendix to its Corporate Governance Guidelines describing the duties of the Lead Independent Director. In May 2018, the Board appointed Seth Bartlett, a director who joined the Board in 2018, to serve as Lead Independent Director.

(ii)     The Board created a Technology and Operations Committee, consisting of directors who joined the Board in 2018: David Ascher, Seth Bartlett, and Thomas Miglis.

(iii)     The Board approved an equity incentive plan (the Ditech Holding Corporation 2018 Equity Incentive Plan) providing for clawbacks of compensation where:

(a)     the "compensation [is] . . . based on financial statements that are subsequently required to be restated in a way that would decrease the value of such compensation;" or

(b)     within one year of the exercise or vesting of the compensation award (i) "Service is terminated for Cause," (ii) "Participant is subject to any recoupment of benefits pursuant to [WIMC's] compensation recovery, 'clawback' or similar policy, as may be in effect from time to time," or (iii) "Committee determines in its discretion either that, (1) during the Participant's period of Service, the Participant engaged in an act or omission which would have warranted termination of the Participant's Service for Cause or (2) after a Participant's termination of Service, the Participant engaged in conduct that materially violated any

14

continuing obligation or duty of the Participant in respect of [WIMC] or any Subsidiary."

(iv)   WIMC has updated its website to ensure the correct listing of current members of all Board Committees.

(c)   WIMC agrees to adopt the following additional corporate governance measures no later than thirty (30) calendar days following the Effective Date:

(i)   The Board's Lead Independent Director and Compliance Committee will oversee annual self-evaluation of the Board and all Board Committees other than the Compliance Committee. The Lead Independent Director and the Audit Committee will oversee the Board's annual self-evaluation of the Compliance Committee.

(ii)   WIMC will amend its Corporate Governance Guidelines to reimburse directors for the cost of attending continuing director education programs in order to encourage directors to attend such programs and maintain the level of expertise required to perform their responsibilities as directors.

(iii)   WIMC will amend its Compliance Committee charter to provide that the Chief Risk and Compliance Officer will report to the Compliance Committee at least quarterly.

(iv)   The Board will amend the charters of the Audit Committee and the Compliance Committee to require that the Audit Committee and the Compliance Committee hold one joint meeting per year.

(v)   WIMC will require employees to certify annually that they have reviewed WIMC's Code of Conduct and completed all required compliance training.

(d)   WIMC agrees to keep the corporate governance measures stated in ¶¶ 7(b)-7(c) in place for at least three (3) years, unless (i) a majority of the Board's non-management directors determine in the exercise of their business judgment that maintenance of a particular measure no longer serves the best interests of WIMC or (ii) WIMC's General Counsel advises the Board that modification is required by law.

8.   WIMC acknowledges that the filing of the Action was a contributing factor in the adoption and implementation of the corporate governance measures stated in ¶¶ 7(a)-7(b) and a

15

substantial contributing factor in the adoption and implementation of the corporate governance measures stated in ¶ 7(c) and that these corporate governance measures confer a material benefit on WIMC and its stockholders.

## ATTORNEYS' FEES AND LITIGATION EXPENSES

9.     After negotiation of the principal terms of the Settlement, Plaintiff's Counsel, WIMC's Counsel, and Defendants' Counsel, together with WIMC's insurance carrier, negotiated in good faith concerning the Attorneys' Fees and Litigation Expenses to be proposed to the Court as payment by WIMC's insurance carrier to Plaintiff and Plaintiff's Counsel for the benefits Plaintiff and Plaintiff's Counsel achieved on behalf of WIMC in this Action.

10.     WIMC and Defendants have agreed to cause WIMC and Defendants' insurance carrier to pay, and WIMC's insurance carrier has agreed to pay, Attorneys' Fees and Litigation Expenses to Plaintiff's Counsel in the amount, subject to Court approval, of $257,500 or such smaller amount approved by the Court, no later than fifteen (15) business days after the later of: (a) the date of entry of the award of Attorneys' Fees and Litigation Expenses, and (b) WIMC's Counsel's receipt from Plaintiff's Counsel of the information necessary to effectuate a transfer of funds, including wiring instructions that include the bank name and ABA routing number, account name and number, and a signed W-9 reflecting a valid taxpayer identification number for Plaintiff's Counsel. An award of Attorneys' Fees and Litigation Expenses is not a necessary term of this Stipulation and is not a condition of the Settlement. Neither Plaintiff nor Plaintiff's Counsel may cancel or terminate the Settlement based on this Court's or any appellate court's ruling with respect to Attorneys' Fees and Litigation Expenses. WIMC and Defendants have also agreed not to oppose an application by Plaintiff for approval by the Court of a service award of up to $2,500 to Plaintiff, to be paid by Plaintiff's Counsel from the Court's award of Attorneys' Fees and

Litigation Expenses. WIMC, but not any other of Defendants' Releasees and WIMC's Releasees shall be liable for the payment of Attorneys' Fees and Litigation Expenses.

11.     Payment of Attorneys' Fees and Litigation Expenses shall be made notwithstanding the existence of any timely filed objections thereto, or potential for appeal therefrom, or collateral attack on the Settlement or any part thereof, subject to Plaintiff's Counsel's agreement and obligation to repay to WIMC and Defendants' insurance carrier all amounts plus interest at the legal rate of interest in Pennsylvania if the Settlement is terminated in the manner provided for in ¶¶ 16-17 below or if, as a result of any appeal or further proceedings on remand, or successful collateral attack, the award of Attorneys' Fees and Litigation Expenses is reduced or reversed and such order reducing or reversing the award becomes Final. Plaintiff's Counsel shall make repayment in full no later than thirty (30) days after termination of the Settlement or the date any order reducing or reversing the award of Attorneys' Fees and Litigation Expenses becomes Final.

12.     Payment of Attorneys' Fees and Litigation Expenses in the amount approved by the Court shall constitute final and complete payment of any attorneys' fees and expenses that have been incurred or will be incurred by Plaintiff and Plaintiff's Counsel in connection with the filing, prosecution and settlement of the Action. Tax liability (if any) owed by Plaintiff or Plaintiff's Counsel on account of the payment of Attorneys' Fees and Litigation Expenses or any service award to Plaintiff shall be borne solely and exclusively by Plaintiff or Plaintiff's Counsel, as provided for by law. WIMC, WIMC's Releasees, Defendants, and Defendants' Releasees shall have no liability whatsoever for tax liability (if any) owed by Plaintiff or Plaintiff's Counsel on account of the payment of Attorneys' Fees and Litigation Expenses or any service award to Plaintiff.

## NOTICE

13.     Within ten (10) business days after the Court's entry of the Preliminary Approval Order, WIMC shall: (a) post a copy of this Stipulation, the Preliminary Approval Order, and the Notice on WIMC's website; (b) cause a Current Report on Form 8-K to be filed with the Securities and Exchange Commission that attaches the Notice and provides a link to the Stipulation, the Preliminary Approval Order and the Notice posted on WIMC's website; and (c) publish the Notice once in Investor's Business Daily and transmit it once over PR Newswire. The costs of such Notice shall be paid by WIMC.

## TERMS OF THE JUDGMENT

14.     If the Settlement provided for by this Stipulation is approved by the Court, Plaintiff's Counsel, WIMC's Counsel, and Defendants' Counsel shall request that the Court enter a Judgment, substantially in the form attached as Exhibit C.

## CONDITIONS OF SETTLEMENT AND EFFECT OF DISAPPROVAL, CANCELLATION OR TERMINATION

15.     The Effective Date of the Settlement shall be the first business day after all of the following conditions have occurred or been waived:

(a)     The Court has entered the Preliminary Approval Order as required by ¶ 2 above.

(b)     Neither Plaintiff, WIMC, nor Defendants have exercised their respective options to terminate the Settlement pursuant to the provisions of this Stipulation.

(c)     The Court has approved the Settlement following the notice described in ¶ 13 above and the Settlement Hearing in the manner required by Rule 23.1(e) of the Federal Rules of Civil Procedure.

(d)     The Court has entered the Judgment and the Judgment has become Final.

18

16.     If the Effective Date fails to occur due to the failure of any of the conditions stated in ¶ 15 above, then:

(a)     The Settlement and the relevant portions of this Stipulation shall be canceled and terminated;

(b)     Plaintiff, WIMC and Defendants, shall revert to their respective positions in the Action as of July 2, 2018; and

(c)     the terms and provisions of this Stipulation, with the exception of this ¶ 16 and ¶¶ 18-19, shall have no further force and effect and shall not be used in the Action or in any other proceeding for any purpose, and any Judgment or other order entered by the Court in accordance with the terms of this Stipulation shall be treated as vacated and a nullity.

17.     Plaintiff, WIMC and Defendants shall each have the right to terminate the Settlement by providing written notice of his or its election to do so to the other Parties to this Stipulation within thirty (30) days of: (a) an order that has become Final refusing to enter the Preliminary Approval Order in any material respect; (b) an order that has become Final refusing to approve the Settlement and enter the Judgment in any material respect, including, without limitation, by making any material changes to the releases provided for in ¶¶ 4-5 of this Stipulation and the Judgment; or (c) the date upon which the Judgment, after being entered by the Court, is vacated, modified or reversed in any material respect by the United States Court of Appeals for the Third Circuit or the United States Supreme Court.

## NO ADMISSION OF WRONGDOING

18.     Defendants deny the claims alleged by Plaintiff in the Action, including, among other things, that Defendants breached any fiduciary duties, were unjustly enriched or wasted corporate assets in connection with (i) WIMC's internal controls over financial reporting, (ii) the

restatement of WIMC's financial statements for the year 2016 and the first quarter of 2017, (iii) WIMC's processes for originating and underwriting reverse mortgages and loans, or any other subject. Defendants maintain that they have meritorious defenses to all claims alleged in the Action and all claims released in the Settlement provided for in this Stipulation. Defendants further deny that Plaintiff or WIMC suffered any damages as a result of any alleged wrongful act by Defendants. WIMC, which has indemnification obligations to Defendants under WIMC's certificate of incorporation and bylaws, and Defendants nonetheless have concluded that continued litigation of the Action, if the pending motion for reconsideration or certification is denied, further motions, discovery, trial and appeals, would be protracted, burdensome, and expensive, and that it is desirable and beneficial to WIMC and Defendants that the Action be fully and finally compromised, settled, and terminated in the manner and upon the terms and conditions stated in this Stipulation, including the releases provided for in this Stipulation.

19.     This Stipulation and the Settlement, whether or not approved by the Court, and whether or not the Effective Date occurs, and any discussions, negotiations, arguments made during negotiations, acts performed, communications, drafts, or agreements relating to this Stipulation, the Settlement, and any matter in connection with such discussions, negotiations, arguments made during negotiations, acts performed, communications, drafts, documents, or agreements, shall not be offered or received against or to the prejudice of Plaintiff, Defendants, WIMC or any Releasee for any purpose other than in an action to enforce the terms of this Stipulation and the Settlement, and in particular:

(a)     Do not constitute, and shall not be described as, construed as, or otherwise offered or received against any of the Defendants, WIMC or any of Defendants' Releasees or WIMC's Releasees as evidence of (or deemed to be evidence of) any admission, concession, or

presumption by any of the Defendants, Defendants' Releasees, WIMC, or WIMC's Releasees with respect to (i) the truth of any allegation or claim in the Action or in any litigation or proceeding in any other forum; (ii) the deficiency of any defense that has been or could have been asserted in the Action or in any other litigation or proceeding in any other forum; (iii) any liability, damages, negligence, fault, or other wrongdoing of any kind by any of Defendants, WIMC or any of Defendants' Releasees or WIMC's Releasees; or (iv) referred to for any other reason against or to the prejudice of any of the Defendants, Defendants' Releasees, WIMC, or WIMC's Releasees, in this or any other civil, criminal, or administrative action or proceeding.

(b)     Do not constitute, and shall not be described as, construed as, or otherwise offered or received against Plaintiff or Plaintiff's Releasees as evidence of (or be deemed evidence of) any admission, concession, or presumption by Plaintiff or Plaintiff's Releasees of any infirmity in any claims in the Action or in any litigation or proceeding in any other forum or in any way referred to for any other reason against or to the prejudice of Plaintiff and Plaintiff's Releasees in this or any other civil, criminal, or administrative action or proceeding.

(c)     Do not constitute, and shall not be described as, construed as, or otherwise offered or received against Plaintiff, Defendants, WIMC or Releasees as evidence of (or deemed to be evidence of) any admission, concession, or presumption that the Settlement consideration represents the amount that could be or would have been recovered after trial and appeals in the Action or that the amount that could be or would have been recovered after trial and appeals in the Action would or would not have exceeded the Settlement consideration.

20.     Notwithstanding ¶¶ 18-19 above, Plaintiff, Defendants, WIMC, and Releasees may file, use, or refer to this Stipulation and the Judgment to enforce the terms of this Stipulation and the Judgment or to effectuate the protections from liability provided for by the Stipulation and the

Judgment in any action that may be brought against any of them in order to support a defense or counterclaim based on principles of res judicata, collateral estoppel, judgment bar or reduction, or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

## MISCELLANEOUS PROVISIONS

21.     All of the exhibits to this Stipulation are fully incorporated by reference.  In the event that there exists a conflict or inconsistency between the terms of this Stipulation and the terms of any exhibit attached to this Stipulation, the terms of the Stipulation shall prevail.

22.     The Parties intend this Stipulation and the Settlement to be a full, final and complete resolution of all disputes asserted or which could be asserted in the Action by any of the Released Parties with respect to any of the Released Claims by Plaintiff against the Defendants' Releasees and WIMC's Releasees with respect to the Released Plaintiff's Claims. Plaintiff, Defendants, WIMC, and Counsel agree not to assert in any forum that this Action was brought by Plaintiff or defended by Defendants or WIMC in bad faith or without a reasonable basis. No Party shall assert any claims of any violation of Rule 11 of the Federal Rules of Civil Procedure in connection with the institution, maintenance, prosecution, defense, or settlement of the Action. The Parties agree that the Settlement Amount, Releases and the other terms of the Stipulation and Settlement were negotiated at arm's-length and in good faith, and reflect the Settlement that was reached voluntarily after extensive negotiations and consultation with experienced legal counsel, who were fully competent to assess the strengths and weaknesses of their respective clients' claims and defenses.

23.     While retaining their right to assert or deny that the claims asserted in the Action were meritorious, Plaintiff, Defendants, WIMC, and Counsel shall not make any statement to any media representative (whether or not for attribution) asserting that the Action was commenced or prosecuted or defended in bad faith, nor will they deny that the Action was commenced and

prosecuted and defended in good faith and is being settled voluntarily after consultation with competent legal counsel or disparage the other's business, conduct, or reputation or that of their counsel or allege wrongful or actionable conduct concerning the prosecution, defense, and resolution of the Action and this Settlement, and shall not otherwise suggest in any manner that the Settlement constitutes an admission of any claim or defense alleged.

24.     The terms of the Settlement, as reflected in this Stipulation, may not be modified or amended, nor may any of its provisions be waived except by a writing signed on behalf of Plaintiff, Defendants, and WIMC, or their successors.

25.     The headings in this Stipulation are used for the purpose of convenience only and are not meant to have legal effect or affect the interpretation or construction of this Stipulation.

26.     The administration and consummation of the Settlement provided for in this Stipulation shall be under the authority of the Court, and the Court shall retain jurisdiction for the purpose of entering orders enforcing the terms of this Stipulation.

27.     The waiver by one Party of any breach of this Stipulation or the Settlement by any other Party shall not be deemed a waiver of any other prior or subsequent breach of this Stipulation or the Settlement.

28.     This Stipulation and its exhibits constitute the entire agreement among Plaintiff, Defendants, and WIMC concerning the Settlement. No other agreements, representations, warranties, or inducements have been made by any Party concerning the Settlement, this Stipulation or its exhibits other than those stated in such documents. In entering into this Stipulation, no Party is relying on any promise, warranty, inducement, or representation other than those stated in this Stipulation and Exhibits A-C to this Stipulation, and all Parties disclaim the existence of any such promise, warranty, inducement, or representation.

29.     This Stipulation may be executed in one or more counterparts, including by signature transmitted via facsimile, or by a .pdf or .tif image of the signature transmitted via email. All executed counterparts and each of them shall be deemed to be one and the same instrument.

30.     This Stipulation and the Settlement shall be binding upon and inure to the benefit of the successors and assigns of the Parties, including Releasees and any corporation, partnership, or other entity into or with which any Party hereto may merge, consolidate or reorganize.

31.     The construction, interpretation, operation, effect and validity of this Stipulation and the Settlement, and all documents necessary to effectuate it, shall be governed by the internal laws of the State of Pennsylvania without regard to conflicts of laws, except to the extent that federal law requires that federal law govern.

32.     Any action arising under or to enforce this Stipulation and the Settlement or any portion thereof, shall be commenced and maintained in the Court.

33.     This Stipulation shall not be construed more strictly against one Party than another merely by virtue of the fact that it, or any part of it, may have been prepared by counsel for one of the Parties, it being recognized that it is the result of arm's-length negotiations between the Parties and all Parties have contributed substantially and materially to the preparation of this Stipulation.

34.     Counsel executing this Stipulation and any related documents, warrant and represent that they have the full authority to do so, and that they have the authority to take appropriate action required or permitted to be taken pursuant to the Stipulation to effectuate its terms.

35.     Counsel agree to cooperate reasonably with one another in seeking Court approval of the Preliminary Approval Order and the Settlement, including the Judgment, provided for in this Stipulation, and to use best efforts to promptly agree upon and execute all such other

documentation as reasonably may be required to obtain approval by the Court of the Settlement and to ensure that the Judgment, once entered, becomes Final.

36.     Whenever this Stipulation requires or permits any Party to give notice to another Party, notice shall be provided in writing by email or overnight delivery service and be deemed effective upon receipt.  Notice shall be provided as follows:

|  |  |
|---|---|
| If to Plaintiff: | Gainey McKenna & Egleston<br>Attn:  Thomas J. McKenna, Esq.<br>440 Park Avenue South, 5th Floor<br>New York, NY 10016<br>Telephone:  (212) 983-1300<br>Email: tjmckenna@gme-law.com |
| If to WIMC: | Weil, Gotshal & Manges LLP<br>Attn:  Joseph S. Allerhand, Esq.<br>        Stephen A. Radin, Esq.<br>767 Fifth Avenue<br>New York, New York 10153<br>Telephone: (212) 310-8000<br>Email: joseph.allerhand@weil.com<br>        stephen.radin@weil.com |
| If to Defendants: | Dechert, LLP<br>Attn:  David H. Kistenbroker, Esq.<br>        Joni S. Jacobson, Esq.<br>35 West Wacker Drive, Suite 3400<br>Chicago, Illinois 60601<br>Telephone: (312) 646-5811<br>Email: david.kistenbroker@dechert.com<br>        joni.jacobson@dechert.com |

37.     Except as otherwise provided for in this Stipulation, the Parties shall bear their own costs.

Dated: Philadelphia, PA
          October 17, 2018

DONOVAN LITIGATION GROUP, LLC

Michael D. Donovan (PA ID: 51895)
15 St. Asaphs Road
Bala Cynwyd, PA 19004
Tel:  (610) 647-6067
Fax:  (610) 647-7215
mdonovan@donovanlitigationgroup.com

-and-

GAINEY McKENNA & EGLESTON
Thomas J. McKenna
Gregory M. Egleston
440 Park Avenue South, 5th Floor
New York, NY 10016
Tel: (212) 983-1300
Fax: (212) 983-0383
tjmckenna@gme-law.com
gegleston@gme-law.com

Counsel for Plaintiff

HANGLEY ARONCHICK SEGAL PUDLIN
& SCHILLER

William T. Hangley (PA ID: 03533)
Jonathan L. Cochran (PA ID: 314382)
One Logan Square, 27th Floor
Philadelphia, PA 19103
Tel:  (215) 568-6200
Fax:  (215) 568-0300
whangley@hangley.com

-and-

WEIL, GOTSHAL & MANGES LLP
Joseph S. Allerhand
Stephen A. Radin
Matthew S. Connors
Andrew E. Blumberg
767 Fifth Avenue
New York, NY 10153
Tel:  (212) 310-8000
Fax:  (212) 310-8007
joseph.allerhand@weil.com
stephen.radin@weil.com

Counsel for Nominal Defendant Walter
Investment Management Corp., n/k/a Ditech
Holding Corporation

DECHERT, LLP

Stuart T. Steinberg (PA ID: 82196)
Ellen L. Ratigan (PA ID: 319149)
Cira Center
2929 Arch Street
Philadelphia, PA 19104
Tel: (215) 994-4000
Fax: (215) 994-2222
ellen.ratigan@dechert.com

-and-

DONOVAN LITIGATION GROUP, LLC

_____

Michael D. Donovan (PA ID: 51895)
15 St. Asaphs Road
Bala Cynwyd, PA 19004
Tel:  (610) 647-6067
Fax:  (610) 647-7215
mdonovan@donovanlitigationgroup.com

-and-

GAINEY McKENNA & EGLESTON
Thomas J. McKenna
Gregory M. Egleston
440 Park Avenue South, 5th Floor
New York, NY 10016
Tel: (212) 983-1300
Fax: (212) 983-0383
tjmckenna@gme-law.com
gegleston@gme-law.com

Counsel for Plaintiff

HANGLEY ARONCHICK SEGAL PUDLIN
& SCHILLER

_____

William T. Hangley (PA ID: 03533)
Jonathan L. Cochran (PA ID: 314382)
One Logan Square, 27th Floor
Philadelphia, PA 19103
Tel:  (215) 568-6200
Fax:  (215) 568-0300
whangley@hangley.com

-and-

WEIL, GOTSHAL & MANGES LLP
Joseph S. Allerhand
Stephen A. Radin
Matthew S. Connors
Andrew E. Blumberg
767 Fifth Avenue
New York, NY 10153
Tel:  (212) 310-8000
Fax:  (212) 310-8007
joseph.allerhand@weil.com
stephen.radin@weil.com

Counsel for Nominal Defendant Walter
Investment Management Corp., n/k/a Ditech
Holding Corporation

DECHERT, LLP

_____

Stuart T. Steinberg (PA ID: 82196)
Ellen L. Ratigan (PA ID: 319149)
Cira Center
2929 Arch Street
Philadelphia, PA 19104
Tel: (215) 994-4000
Fax: (215) 994-2222
ellen.ratigan@dechert.com

-and-

David H. Kistenbroker
Joni S. Jacobsen
35 West Wacker Drive
Suite 3400
Chicago, IL 60601
Tel: (312) 646-5811
Fax: (312) 646-5858
david.kistenbroker@dechert.com

Counsel for Defendants George M. Awad,
Daniel G. Beltzman, Michael M. Bhaskaran,
Neal P. Goldman, William J. Meurer, Alvaro
G. de Molina, Vadim Perelman, and Anthony
N. Renzi

**Exhibit A**

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| MICHAEL E. VACEK, JR., derivatively on behalf of WALTER INVESTMENT MANAGEMENT CORP., | ) ) ) ) |
|  | ) |
| Plaintiff, | ) |
| v. | )   Case 2:17-cv-02820-JCJ |
|  | ) |
| GEORGE M. AWAD, DANIEL G. BELTZMAN, MICHAEL M. BHASKARAN, NEAL P. GOLDMAN, WILLIAM J. MEURER, ALVARO G. de MOLINA, VADIM PERELMAN, and ANTHONY N. RENZI, | ) ) ) ) ) ) |
|  | ) |
| Defendants, | ) |
| and | ) |
|  | ) |
| WALTER INVESTMENT MANAGEMENT CORP., | ) ) |
| Nominal Defendant. | ) |

### [PROPOSED] ORDER PRELIMINARILY APPROVING
### SETTLEMENT AND PROVIDING FOR NOTICE

WHEREAS, a derivative action is pending in this Court entitled *Vacek v. Awad, et al.*, Case

No. 2:17-CV-02820-JCJ (the "Action");

WHEREAS, (a) Plaintiff Michael E. Vacek, Jr. ("Plaintiff"), derivatively on behalf of

Walter Investment Management Corp., now known as Ditech Holding Corporation ("WIMC"), (b)

Nominal Defendant WIMC, and (c) Defendants George M. Awad, Daniel G. Beltzman, Michael

M. Bhaskaran, Neal P. Goldman, William J. Meurer, Alvaro G. de Molina, Vadim Perelman, and

Anthony N. Renzi ("Defendants," and together with Plaintiff and WIMC, the "Parties") have

entered into a Stipulation and Agreement of Settlement dated October 17, 2018 (the "Stipulation")

that provides for a complete dismissal of the Action on the terms and conditions set forth in the Stipulation, subject to approval of this Court (the "Settlement");

WHEREAS, Plaintiff and his counsel ("Plaintiff's Counsel") have made an application pursuant to Rule 23.1(c) of the Federal Rules of Civil Procedure for an order, among other things, (a) preliminarily approving the Settlement, (b) ordering notice of the Settlement be provided to stockholders of WIMC, (c) providing stockholders of WIMC the opportunity to object to the Settlement, and (d) scheduling the Settlement Hearing (defined below);

WHEREAS, the Court has read and considered the Stipulation and Plaintiff's motion for preliminary approval of the Settlement, and the papers filed and arguments made in connection with the motion;

WHEREAS, the Parties have consented to the entry of this Order; and

WHEREAS, unless otherwise defined herein, all terms with initial capitalization have the same meanings as they have in the Stipulation;

NOW THEREFORE, IT IS HEREBY ORDERED:

1.     **Preliminary Approval of the Settlement** – The Court preliminarily approves the Settlement on the terms and conditions stated in the Stipulation as fair, reasonable, and adequate to WIMC, subject to further consideration at the Settlement Hearing.

2.     **Settlement Hearing** – The Court will hold a settlement hearing (the "Settlement Hearing") on _____, 2018 at __:__ _.m. in Courtroom 17-A, James A. Byrne U.S. Courthouse, 601 Market Street, Philadelphia, PA 19106, pursuant to Rule 23.1(c) of the Federal Rules of Civil Procedure, for the following purposes:

(a)     to determine whether the Settlement on the terms and conditions stated in the Stipulation is fair, reasonable, and adequate to WIMC, and should be approved by the Court;

(b)      to determine whether a Judgment in the form attached as Exhibit C to the Stipulation (the "Judgment"), including the releases provided for in the Judgment, should be entered;

(c)      to hear and rule on any objections to the Settlement;

(d)      to determine whether the award of Attorneys' Fees and Litigation Expenses (defined in the Stipulation) to Plaintiff's Counsel provided for in the Stipulation should be approved by the Court; and

(e)      to consider any other matters as the Court deems appropriate.

3.      The Court may adjourn the Settlement Hearing or modify any of the dates stated in this Order without further notice to WIMC stockholders. The Court may approve the Settlement with modifications to which the Parties agree in the manner provided for in the Settlement without further notice to WIMC stockholders. The Court may enter the Judgment approving the Settlement whether or not the Court approves the award of Attorneys' Fees and Litigation Expenses to Plaintiff's Counsel provided for in the Stipulation.

4.      **Manner of Giving Notice** – Notice of the Settlement and the Settlement Hearing shall be given as follows:

(a)      Within ten (10) business days of the date of entry of this Order, WIMC shall (i) post a copy of the Stipulation, this Order, and the Notice (defined in the Stipulation and substantially in the form attached as Exhibit B to the Stipulation) on WIMC's website; (ii) cause a Current Report on Form 8-K to be filed with the Securities and Exchange Commission that attaches the Notice and provides a link to the Stipulation, this Order and the Notice posted on WIMC's website; and (iii) publish the Notice once in Investor's Business Daily and transmit it once over PR Newswire; and

(b)     WIMC's Counsel shall serve on Plaintiff's Counsel and Defendants' Counsel and file with the Court proof, by affidavit or declaration, of the giving of notice as required by this Order not later than seven (7) calendar days prior to the Settlement Hearing.

5.     **Approval of Form and Content of Notice** – The Court (a) approves the form and content of the Notice, and (b) finds that providing notice of the Settlement in the manner and form set forth in Paragraph 4 of this Order (i) constitutes the best notice practicable under the circumstances; (ii) is reasonably calculated, under the circumstances, to inform stockholders of WIMC concerning the pendency of the Action, the Settlement, the terms and conditions of the Settlement, including the Judgment and the releases provided for in the Judgment, the request by Plaintiff's Counsel for an award of Attorneys' Fees and Litigation Expenses, the right of WIMC stockholders to object to the Settlement, including the Attorneys' Fees and Litigation Expenses to Plaintiff's Counsel, and any other aspect of the Settlement, and the right of WIMC stockholders to appear at the Settlement Hearing; (iii) constitutes due, adequate, and sufficient notice to all persons and entities entitled to receive notice of the Settlement; and (iv) satisfies the requirements of Rule 23.1 of the Federal Rules of Civil Procedure and the United States Constitution (including the Due Process Clause), and all other applicable laws and rules.

6.     **Appearance and Objections at Settlement Hearing** – Any stockholder of WIMC may enter an appearance in the Action at his, her or its own expense, individually or through counsel of his, her, or its own choice, by filing a notice of appearance with the Clerk of the Court and delivering a notice of appearance to Plaintiff's Counsel, Defendants' Counsel, and WIMC's Counsel at the addresses set forth below, such that it is received no later than twenty-one (21) calendar days prior to the Settlement Hearing.

|  |  |
|---|---|
| **Plaintiff's Counsel** | **Defendants' Counsel** |
| Gainey McKenna & Egleston<br>Attn:  Thomas J. McKenna, Esq.<br>440 Park Avenue South, 5th Floor<br>New York, NY 10016 | Dechert, LLP<br>Attn: David H. Kistenbroker, Esq.<br>Joni S. Jacobsen, Esq.<br>35 West Wacker Drive<br>Suite 3400<br>Chicago, IL 60601 |
| **WIMC's Counsel** |  |
| Weil, Gotshal & Manges LLP<br>Attn: Joseph S. Allerhand, Esq.<br>Stephen A. Radin, Esq.<br>767 Fifth Avenue<br>New York, New York 10153 |  |

7.      Any stockholder of WIMC may file a written objection to the Settlement, the request by Plaintiff's Counsel for an award of Attorneys' Fees and Litigation Expenses, and/or any other aspect of the Settlement with the Clerk of the Court. Any such objection must also be mailed or delivered to Plaintiff's Counsel, Defendants' Counsel, and WIMC's Counsel at the addresses and in the manner and within the time period set forth in Paragraph 6 above.  By filing an objection, a person or entity shall be deemed to have submitted to the jurisdiction of the Court with respect to the Settlement and his, her, or its objection.

8.      An objection must satisfy all of the following conditions: (a) it must be submitted in a timely manner in accordance with the provisions of Paragraph 7 of this Order; (b) it must state the name, address, telephone number and email address of the objector, or, in the case of an entity, the name, address, telephone number, and email address of an authorized representative of the objector; (c) it must state the number of shares of WIMC common stock the objector owns and the dates of all purchases and sales of WIMC common stock by the objector; (d) it must be accompanied by adequate supporting documentation in the form of broker confirmation slips, broker account statements, a statement from a broker containing the transactional and holding information found in a broker confirmation slip or account statement, or other comparable

documentation; (e) it must state the basis for the objection and include copies of any papers, briefs, or other documents the objector relies on; (f) it must state whether the objector intends to appear at the Settlement Hearing, and, if so, the name(s) of any witness(es) the objector intends to call to testify and any exhibits the objector intends to introduce into evidence at the Settlement Hearing, and (g) it must be signed under penalty of perjury by the objector or an authorized representative of the objector. An objection shall not be effective unless it complies with all of these conditions. Plaintiff's Counsel, Defendants' Counsel, and WIMCs' Counsel may, as they deem appropriate, submit papers replying to objections no later than five (5) calendar days prior to the Settlement Hearing.

9.      Any stockholder of WIMC who does not comply with the requirements stated in Paragraphs 7 and 8 for objections to the Settlement waives and forfeits his, her or its right to object to the Settlement, the request by Plaintiff's Counsel for an award of Attorneys' Fees and Litigation Expenses, and any other aspect of the Settlement, and to appear at the Settlement Hearing, and shall forever be barred and enjoined from objecting to the Settlement, an award of Attorneys' Fees and Litigation Expenses, and/or any other aspect of the Settlement or from otherwise being heard concerning the Settlement, the request by Plaintiff's Counsel for an award of Attorneys' Fees and Litigation Expenses, and/or any other aspect of the Settlement in this and any other proceeding, and shall forever be barred and enjoined from directly or indirectly prosecuting, maintaining, intervening in, or participating in or claims subject to the Settlement, the Judgment, and the releases provided for by the Judgment.

10.      **Stay and Temporary Injunction** – The Court stays all proceedings in the Action other than proceedings necessary to carry out or enforce the terms and conditions of the Stipulation and this Order and bars and enjoins the Parties and WIMC stockholders from commencing or

prosecuting any and all of claims that are the subject of the Settlement, the Judgment, and the releases provided for by the Judgment.

11.    **Termination of Settlement** – If the Settlement is terminated as provided in the Stipulation, if the Settlement is not approved, if the Judgment is not entered or is entered but does not become Final (as defined in the Stipulation), or if the Effective Date fails to occur for any reason, this Order shall be vacated, rendered null and void, and be of no further force and effect, except as provided by the Stipulation, and this Order shall be without prejudice to the rights of the Parties, and the Parties shall revert to their respective positions in the Action as of July 2, 2018.

12.    **Supporting Papers** – Plaintiff, Defendants, and WIMC, as they deem appropriate, may file and serve opening papers in support of final approval of the Settlement and the award of Attorneys' Fees and Litigation Expenses to Plaintiff's Counsel not later than thirty-five (35) calendar days before the Settlement Hearing. Reply papers, if any, shall be filed and served not later than five (5) calendar days before the Settlement Hearing.

13.    **Retention of Jurisdiction** – The Court retains jurisdiction with respect to the proposed Settlement.

SO ORDERED this _____ day of _____, 2018.

_____
The Honorable J. Curtis Joyner
United States District Judge

Exhibit B

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| _____ | ) | |
| MICHAEL E. VACEK, JR., derivatively on behalf of WALTER INVESTMENT MANAGEMENT CORP., | )<br>)<br>) | |
|  | ) | |
| Plaintiff, | ) | |
| v. | ) | Case 2:17-cv-02820-JCJ |
|  | ) | |
| GEORGE M. AWAD, DANIEL G. BELTZMAN, MICHAEL M. BHASKARAN, NEAL P. GOLDMAN, WILLIAM J. MEURER, ALVARO G. de MOLINA, VADIM PERELMAN, and ANTHONY N. RENZI, | )<br>)<br>)<br>)<br>)<br>)<br>) | |
|  | ) | |
| Defendants, | ) | |
| and | ) | |
|  | ) | |
| WALTER INVESTMENT MANAGEMENT CORP., | )<br>) | |
| Nominal Defendant. | ) | |

**NOTICE OF PROPOSED SETTLEMENT OF DERIVATIVE ACTION AND**
**MOTION FOR AN AWARD OF ATTORNEYS' FEES AND LITIGATION EXPENSES**

**TO:  All stockholders of Walter Investment Management Corporation, now known as Ditech Holding Corporation ("WIMC")**

**PLEASE READ THIS NOTICE CAREFULLY.  YOUR RIGHTS MAY BE AFFECTED BY A DERIVATIVE LAWSUIT PENDING IN THIS COURT.**

YOU ARE HEREBY NOTIFIED, pursuant to Rule 23.1(c) of the Federal Rules of Civil Procedure and an Order of the United States District Court for the Eastern District of Pennsylvania (the "Court"), that the above-captioned litigation (the "Action") has been settled on the terms as set forth in a Stipulation and Agreement of Settlement dated October 17, 2018 (the "Stipulation") that provides for a complete dismissal of the Action on the terms and conditions set forth in the Stipulation, subject to approval of the Court (the "Settlement").

The Action asserts claims by Michael E. Vacek, Jr., a stockholder of WIMC ("Plaintiff") acting on behalf of WIMC, against WIMC's directors at the time the Action was filed ("Defendants"), alleging breach of fiduciary duties, unjust enrichment, and waste of corporate assets involving, among other things, the origination, underwriting, and appraisal of mortgage products, claims by, and settlements with, government agencies concerning the origination,

underwriting, and appraisal of mortgage products, and accounting and financial reporting related to default servicing activities, including, but not limited to, errors in financial statements and weaknesses in internal controls over financial reporting with respect to foreclosure tax liens, foreclosure related advances, processing and oversight of loans in bankruptcy, adjustments of reserves, and valuation allowances on deferred tax asset balances.

Pursuant to the terms of the Settlement, WIMC has adopted or will adopt corporate governance measures stated in the Stipulation.  The Stipulation provides, subject to Court approval, for a payment of Attorneys' Fees and Litigation Expenses (defined in the Stipulation) to Plaintiff's counsel in the amount of $257,500 or such smaller amount approved by the Court.

The Court will hold a settlement hearing (the "Settlement Hearing") on _____, 2018 at __:__ _.m., in Courtroom 17-A, James A. Byrne U.S. Courthouse, 601 Market Street, Philadelphia, PA 19106, to determine: (a) whether the Settlement on the terms and conditions stated in the Stipulation is fair, reasonable, and adequate to WIMC, and should be approved by the Court; (b) whether a Judgment in the form attached as Exhibit C to the Stipulation (the "Judgment"), including the releases provided for in the Judgment, should be entered; (c) whether the award of Attorneys' Fees and Litigation Expenses should be approved by the Court; and (d) any other matters that the Court deems appropriate.

**If you are a stockholder of WIMC, your rights will be affected if the Settlement is approved by the Court**.  A copy of the Settlement and the Court's Order scheduling the Settlement Hearing may be obtained on WIMC's website, www.ditechholding.com.

If you are a stockholder of WIMC and wish to object to the Settlement, the award of Attorneys' Fees and Litigation Expenses or any other aspect of the Settlement, you must submit a written objection to the Court, Plaintiff's counsel, Defendants' counsel, and WIMC's counsel in the manner and at the addresses stated in the Court's Order scheduling the Settlement Hearing. The written objection must be *received* no later than _____ __, 2018.

**Please do not contact the Court or the Clerk's office. All questions about this notice and the proposed Settlement should be directed to:**

> Gainey McKenna & Egleston
> Attn:  Thomas J. McKenna, Esq.
> 440 Park Avenue South, 5th Floor
> New York, NY 10016
> Telephone:  (212) 983-1300
> Email: tjmckenna@gme-law.com

> By Order of the Court

**Exhibit C**

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| MICHAEL E. VACEK, JR., derivatively on behalf of WALTER INVESTMENT MANAGEMENT CORP., <br><br>          Plaintiff, <br>    v. <br><br> GEORGE M. AWAD, DANIEL G. BELTZMAN, MICHAEL M. BHASKARAN, NEAL P. GOLDMAN, WILLIAM J. MEURER, ALVARO G. de MOLINA, VADIM PERELMAN, and ANTHONY N. RENZI, <br><br>          Defendants, <br>    and <br><br> WALTER INVESTMENT MANAGEMENT CORP., <br>          Nominal Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)  Case 2:17-cv-02820-JCJ<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## [PROPOSED] JUDGMENT AND ORDER
## APPROVING DERIVATIVE ACTION SETTLEMENT

WHEREAS, a derivative action is pending in this Court entitled *Vacek v. Awad, et al.*, Case No. 2:17-CV-02820-JCJ (the "Action");

WHEREAS, (a) Plaintiff Michael E. Vacek, Jr. ("Plaintiff"), derivatively on behalf of Walter Investment Management Corp., now known as Ditech Holding Corporation ("WIMC"), (b) Nominal Defendant WIMC, and (c) Defendants George M. Awad, Daniel G. Beltzman, Michael M. Bhaskaran, Neal P. Goldman, William J. Meurer, Alvaro G. de Molina, Vadim Perelman, and Anthony N. Renzi ("Defendants," and together with Plaintiff and WIMC, the "Parties") have entered into a Stipulation and Agreement of Settlement dated  October 17, 2018

(the "Stipulation") that provides for a complete dismissal of the Action on the terms and conditions set forth in the Stipulation, subject to approval of this Court (the "Settlement");

WHEREAS, by Order dated _____ __, 2018 (the "Preliminary Approval Order"), this Court, among other things, (a) preliminarily approved the Settlement; (b) ordered that notice of the Settlement be provided to stockholders of WIMC; (c) provided stockholders of WIMC the opportunity to object to the Settlement; and (d) scheduled a hearing (the "Settlement Hearing") for the following purposes:

(a)    to determine whether the Settlement on the terms and conditions stated in the Stipulation is fair, reasonable, and adequate to WIMC, and should be approved by the Court;

(b)    to determine whether a Judgment in the form attached as Exhibit C to the Stipulation (the "Judgment"), including the releases provided for in the Judgment, should be entered;

(c)    to hear and rule on any objections to the Settlement;

(d)    to determine whether the award of Attorneys' Fees and Litigation Expenses (defined in the Stipulation) to Plaintiff's Counsel provided for in the Stipulation should be approved by the Court; and

(e)    to consider any other matters as the Court deems appropriate.

WHEREAS, the Preliminary Approval Order ordered that, within ten (10) business days of the date of entry of the Preliminary Approval Order, WIMC shall (i) post a copy of the Stipulation, the Preliminary Approval Order, and the Notice of Proposed Settlement of Derivative Action and Motion for an Award of Attorneys' Fees and Litigation Expenses (the "Notice"), substantially in the form attached to the Stipulation as Exhibit B, on WIMC's website; (ii) cause a Current Report on Form 8-K to be filed with the Securities and Exchange

2

Commission that attaches the Notice and provides a link to the Stipulation, the Preliminary Approval Order and the Notice posted on WIMC's website; and (iii) publish the Notice once in Investor's Business Daily and transmit it once over PR Newswire;

WHEREAS, the Notice advised stockholders of WIMC of the date, time, place, and purposes of the Settlement Hearing and that any objections to the Settlement were required to be filed with the Court no later than _____ __, 2018;

WHEREAS, the Court conducted the Settlement Hearing on _____ __, 2018;

WHEREAS, the Court, having reviewed and considered the Stipulation, all arguments and written submissions regarding the Settlement, and the record in the Action, and good cause appearing therefor;

WHEREAS, the Parties have consented to the entry of this Judgment; and

WHEREAS, unless otherwise defined herein, all terms with initial capitalization have the same meanings as they have in the Stipulation;

NOW THEREFORE, after due deliberation, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED as follows:

1.      **Jurisdiction** – The Court has jurisdiction over the subject matter of the Action, and all matters relating to the Settlement, as well as personal jurisdiction over the Parties.

2.      **Incorporation of Settlement Documents** – This Judgment incorporates and makes a part hereof: (a) the Stipulation filed with the Court on _____ __, 2018; and (b) the Notice filed with the Court on _____ __, 2018.

3.      **Notice** – The Court finds that the notice to stockholders of WIMC provided for in the Preliminary Approval Order: (a) was implemented in accordance with the Preliminary Approval Order, and (b) (i) constitutes the best notice practicable under the circumstances; (ii)

was reasonably calculated, under the circumstances, to inform stockholders of WIMC concerning the pendency of the Action, the Settlement, the terms and conditions of the Settlement, including this Judgment and the releases provided for in this Judgment, the request by Plaintiff's Counsel for an award of Attorneys' Fees and Litigation Expenses, the right of WIMC stockholders to object to the Settlement, including the award of Attorneys' Fees and Litigation Expenses to Plaintiff's Counsel, and any other aspect of the Settlement, and the right of WIMC stockholders to appear at the Settlement Hearing; (iii) constitutes due, adequate, and sufficient notice to all persons and entities entitled to receive notice of the Settlement; and (iv) satisfies the requirements of Rule 23.1 of the Federal Rules of Civil Procedure and the United States Constitution (including the Due Process Clause), and all other applicable laws and rules.

4.      [**Objections** – The Court has considered each of the objections to the Settlement, including the objections submitted by [list objectors].  The Court finds and concludes that each of the objections is with/without merit, and each objection is hereby sustained/overruled.]

5.      **Final Settlement Approval and Dismissal of Claims** – In light of the benefits to WIMC, the complexity, expense, and possible duration of further litigation, the risks of establishing liability and damages and the costs of continued litigation, the Court, pursuant to and in accordance with Rule 23.1 of the Federal Rules of Civil Procedure, hereby fully and finally approves the Settlement as set forth in the Stipulation in all respects, including, without limitation, the releases provided for in the Settlement and in this Judgment, and the dismissal with prejudice of the claims asserted against Defendants and Defendants' Releasees (defined below), and finds that the Settlement is in all respects fair, reasonable, and adequate and in the best interests of WIMC. The Court further finds the Settlement as set forth in the Stipulation is

4

the result of arm's-length negotiations between experienced counsel representing the interests of Plaintiff, Defendants, and WIMC. The Parties are directed to implement, perform and consummate the Settlement in accordance with the terms and provisions in the Stipulation.

6.      The Action and all of the claims asserted against Defendants in the Action are hereby dismissed in their entirety with prejudice. The Parties shall bear their own costs and expenses except as otherwise provided in the Stipulation.

7.      **Binding Effect of Judgment** – The terms of the Settlement, as stated in the Stipulation, and of this Judgment, including the releases provided for in this Judgment, shall be forever binding on Defendants, Plaintiff and WIMC.

8.      **Releases** – The releases set forth in paragraphs 4 and 5 of the Stipulation, together with the definitions contained in Paragraph 1 of the Stipulation, are expressly incorporated herein in all respects. The Releases are effective as of the Effective Date.

9.      As used in this Judgment and the releases in Paragraphs 4 and 5 of the Stipulation and below, the following terms shall have the meanings set forth below.

(a)      "Defendants' Counsel" means Dechert, LLP.

(b)      "Defendants' Releasees" means Defendants, Defendants' Counsel, and each of their present and former predecessors, successors, affiliates, employees, general partners, attorneys, accountants, auditors, bankers, advisors, agents, assigns, assignees, indemnifiers, insurers, reinsurers, heirs, estates, executors, trustees, administrators, or trusts, in their capacities as such.

(c)      "Effective Date" means the first business day after all of the conditions specified in ¶ 15 of the Stipulation have occurred or been waived.

(d)     "Excluded Claims" means (i) claims asserted in the class action pending in the United States District Court for the Eastern District of Pennsylvania styled *Elkin v. Walter Investment Management Corp., et al.*, Class Action No. 2:17-cv-02025-JCJ, (ii) claims by Defendants or other Defendants' Releasees or WIMC or other WIMC's Releasees against his, her, its, or their insurers, and (iii) claims relating to the enforcement of this Stipulation and the Settlement.

(e)     "Person" means any individual, corporation, professional corporation, limited liability company, partnership, limited partnership, limited liability partnership, association, joint stock company, estate, legal representative, trust, unincorporated association, government or any political subdivision or agency thereof, or any other business or legal entity.

(f)     "Plaintiff's Counsel" means the Donovan Litigation Group, LLC and Gainey McKenna & Egleston.

(g)     "Plaintiff's Releasees" means Plaintiff, Plaintiff's Counsel, and their respective present and former predecessors, successors, affiliates, employees, general partners, managers, attorneys, accountants, auditors, bankers, advisors, agents, assigns, assignees, indemnifiers, insurers, reinsurers, heirs, estates, executors, trustees, administrators, or trusts, in their capacities as such.

(h)     "Released Claims" means Released Defendants' Claims, Released WIMC Claims, and Released Plaintiff's Claims.

(i)     "Released Defendants' Claims" means all claims and causes of action of every nature and description, whether known claims or Unknown Claims, whether arising under federal, state, common or foreign law, that arise out of or relate in any way to the institution,

prosecution, or settlement of the claims asserted in the Action. Released Defendants' Claims do not include the Excluded Claims.

(j)   "Released Plaintiff's Claims" means all claims and causes of action of every nature and description, whether known claims or Unknown Claims, whether arising under federal, state, common or foreign law, that Plaintiff has asserted in the Action or could have asserted in the Action or other action in any forum arising out of or based on the allegations, transactions, facts, claims, matters or occurrences involved, set forth, or referred to in the Action, concerning, among other things, the origination, underwriting, and appraisal of mortgage products, claims by, and settlements with, government agencies concerning the origination, underwriting, and appraisal of mortgage products, and accounting and financial reporting related to default servicing activities, including, but not limited to, errors in financial statements and weaknesses in internal controls over financial reporting with respect to foreclosure tax liens, foreclosure related advances, processing and oversight of loans in bankruptcy status, adjustments of reserves, and valuation allowances on deferred tax asset balances. Released Plaintiff's Claims do not include the Excluded Claims.

(k)   "Released WIMC Claims" means all claims and causes of action of every nature and description, whether known claims or Unknown Claims, whether arising under federal, state, common or foreign law, that arise out of or relate in any way to the subject matter of the Released Plaintiff's Claims and the Released Defendants' claims. Released WIMC Claims do not include the Excluded Claims.

(l)   "Releasee(s)" means Plaintiff's Releasees, Defendants' Releasees, and WIMC's Releasees.

7

(m)      "Unknown Claims" means any Released Claims that Plaintiff, WIMC, or Defendants or any of the Defendants does not know or suspect to exist in his or its favor at the time of the release of the Released Claims, which, if known by him or it, might have affected his or its decision(s) with respect to the Settlement. With respect to any and all Released Claims, the Parties stipulate and agree that, upon the Effective Date, Plaintiff, WIMC, and Defendants shall be deemed to have waived, and by operation of the Judgment shall have, to the fullest extent permitted by law, waived and relinquished any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States, or principle of common law or foreign law, which is similar, comparable, or equivalent to California Civil Code §1542, which provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

Plaintiff, WIMC, and Defendants acknowledge that Plaintiff, WIMC, or Defendants may hereafter discover facts, legal theories, or authorities in addition to or different from those which he or they now knows or believes to be true with respect to the subject matter of the Released Claims, but that Plaintiff, WIMC, and Defendants intend to, and upon the Effective Date, by operation of the Judgment, shall be deemed to have, and shall have, settled and released, fully, finally, and forever, the Released Claims, known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden, which have existed, now exist, or will exist, upon any theory of law or equity, including, but not limited to, conduct which is negligent, reckless, intentional, with or without malice, or a breach of any duty, law, or rule, without regard to the subsequent discovery or existence of such different or additional facts, legal theories, or authorities. Plaintiff, WIMC, and Defendants acknowledge that the inclusion of "Unknown Claims" in Released Plaintiff's Claims, Released Defendants' Claims, and Released

8

WIMC Claims was separately bargained for and was a material and essential element of this Stipulation and the Settlement.

(n)    "WIMC's Counsel" means Hangley Aronchick Segal Pudlin & Schiller and Weil, Gotshal & Manges LLP.

(o)    "WIMC's Releasees" means WIMC, WIMC's Counsel, and their respective present and former predecessors, successors, affiliates, employees, general partners, managers, attorneys, accountants, auditors, bankers, advisors, agents, assigns, assignees, indemnifiers, insurers, reinsurers, heirs, estates, executors, trustees, administrators, or trusts, in their capacities as such.

10.    This Court orders that:

(a)    Without further action by anyone, upon the Effective Date, Plaintiff, derivatively on behalf of WIMC, and Plaintiff's and WIMC's respective heirs, executors, administrators, predecessors, successors, and assigns in their capacities as such, shall be deemed to have, and by operation of law and of the Judgment shall have, fully, finally and forever compromised, settled, released, dismissed, resolved, relinquished, waived and discharged the Released Plaintiff's Claims against Defendants' Releasees and WIMC's Releasees, and shall forever be barred and enjoined from directly or indirectly prosecuting, maintaining, intervening in, or participating in, individually, derivatively, as a class member or otherwise, the Released Plaintiff's Claims against Defendants' Releasees and WIMC's Releasees.  This release shall not apply to the Excluded Claims.

(b)    Without further action by anyone, upon the Effective Date, Defendants and WIMC, on behalf of themselves and their respective heirs, executors, administrators, predecessors, successors, and assigns in their capacities as such, shall be deemed to have, and by

9

operation of law and of the Judgment shall have, fully, finally and forever compromised, settled, released, dismissed, resolved, relinquished, waived and discharged the Released Defendants' Claims and the Released WIMC Claims against Plaintiff and Plaintiff's Releasees, and shall forever be barred and enjoined from directly or indirectly prosecuting, maintaining, intervening in, or participating in, individually, derivatively, as a class member or otherwise, the Released Defendants' Claims and the Released WIMC Claims against any of the Plaintiff's Releasees. This release shall not apply to the Excluded Claims.

(c)    Notwithstanding paragraphs 10(a) and (b) above, nothing in this Judgment shall bar any action by any of the Parties to enforce or effectuate the terms of the Stipulation, the Settlement, or this Judgment.

11.    **Use of this Judgment** – This Judgment, the Stipulation, and the Settlement, whether or not the Effective Date occurs, and any discussions, negotiations, arguments made during negotiations, acts performed, communications, drafts, or agreements relating to this Judgment, the Stipulation, the Settlement, and any matter in connection with such discussions, negotiations, arguments made during negotiations, acts performed, communications, drafts, documents, or agreements, shall not be offered or received against or to the prejudice of Plaintiff, Defendants, WIMC or any Releasee for any purpose other than in an action to enforce the terms of this Judgment, the Stipulation, and the Settlement, and in particular:

(a)    Do not constitute, and shall not be described as, construed as, or otherwise offered or received against any of the Defendants, WIMC or any of Defendants' Releasees or WIMC's Releasees as evidence of (or deemed to be evidence of) any admission, concession, or presumption by any of the Defendants, Defendants' Releasees, WIMC, or WIMC's Releasees with respect to (i) the truth of any allegation or claim in the Action or in any litigation or

10

proceeding in any other forum; (ii) the deficiency of any defense that has been or could have been asserted in the Action or in any other litigation or proceeding in any other forum; (iii) any liability, damages, negligence, fault, or other wrongdoing of any kind by any of Defendants, WIMC or any of Defendants' Releasees or WIMC's Releasees; or (iv) referred to for any other reason against or to the prejudice of any of the Defendants, Defendants' Releasees, WIMC, or WIMC's Releasees, in this or any other civil, criminal, or administrative action or proceeding.

(b)     Do not constitute, and shall not be described as, construed as, or otherwise offered or received against Plaintiff or Plaintiff's Releasees as evidence of (or be deemed evidence of) any admission, concession, or presumption by Plaintiff or Plaintiff's Releasees of any infirmity in any claims in the Action or in any litigation or proceeding in any other forum or in any way referred to for any other reason against or to the prejudice of Plaintiff and Plaintiff's Releasees in this or any other civil, criminal, or administrative action or proceeding.

(c)     Do not constitute, and shall not be described as, construed as, or otherwise offered or received against Plaintiff, Defendants, WIMC or Releasees as evidence of (or deemed to be evidence of) any admission, concession, or presumption that the Settlement consideration represents the amount that could be or would have been recovered after trial and appeals in the Action or that the amount that could be or would have been recovered after trial and appeals in the Action would or would not have exceeded the Settlement consideration.

12.     **<u>Retention of Jurisdiction</u>** – Without affecting the finality of this Judgment in any way, this Court retains continuing and exclusive jurisdiction over: (a) the Parties for purposes of the administration, interpretation, implementation and enforcement of the Settlement; (b) any award to Plaintiff's Counsel of Attorneys' Fees and Litigation Expenses; and (c) all other related matters.

13.    **Attorneys' Fees and Litigation Expenses** – Plaintiff's Counsel in the Action are hereby awarded Attorneys' Fees and Litigation Expenses in the amount of $_____. The Court finds that this amount is fair and reasonable under the facts and circumstances of this Action. Payment of such award of Attorneys' Fees and Litigation Expenses shall be made in accordance with the provisions of the Stipulation.  Any appeal of this portion of the Judgment shall in no way disturb, affect or delay the finality of this Judgment or the Effective Date of the Settlement and shall be considered as a separate part of this Judgment as provided for in the Stipulation.

14.    **Modification of the Agreement of Settlement** – Without further approval from the Court, Plaintiff, Defendants, and WIMC are hereby authorized to agree to and adopt amendments or modifications of the Settlement as stated in the Stipulation that are not materially inconsistent with this Judgment. Without further order of the Court, Plaintiff, Defendants, and WIMC may agree to reasonable extensions of time to carry out any provisions of the Settlement.

15.    **Termination of Settlement** – If the Settlement is terminated as provided for in the Stipulation or the Effective Date of the Settlement does not occur for any other reason, this Judgment shall be vacated, rendered null and void and be of no further force and effect, except as stated in the Stipulation, and this Judgment shall be without prejudice to the rights of the Parties, and the Parties shall revert to their respective positions in the Action as of July 2, 2018.

16.    **Entry of Final Judgment** – There is no just reason to delay the entry of this Judgment as a final judgment in this Action. Accordingly, the Clerk of the Court is expressly directed to immediately enter this final Judgment in this Action.

SO ORDERED this _____ day of _____, 2018.

_____
The Honorable J. Curtis Joyner
United States District Judge

# EXHIBIT 2

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| MICHAEL E. VACEK, JR., derivatively on behalf of WALTER INVESTMENT MANAGEMENT CORP., now known as Ditech Holding Corporation, | ) ) ) ) ) | |
| Plaintiff, | ) | Case 2:17-cv-02820-JCJ |
| v. | ) ) | |
| GEORGE M. AWAD, DANIEL G. BELTZMAN, MICHAEL M. BHASKARAN, NEAL P. GOLDMAN, WILLIAM J. MEURER, ALVARO G. de MOLINA, VADIM PERELMAN, and ANTHONY N. RENZI, | ) ) ) ) ) ) ) | |
| Defendants, | ) ) | |
| And | ) ) | |
| WALTER INVESTMENT MANAGEMENT CORP., now known as Ditech Holding Corporation, | ) ) ) | |
| Nominal Defendant. | ) | |

**DECLARATION OF THOMAS J. McKENNA IN SUPPORT OF PLAINTIFF'S MOTION FOR AN AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF CASE EXPENSES AND SERVICE AWARD TO THE NAMED PLAINTIFF**

I, Thomas J. McKenna, declare as follows:

1.      I am a member of Gainey McKenna & Egleston.

2.      I submit this declaration based on my personal knowledge in support of Plaintiff's request for an award of Attorneys' Fees, Reimbursement of Case Expenses and a service award to the Named Plaintiff in the above-referenced action ("the Action").

3.      The detailed history of the Action is set forth in the accompanying Declaration of Thomas J. McKenna in Support of Final Approval ("McKenna Fact Decl.") and will not be

repeated here. In brief, however, my firm served as lead counsel for the Plaintiff and participated in all facets of the Action.

4.      During the period from the inception of the matter through the present, attorneys and paralegals representing my firm performed 328.50 hours of work in connection with the litigation for which we seek payment. Based upon current hourly rates, the total lodestar value of this time is $217,822.50.  The below chart indicates the partners, attorneys, and paralegals who worked on this litigation, their current hourly rates and their respective lodestar values.

| Professional | Rate | Hours | Lodestar |
|---|---|---|---|
| Thomas J. McKenna (P) | $775.00 | 115.90 | $ 89,822.50 |
| Gregory M. Egleston (P) | $750.00 | 117.00 | $ 87,750.00 |
| Robert Schupler (A) | $575.00 | 49.50 | $ 28,462.50 |
| Noemi Rivera (PL) | $275.00 | 10.50 | $  2,887.50 |
| Elaine Rosa (PL) | $250.00 | 35.60 | $  8,900.00 |
| **TOTAL** | | **328.50** | **$ 217,822.50** |

* Partner (P), Attorney (A), Paralegal (PL)

5.      The hourly rates utilized by my firm in computing its lodestar are at or below its usual and customary hourly rates charged for other similar matters. No upward adjustment in billing rates was made, notwithstanding the contingency and risk of the matters involved, the opposition encountered, the preclusion of other employment, the delay in payment, or other factors present in the case which would justify a higher rates of compensation.

6.      The time and services provided by my firm for which fees are sought in the petition are reflected in contemporaneously maintained records of my firm. All of the services performed by my firm in connection with this litigation were reasonable and necessary in the prosecution of this case. No time is included in this fee petition for work in connection with the fee and expense application or accompanying documents, including this declaration.

2

7.      My firm has expended or incurred costs and expenses totaling $1,s056.68 in connection with the prosecution of this litigation. All of the expenses incurred by my firm for which reimbursement is sought were reasonable and necessary in the prosecution of this case. The below chart details the expenses incurred by my firm.

| Categories: | Amount |
|---|---|
| Photocopying/Reproduction | $266.60 |
| Telephone/Facsimile Charges | $14.36 |
| Postage/Notice Costs | $175.50 |
| Computer Research (Westlaw, Pacer, etc.) | $95.22 |
| Court Filing Fees | $5.00 |
| Travel & Hotel | $500.00[1] |
| **TOTAL EXPENSES:** | **$1,056.68** |

8.      The expenses paid by my firm for which reimbursement is sought are reflected in the books and records of my firm.  These books and records are prepared from checks, bills and expense vouchers, which are regularly kept and maintained by my firm and accurately reflect the expenses incurred.

9.      Attached hereto as Exhibit A is my firm's resume.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on this 27th day of December, 2018.

/s/*Thomas J. McKenna*
Thomas J. McKenna

---

[1]      Estimated for costs in connection with appearance at Final Settlement Hearing on January 31, 2019.

3

# *EXHIBIT A*

# *Gainey McKenna & Egleston*

### *Attorneys at Law*
*www.gme-law.com*

| | |
|---|---|
| 440 PARK AVENUE SOUTH | 95 ROUTE 17 SOUTH |
| 5TH  FLOOR | SUITE 310 |
| NEW YORK, NY 10016 | PARAMUS, NJ 07652 |
| TEL: (212) 983-1300 | TEL: (201) 225-2001 |
| FAX: (212) 983-0383 | FAX: (201) 225-9002 |

## *FIRM RÉSUMÉ*

## I.   <u>Introduction</u>

Gainey McKenna & Egleston (the "Firm") is based in New York and New Jersey and litigates throughout the country in both state and federal court.  Members of the Firm have been engaged in the practice of law for almost thirty years.  The Firm concentrates its practice on civil litigation of all types and especially in class action litigation on behalf of investors, consumers and small businesses.

The Firm has broad experience in the following areas: Employee Retirement Income Security Act of 1974 ("ERISA"), securities, shareholder derivative, consumer fraud and other types of complex commercial and tort litigation.  The Firm also has experience in federal and state minimum wage laws, overtime laws or other employment laws regulating the payment of wages and benefits to employees.

Many of the Firm's cases involve multi-district litigation.  The Firm is experienced in, and thoroughly familiar with, all aspects of complex litigation, including the underlying substantive law, the procedures recommended in the Manual for Complex Litigation and the substance and procedure of class certification.

The Firm's approach to each case is the same.  It presents an aggressive position for its clients and uses all available resources necessary to achieve the best possible outcome for its clients. In short, the Firm works hard to produce victories for its clients and takes pride in providing a high level of legal service.  It also develops a strong working relationship with its clients and will do whatever it takes within the bounds of the law to get results.

The Firm was formed with the goal of combining the experience gained through practicing law at large firms with the closeness, flexibility and attention to detail that characterize many smaller firms.  In essence, the Firm has designed itself to be able to handle both large and small matters, offering what we believe our clients want most: quality legal work with an emphasis on communication.

We also represent plaintiffs and defendants in a variety of complex civil and commercial litigations, including real estate and business disputes, breach of contract and commercial disputes, employment cases (discrimination, harassment, wrongful termination), insurance coverage disputes, professional malpractice (accounting, legal and medical), products liability, and personal injury lawsuits.

The Firm recently made law in the field of ERISA with its successful prosecution of an appeal to the United States Supreme Court wherein the Court struck down a "presumption of prudence" that lower courts had been using to the protect the actions of fiduciaries of employer retirement plans who imprudently invested in company stock for the retirement plan.  In the case, *Fifth Third Bancorp v. Dudenhoeffer*, 134 S. Ct. 2459 (2014), the Firm argued with co-counsel that the presumption was illegitimate and had no place in the ERISA statutory framework.  The Supreme Court agreed.

We have also been retained strictly as trial counsel in many matters.  Members of the Firm are admitted to practice in all the courts of the State of New York, New Jersey, Pennsylvania, and Connecticut as well as in the United States Supreme Court, the United States District Court for the Southern District of New York, the United States District Court for the Eastern District of New York, the United States District Court of New Jersey, United States District Court for the Eastern District of Pennsylvania, the United States District Court of Connecticut, the United States Court of Appeals for the Second Circuit, Fifth Circuit, Sixth Circuit, Eighth Circuit, Ninth Circuit and Eleventh Circuit.  Members of the firm have also been admitted *pro hac* vice in a number of other state and federal jurisdictions.

## II.   Recent Achievements

Below are just some of the cases the attorneys at the Firm have successfully prosecuted by producing a recovery for their clients and employees of 401(k) plans:

- *Dudenhoeffer, et al. v. Fifth Third Bancorp., et al.*, Civil Action No.: 08-cv-538 (S.D. Ohio) (Co-Lead Counsel in ERISA Class Action) (Recovery of $6,000,000 in cash and structural relief to the plan);

- *Borboa, et al. v. Thoedore L. Chandler, et al.*, Case No.3:13-cv-844-JAG (E.D. Va.) (counsel in ERISA Class Action) (Recovery of $5 million for the Company's 401(k) plan);

- *In re Wilmington Trust Corp. ERISA Litig.*, Civil Action No.: 10cv-001114-SLR (D. Del.) (Co-Lead Counsel in ERISA Class Action) (Recovery of $3 million for the Company's 401(k) plan);

2

- *In re Schering-Plough Corp. Enhance ERISA Litig.*, Civil Action No.: 08-cv-1432 (D.N.J.) (Co-Lead Counsel in ERISA Class Action) (recovery of $12.25 million for the company's 401(k) plan);

- *In re Popular Inc. ERISA Litig.*, Master File No.: 09-cv-01552-ADC (D. P.R.) (Co-Lead Counsel in ERISA Class Action) (recovery $8.2 million for the company's 401(k) plan);

- *Salvato v. Zale Corp., et al.*, Civil Action No.: 06-cv-1124 (N.D. Tex.) (Co-Lead Counsel in ERISA Class Action) (recovery of $7 million for the company's 401(k) plan);

- *In re General Growth Properties, Inc. ERISA Litig.*, Master File No.: 08-cv-6680 (N.D. Ill.) (Co-Class Counsel for the Settlement Class in ERISA class action) (recovery of $5.75 million for the company's 401(k) plan);

- *In re Comcast Corp. ERISA Litig.*, Master File No.: 08-cv-00773-HB (E.D. Pa.) (recovery of $5 million for the company's 401(k) plan);

- *Morrison v. MoneyGram Int'l, Inc., et al.*, Civil Action No.: 08-cv-1121 (D. Minn.) (Lead Counsel in ERISA Class Action) (recovery of $4.5 million for the company's 401(k) plan);

- *Jennifer Taylor v. Monster Worldwide, Inc.*, Civil Action No.: 06-cv-8322 (AKH) (S.D.N.Y.) (Co-Lead Counsel in ERISA Class Action) (recovery of $4.25 million for the company's 401(k) plan);

- *Boyd, et al. v. Coventry Health, et al.*, Civil Action No.: 09-cv-2661 (D. Md.) (Co-Lead Counsel in ERISA class action) (recovery $3.6 million for the company's 401(k) plan);

- *Shane v. Kenneth E. Edge, et al.*, Civil Action No.: 10-cv-50089 (N.D. Il.) (Co-Lead Counsel in ERISA Class Action) (recovery of $3.35 million for the company's 401(k) plan);

- *Thurman v. HCA, Inc., et al.*, Civil Action No.: 05-cv-01001 (M.D. Tenn.) (Co-Lead Counsel in ERISA Class Action) (recovery of $3 million for the company's 401(k) plan);

- *Bagley, et al., v. KB Home, et al.*, Civil Action No.: 07-cv-1754 (C.D. Cal.) (Co-Lead Counsel in ERISA Class Action) (recovery $3 million for the company's 401(k) plan);

- *Maxwell v. Radioshack Corp., et al.*, Civil Action No.: 06-cv-499 (N.D. Tex.) (Co-Lead Counsel in ERISA class action) (recovery of $2.4 million for the company's 401(k) plan);

- *Simeon v. Affiliated Computer Services, Inc. et al.*, 06-cv-1592 (N.D. Tex.) (Co-Lead Counsel in ERISA Class Action) (recovery of $1.5 million for the company's 401(k) plan);

- *Herrera v. Wyeth, et al.*, Civil Action No.: 08-cv-04688 (RJS) (S.D.N.Y.) (recovery of $2 million for the company's 401(k) plan);

- *Douglas J. Coppess v. Healthways, Inc.*, Civil Action No.: 10-cv-00109 (M.D. Tenn.) (Lead Counsel in ERISA Class Action) (recovery of $1.25 million for the company's 401(k) plan);

- *In re Int'l Game Tech. ERISA Litig.*, Civil Action No.: 09-cv-00584 (D. Nev.) (Co-Lead Counsel in ERISA class action) (recovery of $500,000 for the company's 401(k) plan);

- *Jennifer Jones v. NovaStar Fin., Inc.*, Civil Action No.: 08-cv-490 (NKL) (W.D. Mo.) (Co-Lead Counsel in ERISA Class Action) (recovery of $925,000 for the company's 401(k) plan);

- *Page v. Impac Mortgage Holdings, Inc., et al.*, Civil Action No.: 07-cv-1447 (C.D. Cal.) (Co-Lead Counsel in ERISA Class Action) (recovery of $300,000 for the company's 401(k) plan);

- *In re MBNA Corp. ERISA Litig.*, Master Docket No.: 05-cv-429 (D. Del.) (Class Counsel in ERISA Class Action) (recovery of $4.5 million for the company's 401(k) plan); and

- *In re Guidant Corp. ERIS Litig.*, Civil Action No.: 05-cv-1009 (S.D. Ind.) (recovery of $7 million for the company's 401(k) plan).

4

- *In re ING Groep, N.V. ERISA Litig.*, Master File No.: 09-cv-00400 (N.D. Ga.) (Co-Counsel in ERISA Class Action) (recovery of $3.5 million for the company's 401(k) plan);

## III.   The Firm Serving As "Lead," "Co-Lead" or "Counsel"

The Firm has significant experience in prosecuting complex cases, including class actions under ERISA involving breach of fiduciary duty, consumer class actions, securities fraud class actions, derivative cases and transactional matters.  By way of example, the following are some of the other cases the Firm has been involved in serving as "Lead or "Co-Lead" Counsel:

### Securities Class Actions

- *In re VimpelCom Ltd. Securities Litig.*, Civil Action: No.: 1:15-cv-08672 (ALC) (S.D.N.Y.) (Lead Counsel in securities fraud Class action);

- *Fogel v. Vega, et al.*, Civil Action: 1:13-cv-02282-KPF (S.D.N.Y.) (Lead Counsel in securities fraud Class Action against Wal-Mart de Mexico SAB de CV, Ernesto Vega, Scot Rank, and Wal-Mart Stores, Inc.);

- *Floridia et al v. Dolan, et al.*, Civil Action No.: 14-cv-03011 (D. Minn.) (Lead Counsel in securities fraud Class Action);

- *In re Netsol Technologies, Inc.*, Civil Action No.: 14-cv-05787 (C.D. Cal.) (Lead Counsel in securities fraud Class Action);

- *Singh v. Tri-Tech Holdings, Inc.*, Civil Action No.: 13-cv-09031 (Co-Lead Counsel in securities fraud Class Action);

- *Jason v. Junfeng Chen, et al.*, Civil Action No.: 12-cv-1041 (S.D.N.Y) (Lead Counsel in securities fraud Class action);

- *Anderson v. Peregrine Pharmaceuticals, Inc., et al.*, Civil Action No.: 12-cv-01647 PSG (FMOx) (C.D. Cal.) (Lead Counsel in securities fraud Class Action);

- *Araj v. JML Portfolio Mgmt. Ltd., et al.*, Civil Action No.: 09-cv-00903 (M.D. Fla.) (Co-Lead Counsel in securities fraud Class Action);

- *Hanson et al, v. Frazer, LLP., et al.*, Civil Action No.: 12-cv-3166 (S.D.N.Y.) (Lead Counsel in securities fraud Class Action); and

- *Labit v. Glenn Zagoren, et al.,* 03-cv-2298; (S.D.N.Y.) (Co-Lead Counsel in securities fraud Class Action).

5

**ERISA Class Actions**

- *Dudenhoeffer v. Fifth Third Bancorp, et al.*, Civil Action No.: 08-cv-538 (S.D. Ohio) (Co-Lead Counsel in ERISA Class Action and appointed by the Court as Class Counsel for the Settlement Class);

- *Sheedy v. Adventist Health System Sunbelt Healthcare Corporation et al.*, 6:16-cv-01893-GAP-GJK (M.D. Fla.) (Lead Counsel in ERISA Class Action);

- *Shane, et al. v. Kenneth E. Edge, et al.*, Civil Action No.: 3:10-cv-50089 9N.D. Ill.) (Co-Lead Counsel in ERISA Class Action) (Recovery of $3.35 million for the Company's 401(k) plan);

- *In re Wilmington Trust Corp. ERISA Litig.*, Civil Action No.: 10cv-001114-SLR (D. Del.) (Co-Lead Counsel in ERISA Class Action) (Recovery of $3 million for the Company's 401(k) plan);

- *Fulmer v. Scott Klein, et al.*, Civil Action: 09-cv-2354-N (N.D. Tex.) (Lead Counsel in ERISA Class Action);

- *In re Pilgrims Pride Stock Investment Plan ERISA Litig.*, Civil Action: 08-cv-000472-TJW-CE (E.D. Tex.) (Co-Lead Counsel in ERISA Class Action);

- *In re UBS ERISA Litig.*, C.A. No.: 08-cv-6696 (S.D.N.Y) (Co-Lead Counsel in ERISA Class Action);

- *Rinehart v. Lehman Brothers Holdings Inc., et al.*, Civil Action No.: 08-cv-5598 (S.D.N.Y.) (Co-Lead Counsel in ERISA Class Action);

- *Usenko v. Sunedison Semiconductor, LLC., et al.*, Civil Action No.: 17-cv-2227 (E.D. Mo.) (*de facto* Co-Lead Counsel in ERISA Class Action);

- *Harris and Ramos v. Amgen, Inc., et al.*, Civil Action No.: 07-cv-5442 (C.D. Cal.) (Co-Lead Counsel in ERISA Class Action);

- *Russell v. Harman Int'l Industries Inc., et al.*, Civil Action No.: 07-cv-02212 (D. of Columbia) (*de facto* Lead Counsel in ERISA Class Action);

- *Mellot v. Choicepoint, Inc., et al.*, Civil Action No.: 05-cv-1340 (N.D. Ga.) (Co-Lead Counsel in ERISA Class Action);

- *In re Eastman Kodak ERISA Litig.*, MASTER FILE NO. 6:12-CV-06051-DGL (W.D.N.Y.) (Co-Counsel in ERISA Class Action); and

- *Sheedy v. Adventist Health System Sunbelt Healthcare Corporation., et al.,* Civil Action No.: 6:16-cv-01893-GAP (M.D. Fl.) (Interim Lead Counsel in ERISA Action);

**<u>Derivative Actions</u>**

- *Kelly Nicole Desmond-Newman v. Saagar Govil, et al.,* Civil Action No.: 18-cv-03992 (E.D. NY) (Interim Lead Counsel in Derivative Action);

- *Adele J. Barke v. Mike Ferguson, et al.,* Index No.: 652164/2018 (N.Y. Sup. Ct.) (Interim Lead Counsel in Derivative Action);

- *Mina Pastagia, et al., v. Charles J. Philippin, et al.,* Civil Action No.: 2018-CH-07432 (Chancery Illinois, Cook County) (Interim Lead Counsel in Derivative Action)

- *Recupero v. Friedli, et al*., Civil Action No.: 1:17-cv-00381-JKB (D. Md.) (Interim Lead Counsel in Derivative Action);

- *Klein v. Gordon et al.,* Civil Action No.: 8:17-cv-00123-AB (C.D. Cal.) (Interim Lead Counsel in Derivative Action);

- *Bunim v. Miller, et al*., Civil Action No.: 2:17-cv-00519-ER (E.D. Pa.) (Interim Lead Counsel in Derivative Action);

- *Savage, Spencer, et al., v. Kay, Robert B., et al.,* Index No.: 162407/2015 (*de facto* lead counsel in Derivative Action)

- *Borta v. Lucier, et al.,* Civil Action No.:  37-2016-00034039-CU-SL-CTL (Sup. Ct. C.A., San Diego County) (*de facto* lead counsel in Derivative Action)

- *In re CytRx Corporation Stockholder Derivative Litigation II*, Civil Action No.: C.A. No. 11800-VCMR (Chancery Delaware) (Co-Lead Counsel in Derivative Action);

  - *Thiese v. Giles. et al.,* Civil Action No.: 18-cv-02558-RBJ (D. Co.) (Lead Counsel in Derivative Action);

- *Keller v. Ashton, et al.*, Civil Action No.: 2:17-cv-01777-JMV (D. N.J.) (Lead Counsel in Derivative Action);

- *Hamdan v. Munro*, *et al.*, Civil Action No.: 3:16-cv-03706-PGS (D. N.J.) (Lead Counsel in Derivative Action)

- *Nahar, et al., v. Bianco, et al.,* Civil Action No.: 2:16-cv-00756-RSL (W.D. Wash.) (Co-Lead Counsel in Derivative Action);

- *In re Fifth Street Finance Corp., Stockholder Litig.*, C.A. No. 12157-VCG (Chancery Delaware) (co-counsel in Derivative Action);

- *Chiu, et al., v. Dipp, et al.,* Civil Action No.: 1:17-cv-11382 (D. Mass.);

- *In re Provectus Biopharmaceuticals Inc. Derivative Litig.*, Case No. 3:14-cv-00372-PLR-HBG (E.D. Tenn.) (Co-Lead Counsel in Derivative Action);

- *D' Angelo v. T. Kendall Hunt, et al.,* C.A. No.: 2017-CH-09793 (Chancery Illinois, Cook County);

- *In re Capstone Turbine Corp. Stockholder Derivative Litigation,* Master File No.: CV16-01569 (C.D. Cal.) (Co-Lead Counsel in Derivative Action);

- *Loyd v. Giles, et al.,* Case No.: 2015-CV-33429 (D. Colo., Denver County);

- *Hebert v. Bradley, et al.,* Case No.: C20163440 (Arizona Superior Ct., Pima County);

- *Ruth v. CanaVest Corp. (Nominal Defendant)*, Case No.: 2:15-cv-00481 (D. Nev.) (*de facto* lead counsel in Derivative Action);

- *McBride v. Lumber Liquidators Holdings, Inc. (Nominal Defendant)*, Case No.: CL15000453-00 (Virginia; City of Williamsburg and County of James City Circuit Court) (*de facto* lead counsel in state court Derivative Action);

- *Viebrock v. Wilke, et al.*, Case No.: 3:17-cv-00465-RCJ-WGC (D. Nev.) (Lead Counsel in Derivative Action)

- *In re Medbox, Inc., Derivative Litig.*, Civil Action No.: 15-cv-00185 (D. Nev.) (Co-Lead Counsel in Derivative Action);

- *Giebrecht v. Dickson v. Lee, et al.*, Civil Action No.: 13-cv-00697 (D. Nev.) (Co-counsel in Derivative Action);

- *Brody v. David Lerner Assocs., Inc., et al.*, Civil Action No.: 12-cv-782 (E.D.N.Y.) (Co-Counsel in breach of fiduciary duty action);

- *Cunningham v. Joseph Ram, et al.*, Civil Action No.: 06-cv-1529 (S.D. Cal.) (Co-Counsel in Derivative Action);

- *In re Endocyte, Inc., Derivative Litig.*, Civil Action No.: 14-cv-1551 (S.D. In.) (Co-Lead Counsel in Derivative Action);

- *Hapka v. Dennis Crowley, et al.*, 50-2005 CA (15th Judicial Circuit in and for Palm Beach County, Florida) (*de facto* Lead Counsel in Derivative Action);

- *Nieman v. Ira B. Lampert, et al.*, Civil Action No.: 05-cv-60574 (S.D. Fl.) (*de facto* Co-Lead Counsel in Derivative Action);

- *Riley v. Jorge Mas, et al.*, Civil Action No.: 04-cv-27000 (11th Judicial Circuit in and for Dade County, Florida) (*de facto* Lead Counsel in Derivative Action); and

- *Ramseur v. Callidus Software, Inc., et al.*, Civil Action No.: 04-cv-4419 (N.D. Cal.) (Co-Counsel in Derivative Action);

- In *re CVS Health Corporation Derivative Litigation*, Civil Action No.: 17-378 (D. RI) (Co-Lead counsel in Derivative Action);

- *Huellemeier vs. Teva Pharmaceuticals Industries Limited, et al*., Civil Action No.: 17-cv-01938 (S.D. Ohio) (Interim Lead Counsel in Derivative Action);

- *Klein v. Barton, et al.,* Civil Action No.: 2:18-cv-00027 (W.D. Wash) (Co-Lead Counsel in Derivative Action);

- *Ward Rouse, v. Steven Sherman, et al.,* Civil Action No.: 18-cv-01348 (N.D. Cal.) (Interim Lead Counsel in Derivative Action); and

- *Howard v. Clark, et al.,* Civil Action No.: 1:18-cv-00912 (D. Del.) (Co-Lead Counsel in Derivative Action)

9

**Anti-Trust Class Actions**

- *In re: Package Seafood Products Antitrust Litig.*, Case No. 15-MD-2670 (JLS) (MDD) (S.D. Cal.) (Co-Counsel in on-going anti-trust action);

- *In re Pool Products Distribution Market Antitrust Litigation,* MDL No. 2328 (Member of the committee in anti-trust action) (settlement obtained from several defendants); and

- *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litigation,* MDL No. 2542 (Co-Counsel in on-going anti-trust action).

**FLSA Actions**

- *Affen v. The TJX Companies, Inc., et al.*, Civil Action No.: 14-cv-03820-CCC-JBC (D. N.J.);

- *Roberts v. The TJX Companies, Inc.*, Civil Action No.: 14-cv-00746-BJD-MCR (M.D. Fla.);

- *Sifferman v. Sterling Financial Corp.*, Civil Action No.: 13-cv-00183 (W.D. Wash.); and

- *Winfield, et al., v. Citibank, N.A.*, Case No.: 10-cv-7304 (S.D.N.Y).

**IV.   Consumer Actions**

- *Jairo Jara, et al., v. DeVry Education Group, Inc., et al.,* Civil Action No.: 1:16-cv-10168 (N.D. Ill.)

- *Dumont v. Litton Loan Servicing, LP*, Civil Action No.: 1:12-cv-2677-ER-LMS (S.D.N.Y.) (Gainey McKenna & Egleston and Robbins Geller Rudman & Dowd LLP were plaintiffs' co-lead counsel in a putative class action lawsuit filed in the United States District Court for the Southern District of New York on behalf of thousands of homeowners in New York, New Jersey and Pennsylvania.  The lawsuit alleged, among other things, that Litton Loan Servicing ("Litton") and Ocwen Loan Servicing ("Ocwen") engaged in a deceptive scheme to delay or deny permanent mortgage loan modifications through the federal Home Affordable Modification Program ("HAMP") to desperate homeowners, systematically breaching their contractual obligations to homeowners, committing deceptive trade practices, and causing significant financial harm).

- *Schroeder, et al. v. Countrywide Home Loans, Inc. Bank of America, et al.*, Civil Action No.: 07-cv-1363 (PGS) (D.N.J.) (Class Counsel in nationwide class action on behalf of United States Military Service members overcharged on their mortgages in violation of the Service members' Civil Relief Act; recovery of $5.962 million for more than 17,000 service members).

- *Philip Stamm v. My Pillow, Inc. a Minnesota Corporation, a/k/a My Pillow Direct, LLC,* Index No.: 651472/2017 (N.Y. Sup. Ct.)

- *Alan Banchalter v. Larry J. Merlo, et al.,* Civil Action No.: 1:17-cv-00378-WES-LDA (D. R.I.)

## V.   <u>Attorneys</u>

***Barry J. Gainey*** received his bachelor's degree in 1981 from Boston University and received his J.D. in 1984 from Washington and Lee University School of Law where he was a Law Review Notes and Comments Editor and authored two published articles.  Mr. Gainey was a partner at Wilson, Elser, Moskowitz, Edelman & Dicker in New York City, and the founding partner of Renzulli, Gainey & Rutherford (which later became Gainey & McKenna and now Gainey McKenna & Egleston), with offices in New York City and New Jersey.  Mr. Gainey has worked on many high profile actions such as:

- *Schroeder, et al. v. Countrywide Home Loans, Inc., Bank of America, et al.*, Civil Action No.: 07-cv-1363 (D.N.J.) (Appointed Class Counsel in nationwide class action on behalf of United States Military Service members with Countrywide mortgages);
- *Klyachman v. Vitamin Shoppe, et al.*, Civil Action No.: 07-cv-1528 (D.N.J.) (Appointed Class Counsel in nationwide consumer fraud case);
- *Kleck v. Bluegreen Corp.*, Civil Action No.: 09-cv-81047 (S.D. Fl.) (Appointed Class Counsel with Florida firm in nationwide class action);
- *Resnik v. Lucent Technologies, Inc. et al.*, L-1230-06 (N.J.) (Appointed Co-Class Counsel in class action);
- *Alamo v. Bluegreen Corp. et al.*, L-6716-05 (N.J.) (Appointed Class Counsel in consumer fraud case); and
- *Blumer, et al. v. Acu-Gen Biolabs, Inc., et al.*, Civil Action No.: 06-cv-10359 (D. Mass) (Appointed Class Counsel in consumer fraud case).

Mr. Gainey is admitted to practice in the Federal and State Courts of New York and New Jersey. He is also a past or current member of the American Association for Justice, New Jersey Association for Justice, New York State Bar Association, American Bar Association, New York State Trial Lawyers Association, New Jersey State Bar Association, and Bergen County Bar Association.

**Thomas J. McKenna** received his bachelor's degree in 1981 from Boston College (*magna cum laude*) and received his J.D. in 1984 from Syracuse University College of Law (*cum laude*) where he was a Law Review Editor and a Member of the Justinian Honorary Law Society. Following law school, Mr. McKenna clerked in the United States District Court for the Eastern District of Louisiana for the Honorable Veronica D. Wicker from 1984 through 1986.

Before starting his own law practice, Mr. McKenna was associated with Cahill, Gordon & Reindel ("Cahill") in New York City, practicing class actions and securities law, insurance coverage litigation and general commercial litigation. After his association with Cahill, he was an attorney at Grutman Greene & Humphrey in New York City where he concentrated on class actions and trial practice in complex commercial and tort litigation. In 1996, Mr. McKenna started his own law firm and then formed Gainey & McKenna in 1998 where he focused his practice on trials, class actions and commercial disputes. Mr. McKenna has worked on many important actions such as:

- *Allapattah Services, Inc., et al., v. Exxon Corp.*, Civil Action No.: 91-cv-0983 (S.D. Fla.) (Nationwide class action for class of Exxon service station operators against Exxon for allegedly overcharging them for gasoline, eventually settled for over $1 billion);
- *In re Popular Inc. ERISA Litig.*, Master File: 09-cv-01552-ADC (D. P.R.) (Co-Lead Counsel) (breach of fiduciary duty case under ERISA);
- *In re Schering-Plough Corp. Enhance ERISA Litig.*, Civil Action No.: 08-cv-1432 (D.N.J.) (Co-Lead Counsel) (claim on behalf of employees and ex-employees against 401(k) fiduciaries for breaches of duty in connection with Vytorin);
- *In re General Growth Properties, Inc. ERISA Litig.*, Master File No.: 08-cv-6680 (N.D. Ill.) (Class Counsel) (breach of fiduciary duty case involving harm to retirement plan in connection with alleged risky real estate investments); and
- *Morrison v. MoneyGram Int'l, Inc., et al.*, Civil Action No.: 08-cv-1121 (D. Minn.) (Lead Counsel) (breach of fiduciary duty claims involving alleged improper investment practices).

Mr. McKenna is a member of the Bar of the State of New York and admitted to practice before the United States Supreme Court and United States District Courts for the Southern and Eastern Districts of New York, and the United States Court of Appeals for the Second, Fifth, Sixth, Ninth and Eleventh Circuits. He has also been admitted *pro hac vice* in numerous other courts. Mr. McKenna is also a member of the Association of the Bar of the City of New York, the New York State Trial Lawyers Association, and the American Association for Justice (formerly the American Trial Lawyers Association) and past member of the New York County Lawyers Association.

**Gregory M. Egleston** received his bachelor's degree in 1992 from Fordham University (*magna cum laude*), his master's degree in 1994 from Columbia University, and received his J.D. in 1997 from New York Law School. Before joining the Firm, Mr. Egleston had his own law firm and prior to that, Mr. Egleston was an attorney specializing in securities class action litigation,

shareholder derivative actions, and consumer fraud litigation at a prominent Manhattan plaintiffs' class action firm.  Mr. Egleston has worked on many high profile class actions such as:

- *Shane v. Kenneth E. Edge, et al.*, Civil Action No.: 10-cv-50089 (N.D. Il.) (recovery of $3.35 million for the company's 401(k) plan);
- *Mayer v. Administrative Committee of Smurfit-Stone Container Corp. Retirement Plan*s, Civil Action No.: 09-cv-02984 (N.D. Ill.) (recovery of $7.75 million for the company's 401(k) plan);
- *In re YRC Worldwide Inc. ERISA Litig.*, Case No.: 09-cv-02593 JWL/JPO (D. Kan.) (recovery of $6.5 million for the company's 401(k) plan);
- *In re Beazer Homes U.S.A., Inc. Sec. Litig.*, Civil Action No.: 07-cv-725-CC (N.D. Ga.) ($30.5 million settlement in a Securities Class Action);
- *In re Willbros Group, Inc. Sec. Litig.*, Civil Action No.: 06-cv-1778 (S.D. Tex.) ($10.5 million settlement in a Securities Class Action);
- *In re Royal Dutch/Shell Transport Sec. Litig.*, Civil Action No.: 04-cv-374 (JAP) (D.N.J.) (U.S. settlement with a minimum cash value of $138.3 million with a potential value of more than $180 million, in addition to a related European settlement of $350 million);
- *In re Marsh & McClennan Companies, Inc. Sec. Litig.*, Civil Action No.: 04-cv-8144 (CM) (S.D.N.Y.) ($400 Million settlement in a Securities Class Action); and
- *In re Lumenis Sec. Litig.*, Civil Action No.: 02-cv-1989 (S.D.N.Y.) ($20.1 million settlement in a Securities Class Action).

Mr. Egleston was also involved in a high profile landlord/tenant action entitled *Roberts v. Tishman Speyer, L.P., et al.*, N.Y. Sup. Ct., Index No. 07600475.  The core legal issue was whether landlords could permissibly deregulate and charge market rents for certain so-called "luxury" apartment units in these complexes in years in which the landlords were simultaneously receiving tax abatements from New York City known as "J-51" benefits.  The Court of Appeals ruled that the New York statutory scheme prevents landlords of rent stabilized buildings from charging market rents while receiving J-51 benefits for as long as they continue to receive those tax benefits. The action recently settled for $68.8 million.

Mr. Egleston is admitted to the Bars of the States of New York and Connecticut.  He is also admitted to practice before the Bars of the federal district courts for the Southern and Eastern Districts of New York and the District of Connecticut.

**Robert J. Schupler** received his bachelor's degree in 1979 from Drexel University (Philadelphia, PA), and received his J.D. in 1982 from Southwestern University School of Law (Los Angeles, CA).

Mr. Schupler began his legal career at a boutique law firm in Los Angeles where he focused on civil litigation and transactional matters.  He returned "home" to the Philadelphia area in the 90's

and shortly thereafter began focusing on class action litigation and complex tort and commercial disputes, assisting in litigation matters which included *Sunbeam* and *WorldCom*.

Mr. Schupler has the unique experience of working for both plaintiff and defense litigation firms.  While working at an internationally recognized defense law firm, Mr. Schupler concentrated on healthcare related products liability litigation matters.  In one of these matters, Mr. Schupler was responsible for the administration of a multi-billion dollar settlement involving tens of thousands of plaintiff claimants.

In 2015, Mr. Schupler began working with Gainey McKenna & Egleston.  He has assisted GME in prosecuting numerous class action and shareholder derivative actions, including:

- *In Re: Packaged Seafood Products Antitrust Litigation,* Civil Action No.: 15-MD-2670 JLS (MDD) (S. D. Cal.)
- *George Dumont, et al. vs. Litton Loan Servicing LP, et al.,* Civil Action No.: 7:12-cv-02677-ER-LMS (S. D. N.Y)
- *Gordon Niedermayer, et al. v. Steven A. Kriegsman, et al.,* Civil Action No.: 11800-VCMR (Chancery Delaware)
- *Arthur P. Cardi, et al. v. FXCM Inc., et al.,* Civil Action No.: 1:17-cv-4699-PAC-HBP (S. D. N.Y)
- *In Re Rocket Fuel, Inc. Derivative Litigation,* Civil Action No.: 4:15-cv-04625-PJH (N.D. Cal.)
- *Douglas Labare v. Charles Dunleavy, et al.,* Civil Action No.: 3:15-cv-01980-FLW-LHG (D. N.J.)
- *Waseem Hamdan vs. Mark Munro, et al.,* Civil Action No.: 2:16-cv-03706 (D. N.J)
- *In Re VimpelCom, Ltd. Securities Litigation,* Civil Action No.: 1:15-cv-08672-ALC (S. D. N.Y)
- *Shuli Chiu, et al., v. Michelle Dipp, et al.,* Civil Action No.: 1:17-cv-11382 (D. Mass.)

Mr. Schupler is a member of the Bar of the State of Pennsylvania, and is also admitted to practice before the United States District Court for the Eastern District of Pennsylvania.

***David A. Silva*** received his bachelor's degree in 1982 from New York University and received his J.D. in 1985 from Brooklyn Law School where he was a member of the Moot Court National Team.  Between the years of 1985 and 1988, Mr. Silva worked as an Assistant Corporation Counsel in the Law Department of the City of New York.  While at the Law Department, Mr. Silva represented various city agencies in Article 78 proceedings as well as defended the constitutionality of various aspects of the New York City Public Health Law, as well as the Building Code and Zoning Resolution. In addition, he was lead counsel on Federal civil rights actions defending the City and its employees.

In 1988, Mr. Silva left the City and joined Mound Cotton Wollan & Greengrass as an associate and worked there for 25 years becoming a partner in 1995 and a senior partner in 2002.

Mr. Silva has served as counsel to both insurers and reinsurers in dozens of reinsurance arbitrations and court proceedings across the United States. He has also acted as lead counsel in arbitrations in both Bermuda and England, involving some of the highest profile issues in the industry. Mr. Silva regularly advises clients on a wide range of issues including workers' compensation carve out and spiral business; life, personal accident and medical reinsurance issues; long term care reinsurance; actuarial disputes; coverage of declaratory judgment expenses; rescission claims; claims for pre-answer security; letter of credit disputes; commutation valuations; allocation of losses; contract drafting; records inspection rights, and audits. He also has substantial experience in other reinsurance-related matters, including issues involving domestic and off-shore captive reinsurers, surplus relief treaties, and many matters relating to life, accident, health, and long term care insurance. He also has substantial involvement in all aspects of property and casualty insurance litigation including first- and third-party coverage and claims defense, business interruption, products liability defense, and disputes between primary and excess carriers.

Mr. Silva has been recognized in the Chambers USA Directory, Best Lawyers in America, and Super Lawyers as a leading individual in the field of insurance and reinsurance. Mr. Silva has also served as a lecturer and panelist for various reinsurance programs, including the Reinsurance Association of America, ARIAS U.S., as well as Harris Martin and HB Litigation Conferences.

Mr. Silva is admitted to practice in the federal and state courts of New York and is a past member of the New York State Bar Association as well as the New York County Lawyers Association.

# EXHIBIT 3

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

---

| | |
|---|---|
| MICHAEL E. VACEK, JR., derivatively on behalf of WALTER INVESTMENT MANAGEMENT CORP., now known as Ditech Holding Corporation, | )<br>)<br>)<br>)<br>) |
| Plaintiff, | )<br>)  Case 2:17-cv-02820-JCJ |
| v. | )<br>) |
| GEORGE M. AWAD, DANIEL G. BELTZMAN, MICHAEL M. BHASKARAN, NEAL P. GOLDMAN, WILLIAM J. MEURER, ALVARO G. de MOLINA, VADIM PERELMAN, and ANTHONY N. RENZI, | )<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendants, | )<br>) |
| and | )<br>) |
| WALTER INVESTMENT MANAGEMENT CORP., now known as Ditech Holding Corporation, | )<br>)<br>) |
| Nominal Defendant. | ) |

**DECLARATION OF MICHAEL D. DONOVAN IN SUPPORT OF PLAINTIFF'S MOTION FOR ATTORNEYS' FEES, SERVICE AWARD AND REIMBURSEMENT OF CASE EXPENSES**

I, Michael D. Donovan, declare as follows:

1. I am the managing principal of Donovan Litigation Group, LLC.

2. I submit this declaration in support of Plaintiff's request for an award of attorneys' fees, service award and reimbursement of case expenses in the above-referenced action ("the Action") based on my personal knowledge.

3. The detailed history of the case is set forth in the accompanying Declaration of Thomas J. McKenna in Support of Final Approval ("McKenna Fact Decl.") and will not be repeated here. In brief, however, my firm served as local counsel and participated in numerous

facets of the Action, including:  (1) analysis, recommendations and subsequent filing of all documents with the USDC for the Eastern District of Pennsylvania; (2) research concerning derivative actions, futility and other aspects of shareholder proceedings under Pennsylvania law, including recent developments; and (3) analysis and assistance with all aspects of the settlement.

4.      During the period from the inception of the matter through the present, attorneys and paralegals representing my firm performed 40.7 hours of work in connection with the litigation for which we seek payment. Based upon current hourly rates, the total lodestar value of this time is $28,730.00.  The below chart indicates the partners, attorneys, and paralegals who worked on this litigation, their current hourly rates and their respective lodestar values.

| Professional | Rate | Hours | Lodestar |
|---|---|---|---|
| Michael D. Donovan (P) | $850 | 30.5 | $25,925.00 |
| Christian C. Koerner (PL) | $275 | 10.2 | $ 2,805.00 |
|  |  |  |  |
| **TOTAL** |  | **40.7** | **$28,730.00** |

* Partner (P), Attorney (A), Paralegal (PL)

5.      The hourly rates utilized by my firm in computing its lodestar are at or below its usual and customary hourly rates charged for other similar matters. No upward adjustment in billing rates was made, notwithstanding the contingency and risk of the matters involved, the opposition encountered, the preclusion of other employment, the delay in payment, or other factors present in the case which would justify higher rates of compensation.

6.      The time and services provided by my firm for which fees are sought in the petition are reflected in contemporaneously maintained records of my firm. All of the services performed by my firm in connection with this litigation were reasonable and necessary in the prosecution of this case. No time is included in this fee petition for work in connection with the fee and expense application or accompanying documents, including this declaration.

7.      My firm has expended or incurred costs and expenses totaling $923.06 in connection with the prosecution of this litigation. All of the expenses incurred by my firm for which reimbursement is sought were reasonable and necessary in the prosecution of this case. The below chart details the expenses incurred by my firm.

| **Categories:** | **Amount** |
| --- | --- |
| Photocopying/Reproduction | 148 |
| Postage/Notice Costs | 75.06 |
| Computer Research (Westlaw, Pacer, etc.) | 300 |
| Court Filing Fees | 400 |
| **TOTAL EXPENSES:** | **923.06** |

8.      The expenses paid by my firm for which reimbursement is sought are reflected in the books and records of my firm.  These books and records are prepared from checks, bills and expense vouchers, which are regularly kept and maintained by my firm and accurately reflect the expenses incurred.

9.      Attached hereto as Exhibit A is my firm's resume.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on this 27th day of December, 2018.

/s/*Michael D. Donovan*
Michael D. Donovan

3

# EXHIBIT A

# DONOVAN LITIGATION GROUP, LLC

15 St. Asaphs Road
Bala Cynwyd, PA 19004
Phone 610-647-6067
Fax 610-647-7215
www.donovanlitigationgroup.com

DONOVAN LITIGATION GROUP, LLC, located in Bala Cynwyd, Pennsylvania, is a law firm dedicated to providing first class litigation services to investors, consumers and small businesses. The firm's principals have substantial trial and appellate court experience prosecuting complex commercial and consumer cases. The founding member of the firm has appeared or argued before the United States Supreme Court, various federal and state appellate courts, the state Supreme Courts of New Jersey and Pennsylvania and federal and state trial courts throughout the country. The firm's nationwide practice focuses on class actions, shareholders' rights, consumer and commercial litigation as well as employment-related disputes. The firm strives to provide consumers, investors and small businesses with the type of sophisticated, in-depth representation that is ordinarily available only to the largest corporate clients of money-center law firms.

MICHAEL D. DONOVAN, a founding member of the firm, is admitted to practice before the Supreme Court of the United States, the United States Courts of Appeals for the Second, Third, Eighth, Ninth and Tenth Circuits, the United States District Courts for the Eastern, Middle and Western Districts of Pennsylvania, the United States District Courts for the Southern and Eastern Districts of New York as well as the state courts of Pennsylvania and New York and the courts of Washington, D.C. He is a graduate of Vermont Law School (J.D. cum laude 1984) and Syracuse University (A.B. 1981). He was the Head Notes Editor and a staff member of the VERMONT LAW REVIEW from 1982 through 1984. While on the LAW REVIEW, he authored Note, Zoning Variance Administration in Vermont, 8 VT. L. REV. 370 (1984). Following graduation from law school, Mr. Donovan was a trial and appellate attorney with the Securities and Exchange Commission in Washington, D.C., where he prosecuted numerous securities cases and enforcement matters, including injunctive and disciplinary actions against public companies, broker/dealers and accounting firms. Mr. Donovan has authored "Rigorous Analysis of the Class Action Burden of Proof," ABA Newsletter of the Class Action and Derivative Suits Committee, Spring 2007, and co-authored Preserving Judicial Recourse for Consumers: How to Combat Overreaching

1

Arbitration Clauses, 10 LOYOLA CONSUMER L. REV. 269 (1998); "The Overlooked Victims of the Thrift Crisis," Miami Review, Feb. 13, 1990; and "Conspiracy of Silence: Why S&L Regulators Can't Always Be Trusted," Legal Times, Feb. 5, 1990.

Mr. Donovan has served as co-lead counsel in the following securities class actions: In re Sunterra Corp. Securities Litigation, No. 6:00-cv-79-Orl-28B (M.D. Fla. 2005) (settled for $5,450,000); In re: Worldport Communications, Inc. Securities Litigation, No. 1-99-CV-1817-CC (N.D. Ga. 2001) (settled for $5,100,000); Lines v. Marble Financial Corp., Nos. 90-23 and 90-100 (D. Vt. 1991)(settled for $2 million together with substantial changes to the company's loan loss reserve procedures); Jones v. Amdura Corp., No. 90-F-167 (D. Colo. 1991) (action against directors settled for $4,962,500 and against company after bankruptcy for $1.2 million); In re Columbia Shareholders Litigation (Del. Ch. 1991)(merger case settled for $2 per share increase in amount paid to shareholders); Rosen v. Fidelity Investments, [1995-1996] Fed. Sec. L. Rep. ¶ 98,949 (E.D. Pa. Nov. 28, 1995) (opinion certifying class of mutual fund purchasers); Selis v. KTI, Inc., No. 2:00 CV 1478 (JCL) (D.N.J. 2000) (settled for $3.8 million). In addition, Mr. Donovan has had a substantial role in the prosecution of the following cases, among others: In re Trustcorp Securities Litigation, No. 3:89-CV-7139 (N.D. Ohio 1990) (settled for $5,600,000); Moskowitz v. Lopp, 128 F.R.D. 624 (E.D. Pa. 1989) (opinion certifying class of stock and option purchasers in fraud on the market and insider trading case); In re Hercules Corporation Securities Litigation, No. 90-442 (D. Del. 1992) (settled for $17.25 million).

In the area of consumer justice, Mr. Donovan has argued before the Supreme Court of the United States in Smiley v. Citibank (South Dakota), N.A., No. 95-860, 116 S. Ct. 806 (argued Apr. 24, 1996) and obtained favorable appellate rulings from the New Jersey Supreme Court in Sherman v. Citibank (South Dakota), N.A., 668 A.2d 1036 (N.J. 1995) and Hunter v. Greenwood Trust Co., 668 A.2d 1067 (N.J. 1995) and from the Pennsylvania Superior Court in In re Citibank Credit Card Litigation, 653 A.2d 39 (Pa. Super. 1995) and Gadon v. Chase Manhattan Bank, N.A., 653 A.2d 43 (Pa. Super. 1995). Mr. Donovan obtained a landmark Truth in Lending Act decision from the Court of Appeals for the Third Circuit in Rossman v. Fleet Bank (R.I.), N.A., 280 F.3d 384 (3d Cir. 2002), holding that a bank may not change a credit card promise of no annual fee. He also obtained landmark decisions from the Appellate Division of the New Jersey Superior Court and the New Jersey Supreme Court in Lemelledo v. Beneficial Finance Co., 674

A.2d 582 (N.J. App. Div. 1996), aff'd, 150 N.J. 255, 696 A.2d 546 (N.J. 1997), concerning loan and insurance packing.

In May 2005, together with co-counsel, Mr. Donovan tried to jury verdict a Pennsylvania statewide consumer class action against Kia Motors America, Inc., concerning the defective brake system on the 1997-2000 models of the Kia Sephia automobile. After a two-week trial, the jury returned a verdict of $600 per class member, for an aggregate class-wide verdict of $5.4 million. Samuel-Bassett v. Kia Motors America, Inc., 2006 WL 3949458 (Pa. Com. Pl. Dec. 28, 2006) (denying post-trial motions of defendant). In October 2007, the Pennsylvania Superior Court affirmed the judgment, and in February 2008 it affirmed the award of $4.4 million in attorney fees and expenses. In December 2011, the Pennsylvania Supreme Court affirmed the class action verdict but remanded the attorney fee award for recalculation by the trial court. Samuel-Bassett v. Kia Motors America, Inc., 34 A.3d 1 (Pa. 2011), cert. denied, 133 S. Ct. 51 (2012). Mr. Donovan briefed and argued both of the appeals.

In September and October 2006, Mr. Donovan tried to jury verdict a Pennsylvania statewide employee class action against Wal-Mart Stores, Inc., concerning Wal-Mart's failure to pay its hourly employees for missed breaks and off-the-clock work. After a six-week trial, the jury returned a verdict for the Class in the amount of $78.4 million. In October 2007, the Court awarded an additional $62 million in liquidated damages under the Pennsylvania Wage Payment and Collection Law, $10.2 million in prejudgment interest and approximately $46 million in attorney fees and costs. See Braun v. Wal-Mart Stores, Inc., 2005 WL 3623389 at *5 - *7 (Pa. Com. Pl. Dec. 27, 2005) (opinion certifying class). In June 2011, the Pennsylvania Superior Court affirmed the class judgment but remanded the attorney fee award for recalculation by the trial court. Braun v. Wal-Mart Stores, Inc., 24 A.3d 875 (Pa. Super. 2011). In 2014, the Pennsylvania Supreme Court affirmed. Braun v. Wal-Mart Stores, Inc., 106 A.3d 656 (Pa. 2014). The Supreme Court of the United States denied *certiorari* in April 2016. Wal-Mart Stores, Inc. v. Braun, 2016 WL 1278628 (U.S. Apr. 4, 2016) (Order List). Mr. Donovan briefed and argued the appeals on behalf of the class.

In May and June 2008, along with co-counsel, Mr. Donovan tried to jury verdict a New Jersey statewide class action against Kia Motors America, Inc., concerning the defective brake system on the 1997-2000 models of the Kia Sephia automobile. After a five-week trial, the jury returned a verdict of $750 per class member, for an aggregate class-wide verdict of approximately $6.0 million. Little v. Kia Motors America, Inc., No. UNN-L-0800-01006 (N.J. Super. (Union Cty.)

3

verdict entered June 6, 2008). In post-trial proceedings, the trial court vacated the damages verdict and ordered class member claims proceedings. The case is currently on appeal to the Appellate Division of the New Jersey Superior Court.

In January 2009, Mr. Donovan tried to the Court a consolidated shareholder derivative and class action challenging the proposed merger of Banco Santander, S.A. and Sovereign Bancorp, Inc., In re Sovereign Bancorp, Inc. Shareholders Litigation, No. 110802587 (Phila. C.P. filed 2008). After the nearly two-week trial, the parties agreed to a substantial settlement that modified the terms of the proposed acquisition. The class action and derivative settlement was finally approved by the Court in April 2009.

Mr. Donovan has provided testimony before the United States Senate Committee on Banking, Housing and Urban Affairs (Jan. 25, 2007) concerning the CARD Act and before the House of Representatives Subcommittee on Commercial and Administrative Law, Committee on the Judiciary, concerning the Arbitration Fairness Act (Apr. 29, 2009). He also has appeared as a panel speaker and presenter at the American Bar Association's National Class Action Institute, the American Law Institute's Forum on Class Actions and Aggregate Litigation, the Pennsylvania Bar Institute's Banking Law Update, the Practicing Law Institute's Financial Services Litigation Forum, the Consumer Credit Regulation Forum of the New Jersey Bar Association, and the National Consumer Rights Litigation Conference sponsored by the National Consumer Law Center. Mr. Donovan is a member of the American Bar Association (Litigation and Business Law Sections), the Philadelphia Bar Association, the New York Bar Association, and the District of Columbia Bar Association. He is the Chair of the Consumer Law Subcommittee of the ABA Litigation Section's Class Actions and Derivative Suits Committee. He is also the former Vice Chair of the National Association of Consumer Advocates and an active member of Public Justice.

Mr. Donovan received the 2009 Vern Countryman Award for Excellence in Consumer Law awarded by the National Consumer Law Center and was a 2007 Trial Lawyer of the Year Finalist recognized by Public Justice. In March 2016, the firm received an Excellence Award from the Pennsylvania Legal Aid Network.

Among other cases, the firm has been approved as class counsel in the following recent class actions: Chakejian v Equifax Information Services, LLC, 256 F.R.D. 492 (E.D. Pa. 2009); Barel v. Bank of America, 255 F.R.D. 393 (E.D. Pa. 2009); Markocki v. Old Republic National Title Ins. Co., 254 F.R.D. 242 (E.D. Pa. 2008); Strausser v. ACB Receivables Management, Inc., 2008 WL 859224

(E.D. Pa. Mar. 28, 2008); Allen v. Holiday Universal, Inc., 249 F.R.D. 166 (E.D. Pa. 2008); Cohen v. Chicago Title Insurance Company, 242 F.R.D. 295 (E.D. Pa. 2007); Jordan v. Commonwealth Financial Systems, Inc., 237 F.R.D. 132 (E.D. Pa. 2006); Braun v. Wal-Mart Stores, Inc., 2005 WL 3623389 (Pa.Com.Pl. Dec. 27, 2005); Perry v. FleetBoston Financial Corp., 229 F.R.D. 105 (E.D. Pa. 2005); Beck v. Maximus, Inc., 2005 WL 589749 (E.D. Pa. March 11, 2005); Stoner v. CBA Information Services, 352 F.Supp.2d 549 (E.D. Pa. 2005); Orloff v. Syndicated Office Systems, Inc., 2004 WL 870691 (E.D. Pa. April 22, 2004); Petrolito v. Arrow Financial Services, LLC, 221 F.R.D. 303 (D. Conn. 2004); Piper v. Portnoff Law Associates, Ltd., 216 F.R.D. 325 (E.D. Pa. 2003); Bonett v. Education Debt Services, Inc., 2003 WL 21658267 (E.D. Pa. 2003); Samuel-Bassett v. Kia Motors America, Inc., 212 F.R.D. 271 (E.D. Pa. 2000), vacated on other grounds; Oslan v. Law Offices of Mitchell N. Kay, 232 F. Supp. 2d 436 (E.D. Pa. 2002); Oslan v. Collection Bureau of Hudson Valley, 206 F.R.D. 109 (E.D. Pa. 2002); Saunders v. Berks Credit & Collections, 2002 WL 1497374 (E.D. Pa. 2002); Schilling v. Let's Talk Cellular and Wireless, 2002 U.S. Dist. LEXIS 3352 (E.D. Pa. 2002); Fry v. Hayt, Hayt and Landau, 198 F.R.D. 461 (E.D. Pa. 2000); Smith v. First Union Mortgage Corporation, 1999 WL 509967 (E.D. Pa. 1999).